UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**S.W.**, by her parent and natural guardian, J.W.,
individually and on behalf of all others similarly
situated; **A.W.**, by her parent and natural guardian
A.W., individually and on behalf of all others similarly
situated; **B.F.** by his parent and natural guardian, P.F.,
individually and on behalf of all others similarly
situated; **J.F.** and **P. F.**, by their parent and natural
guardian, A.F., individually and on behalf of all others
similarly situated; **L.T.**, by her parent and natural
guardian, R.T., individually and on behalf of all
others similarly situated,

                                        Plaintiffs,

        vs.

SHEILA WARREN, sued individually, and as
Director of Early Intervention Services for Orange County,
ORANGE COUNTY DEPARTMENT OF HEALTH,
COUNTY OF ORANGE,

                                        Defendants.

---

Jury Trial Demanded

# 07 CIV. 5708

CLASS ACTION

**COMPLAINT**

JUDGE CONNER

## I.    **INTRODUCTION**

1.    This is a class action to remedy defendants' illegal conduct, which includes

implementation of policies which have (a) caused a shortage of service providers,

including providers of speech, occupational therapy, physical therapy, and Applied

Behavior Analysis ("ABA") therapists, resulting in the lack of provision of such

medically-necessary services to children between the ages of birth and 5; (b) intentionally

and arbitrarily limited the number of hours of ABA services for children diagnosed with

autistic spectrum disorder and participating in the Early Intervention and preschool

programs throughout Orange County; (c) arbitrarily limited the amount, duration and availability of extended year services to preschool children, refusing to consider each child's individual and unique needs; (d) billed plaintiffs' insurance carriers for the provision of services likely causing reduction of plaintiffs' benefits and the lack of future coverage for medical services; (e) failed to properly and timely identify and/or evaluate children in Orange County in need of Early Intervention services; (f) failed to develop sufficient and appropriate programs within Orange County to meet the specific needs of preschool children with autism; (g) as a result of the County defendant's failure to develop and implement sufficient and appropriate programs, plaintiffs are required to travel distances over 100 miles each day, resulting in travel time of up to 4 hours each day, far in excess of the time and distance traveled by non-disabled or other-disabled peers.

2. Plaintiff children bring this action by their parents who are residents of Orange County, New York. The representative children are or had been enrolled in the Early Intervention Program and/or are classified as Preschoolers with a Disability. Defendant County is responsible for the provision and payment of services for such children. Plaintiff children, and numerous similarly situated children (present and future), are developmentally, physically, educationally or otherwise disabled, or believed to be disabled.

3. Defendants have failed to meet their State and Federal statutory and regulatory obligations to plaintiffs and numerous similarly situated children enrolled in the Early Intervention program throughout Orange County who are entitled to timely services from Defendant County.

4. Defendants have failed to meet their State and Federal statutory and regulatory obligations to plaintiffs and numerous similarly situated children classified as Preschoolers with Disabilities who are entitled to timely receive necessary services from Defendant County.

5. Defendants' procedures are also rife with defects; for example, defendants have not complied with the applicable statutes and regulations requiring that children with disabilities or those suspected of possessing one or more disabling conditions be timely and appropriately identified, evaluated and subsequently promptly provided appropriate and necessary services.

## II.  **PARTIES**

6. S.W. is 4 years old.  She was born on June 5, 2003, and resides in Middletown, Orange County, New York.  She brings this action through her father and natural guardian, J.W.

7. A.W. is 4 years old.  She was born on June 21, 2002, and resides in Middletown, Orange County, New York.  She has several diagnoses, the primary diagnosis being autism.  She brings this action through her mother and natural guardian, plaintiff A.W.

8. B.F. is 4 years old.  He was born on April 21, 2003, and resides in Goshen, Orange County, New York.  He brings this action through his mother and natural guardian, plaintiff P.F.

9. P.F is 2 years old.  He.was born on November 25, 2004, and resides in Orange County, New York.  He brings this action through his mother and natural guardian, plaintiff A.F.

10. J.F. is 2 years old. He was born on November 25, 2004, and resides in Orange County, New York. He brings this action through his mother and natural guardian, plaintiff A.F.

11. L.T. is 2 years old. She was born on July 16, 2004, and resides in Orange County, New York. She brings this action through her father and natural guardian, plaintiff R.F.

12. Defendant Orange County is a municipal corporation. Pursuant to Public Health Law 2544, Orange County is required to provide early intervention services, through its Department of Health.

The county may sue and be sued.

13. Defendant Orange County Department of Health (OCDOH) is the lead county agency responsible for ensuring that Early Intervention services are provided to developmentally disabled children in Orange County. *N.Y.S. Public Health Law 2540, et seq.*

14. Defendant, Sheila Warren, is employed by defendant OCDOH, as Director of the Division of Intervention Services (DIS). She is being sued individually and in her official capacity.

15. As Director of DIS, defendant Warren is responsible for the policies and administration of Orange County's Early Intervention program.

16. As Director of DIS, defendant Warren is responsible for the policies, procedures and administration of Orange County's Preschool Related Services program. *N.Y.S. Ed. Law 4410(9)(c).*

## III.    **JURISDICTION**

17.  This is a civil action over which this Court has original jurisdiction under 28 U.S.C. 1331 in that it arises under the Individuals with Disabilities Education Act (IDEA), as amended, 20 U.S.C. 1400, *et seq.* (IDEA).  Jurisdiction is expressly vested in this Court pursuant to 20 U.S.C. 1415(i)(2).  This action also seeks redress under 42 U.S.C. 1983 for the deprivation, under color of state law, of rights, privileges and immunities secured by federal statutes and the United States Constitution.  Furthermore, this action also seeks to redress discrimination based on disability under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794 ("Section 504"). Accordingly, the jurisdiction of this Court also is invoked pursuant to 28 U.S.C. 1331, 1343(a)(3) and 1343(a)(4).  As the various state claims arise from the same nucleus of operative facts as the federal claims, this Court has jurisdiction pursuant to 28 U.S.C. 1367.  The court also has jurisdiction over the claim for declaratory relief  pursuant to 28 U.S.C. secs. 2201 and 2202.

18.  Venue in this Court is proper under 20 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

19.  If successful, the Plaintiffs are entitled to costs and attorneys fees under 42 U.S.C. 1988 and 20 U.S.C. 1400, et seq.

### IV.    DEMAND FOR JURY TRIAL

20.  Plaintiffs hereby demand a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

## CLASS ACTION ALLEGATIONS

21.  Plaintiffs' claims for relief are brought on their own behalf and on behalf of all those similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b).

Defendants have acted and refused to act on grounds generally applicable to the named and class plaintiffs, making appropriate declaratory and injunctive relief as to the class as a whole.

22.    The class consists of children between the ages of birth and five years old residing in the County of Orange, present and future, who are, or should be, classified as disabled under the Individuals with Disabilities Education Act (20 U.S.C. 1400, *et seq.*), and who have been, are being, or will be denied their rights pursuant to said statute, either substantively or procedurally, due to the illegal acts and omissions of defendants.

23.    The members of this class are so numerous as to make joinder of each individually impracticable.   There are hundreds of children in Orange County who are disabled and entitled to receive early intervention and preschool services, and who did not, have not, or will not receive timely, appropriate identification, evaluations, recommendations and/or early intervention and/or preschool services in the least restrictive environment that meet their individual needs.   The exact number of disabled children is unknown to plaintiffs, but should be known to defendants.

24.    Moreover, the class includes the hundreds of children with disabilities who, in the near future, will be subject to defendants' policies that systematically violate federal and state statutory and regulatory requirements during the short time span in which these early intervention and preschool services must be provided.

25.    There are questions of law and fact common among the named plaintiffs and the members of the class they seek to represent, namely, whether defendants have violated, are violating and shall continue to violate the substantive and procedural rights of the class members, which rights are guaranteed to individuals with disabilities by the

laws of the United States, including rights accorded by statute and regulation, and those questions predominate over all other questions affecting individual class members.

26.  Such violations include the failure of defendants to identify and assure a timely determination of the eligibility of plaintiffs and similarly situated children for appropriate services, including speech, OT, PT and ABA, and assure that appropriate services are timely provided when warranted and defendants' failure to provide adequate and or appropriate facilities and services for children with disabilities.

27.  The claims of the named plaintiffs are typical of the claims of the class. Each named plaintiff has been determined to have a disability pursuant to the Individuals with Disabilities in Education Act; each named plaintiff has been recommended and approved for either early intervention and/or preschool special education services. In addition, the named plaintiffs' claims arise from the same illegal course of conduct by defendants.

28.  The named plaintiffs will fairly and adequately protect the interests of this class, as their interests do not, in any way, conflict with the interests of the class sought to be represented.

29.  The individual claims are not such that they can easily be compromised to the detriment of the claims of the class as a whole.

30.  Moreover, counsel for the named plaintiffs is qualified and able to vigorously pursue this action on behalf of the named plaintiffs and class plaintiffs.

31.  The defendants have acted, and failed to act, on grounds generally applicable to all of the class members.  As a result, declaratory and injunctive relief with respect to the entire class is appropriate.

32. Defendants' customs, policies, procedures, patterns and/or practices of which plaintiff complain, have had, are having and will continue to have similar impact upon the plaintiffs and the members of the class they seek to represent. Correction of these violations will benefit all class members.

33. The relief sought herein applies to the class as a whole and not merely to any particular individual or group of individuals.

34. In addition to meeting the requirements of Rule 23, a class action is necessary in this case to avoid problems of mootness during the course of litigation and to ensure future enforceability of judgment for plaintiffs.

35. Because of the extremely short time-frame during which plaintiffs are entitled to receive early intervention and/or preschool services, named plaintiffs may age-out of the EI/Preschool population before this litigation is completed.

36. Additionally, defendants may provide appropriate EI/Preschool services to all named plaintiffs, thus mooting their individual cases, yet continue with a pattern and practice that consistently violates the law, namely, implementation of policies which have:

(a) caused a shortage of service providers, including providers of speech, occupational therapy, physical therapy, and Applied Behavior Analysis ("ABA") therapists;

(b) intentionally and arbitrarily limited the number of hours of medically-necessary ABA, and other services for developmentally disabled children participating in the Early Intervention and/or Preschool programs throughout Orange County;

(c) arbitrarily limited the amount, duration and availability of extended year

services to preschool children, without regard to their individual and unique needs;

(d) billed plaintiffs' insurance carriers for the provision of services likely causing reduction of plaintiffs' benefits and the lack of future coverage for medical services;

(e) failed to develop sufficient and appropriate programs within Orange County to meet the specific needs of preschool children with autism;

(f) require plaintiffs to travel distances over 100 miles each day, to receive appropriate services, resulting in travel time of up to 4 hours each day, far in excess of the time and distance traveled by non-disabled or other-disabled peers.

**FACTUAL BACKGROUND**

**Plaintiff S.W.**

37. In or about January 2005, S.W. commenced receiving Early Intervention services through Orange County.

38. Although their own initial evaluations indicated that S.W. exhibited symptoms consistent with a diagnosis of autism, defendants did not inform her parents of this nor recommend or arrange of S.W. an evaluation by a neurologist or any other qualified specialist.

39. It was not until S.W.'s parents took her for a private evaluation by a neurologist in November 2005 that she was diagnosed as autistic

40. In November 2005, S.W.'s neurologist provided defendants with a prescription stating that S.W. required 30 hours of ABA per week. There was no contrary evidence that S.W. required less ABA therapy. Nevertheless, from November 2005 through August 2006, the County arbitrarily failed and refused to provide S.W. this ABA therapy.

41. At the time she commenced Early Intervention services, S.W. was non-verbal. She initially was provided speech two times each week. As she was making no gains, in February 2006, the EI team agreed that S.W. should receive speech three times each week, and amended S. W. service plan to so reflect.

42. Despite S.W.'s entitlement to receive speech therapy 3 times per week, between February 2006 and August 2006, defendants failed to provide S.W. with any speech therapy whatsoever.

43. In September 2006, plaintiff requested that defendant County provide S.W. compensatory services. Defendant County refused, noting, in part, a shortage of providers in the County.

44. As a result, S.W. has been deprived the opportunity to progress and achieve the level of functioning she may otherwise have attained.

**Plaintiff A.W.**

45. In or about September 2006, A.W., who is autistic, commenced attending Fred S. Keller Preschool in Rockland County, New York, as there was no appropriate placement available within Orange County.

46. The Fred S. Keller School is located approximately 55 miles from A.W.'s home.

47. A.W. attends the Fred S. Keller School for approximately 5 hours each day.

48. A.W. spends approximately 4 hours each day on the bus being transported to and from school.

49. During the 4 hours that A.W. is on the bus, she receives no services whatsoever.

50.  In September 2006, A.W.'s mother, A.W., ascertained that the bus company was not using the shortest route available and, as a result, A.W. was spending an unnecessary hour on the bus each day.

51.  From September 2006 through May 2007, A.W's mother, A.W. has contacted the bus company and defendant County on numerous occasions, requesting that they use the shorter route, so that plaintiff A.W. would not be required to spend such an excessive amount of time on the bus.

52.  Defendant County has refused to alter the bus route, stating that they have no control over the bus route.

53.  As a result of defendant County's failure and refusal to alter plaintiff A.W.'s bus route, plaintiff A.W. is required to travel distances over 100 miles each day, resulting in travel time of up to 4 hours each day, far in excess of the time and distance traveled by non-disabled or other-disabled peers,

54.  As a result, plaintiff A.W., has suffered a substantial loss of educational and developmental opportunity.

**Plaintiff B.F.**

55.  On or about April 2004, Plaintiff B.F. commenced receiving speech and occupational therapies through E.I..

56.  Although B.F. had been exhibiting symptoms indicative of autism, defendants did not recommend or arrange for his evaluation by a specialist.

57.  In or about June 2005, B.F.'s parents brought him to a developmental pediatrician who diagnosed him as being autistic; thereafter, B.F. began receiving ABA therapy.

58. In April 2004, at the Early Intervention intake, defendants representative, Susan Lee, asked B.F.'s mother for insurance information. P.F. asked whether her insurance was going to be billed for services. Ms. Lee responded that it would not and that taking such information was merely a formality.

59. In or about July 2006, plaintiff's mother, P.F., submitted bills for medical services on behalf of B.F. The insurance company denied payment. P.F. ascertained that defendant County had been billing for Early Intervention services and, as a result, Brendan had "capped out" and was not entitled to additional coverage.

60. Further, as the result of Early Intervention having billed plaintiff's insurance company for reimbursement for services, B.F.'s life-time maximum insurance coverage has been significantly reduced.

61. On June 4, 2007, a CPSE meeting was held to determine an appropriate summer services for B.T.

62. B.F.'s mother and all service providers attended and were in agreement that B.F. required continuation of his services through the summer as he suffers significant regression, even after a week without services.

63. B.F. was approved for continuation of speech, OT, PT, and ABA for the summer.

64. However, with total disregard for B.F's individual and unique needs, P.F. was informed that B.F. would not receive any services except for a period of 6-weeks, being from July 2, 2007, to August 14, 2007, which was the extent of the extended year services provided through defendant County.

65. As a result of the County's arbitrary limitation on the duration of necessary

services B.F. will receive between June and September, B.F. will assuredly suffer significant regression and loss of skills that he and his providers have worked so hard for him to gain.

### Plaintiffs P.F and J.F.

66.    Plaintiffs P.F. and J.F. were born on November 25, 2004.

67.    In August 2006, Plaintiffs P.F. and J.F. were evaluated by defendants and determined to be in need of speech therapy, each child exhibiting a 33% delay in speech.

68.    Early Intervention services were commenced, but defendants provided each child with only one session of speech per week.

69.    Plaintiff's mother, A.F., requested additional speech therapy, as she did not believe her children were making sufficient progress.

70.    In October 2006, a team meeting was held, and the EI coordinator agreed to allow one extra session of speech.  However, she stated that the children must "share" that session because of a shortage of speech providers.

71.    From October 2006 to January 2007, neither P.F. nor J.F. received any additional session of speech.

72.    In January 2007, another team meeting was held and, ultimately, it was agreed that both P.F. and J.F. both needed and should receive an additional session of speech.  However, the defendant County representative again stated that there was a shortage of speech providers.

73.    As a result, P.F. and J.F. have both been deprived the opportunity to progress and achieve the level of functioning they may otherwise have attained.

### Plaintiff L.T.

74. In July 2006, Plaintiff L.T. was referred to Early Intervention and was initially evaluated on August 16, 2006.

75. As a result of the August 2006 evaluation, L.T. was only approved for speech, which commenced in September 2006.

76. Although her initial evaluation indicated that L.T. was exhibiting behaviors consistent with a diagnosis of autism, defendant E.I. and its agents neither suggested nor arranged for any further evaluations of L.T.

77. Although her initial evaluation indicated that L.T. was exhibiting behaviors consistent with autism, defendant E.I. and its agents failed to so inform L.T.'s parents.

78. As a result of defendant E.I. and its agents' failure and refusal to timely and appropriately identify L.T.'s disability, L.T. was not provided the early and intensive one-to-one behavioral therapy that New York State's E.I. Guidelines stress are key to positive outcomes for young autistic children.

79. L.T. began receiving speech therapy in September 2006. L.T. was unable to participate in the speech therapy due to "sensory issues".

80. Defendant E.I. and its agents then recommended an occupational therapy (O.T.) evaluation be performed.

81. L.T. was approved for O.T. services twice a week.

82. After L.T. began receiving O.T., the therapist noted that L.T. demonstrated significant "social/emotional" difficulties.

83. As a result of the O.T.'s comments, at the following IFSP meeting, L.T. was approved for a "parent/child" group session once a week, and a social worker.

84. Despite their knowledge that L.T. suffered from speech deficits, sensory

issues, and social/emotional difficulties -- all of which are symptoms of autism -- defendant I.E. and its agents failed and refused to so inform L.T.'s parents.

85.    Despite their knowledge that L.T. suffered from speech deficits, sensory issues, and social/emotional difficulties -- all of which are symptoms of autism -- defendant I.E. and its agents failed and refused to recommend, or arrange for, L.T. to be evaluated by a neurologist or developmental pediatrician to determine the cause of her behaviors and deficits.

86. As a result of the defendant EI and its' agents' inactions, L.T. was deprived of the early and intensive one-to-one behavioral therapy, and the opportunity to benefit from such therapy which, according to defendant E.I.'s own Guidelines, are critical to obtain the best outcome for young autistic children.

87. In December 2006 - six months after L.T.'s initial evaluation by defendant E.I. and its agents - a parent of another disabled child in the defendant's E.I. program urged L.T.'s parents to have her evaluated for autism, stating that "E.I. is never going to tell you if they suspected your daughter was on the spectrum".

88. L.T.'s parents independently arranged for L.T.'s evaluation by a specialist.

89. On January 18, 2007, L.T. was diagnosed with autism and her doctor, Erica Loutsch, M.D., New York Medical College, Department of Psychiatry and Behavioral Sciences, stated that the then current services were inadequate and insufficient, and recommended that speech be increased to 3 sessions per week, toddler development class be likewise increased to 3 sessions per week, and that 20 hours of applied behavioral analysis (ABA) be provided, stating that the **"the prompt implementation of the above plan will increase her chances of becoming mainstreamed by kindergarten."**

90.  L.T.'s parents promptly provided defendants with a copy of the doctor's report, and a IFSP meeting was scheduled.

91.  At the IFSP meeting held in January 2007, Dr. Loutch's report was discussed and unrefuted by any of defendant E.I.'s agents present at the meeting.

92.  The IFSP team agreed to increase L.T.'s speech therapy sessions to 3 times per week pursuant to Dr. Loutsch's recommendation.

93.  However, despite Dr. Loutch's stated urgency for the "prompt implementation" of her recommendations of 20 hours per week of ABA, and despite the defendant E.I.'s lack of dispute of L.T.'s needs,   **the IFSP team would only approve 10 hours a week of ABA.**

94.  Further, despite the approval of 10 hours, plaintiff L.T., in fact, was only provided 6 hours of ABA per week.

95.  When plaintiff L.T.'s parents questioned why she could not be given more, defendants stated a multitude of excuses.

96.  Finally, however, defendant E.I.'s agents admitted that there were no providers available to give plaintiff L.T. the number of hours of ABA  therapy her doctor so strongly recommended, or even the number of hours for which she had been approved.

97.  As a result of defendant E.I. and its agents intentional refusal to provide medically necessary services, from January to April 2007, plaintiff L.T. was not provided the critical behavioral therapies that her doctor so urgently recommended and prescribed.

98.  As a result, L.T. has been deprived the opportunity to progress and achieve the level of functioning she may otherwise have attained.

**STATUTORY SCHEME**

99.    Congress enacted the Individuals with Disabilities Education Act (IDEA) requiring, *inter alia*, that each State develop an Early Intervention program to serve the needs of developmentally disabled children, between the ages of birth and three years old, to maximize their developmental potential. See, 20 U.S.C. 1400 et seq., 34 C.F.R. 300 et seq., N.Y.S. Public Health Law 2500 et seq. and 10 NYCRR 69-4 et seq.

100.    The IDEA establishes a system of procedural and substantive requirements requiring States to use a multi-disciplinary evaluation to identify children who have a developmental delay or a diagnosed physical or mental condition with a high probability of causing developmental delay.

101.    As alleged above, defendants have failed to fulfill their legal obligations to assure that plaintiffs were promptly and properly evaluated, identified and/or provided the appropriate services to which they are entitled.

102.    Upon information and belief, defendants have failed to conduct or perform legally required duties and/or to do so in a timely manner, including determinations of eligibility, identification, referral, evaluations and/or providing appropriate medically necessary services and have failed to adopt and/or implement policies, practices and/or procedures to ensure that such legally required duties are performed and/or completed in a proper and timely manner.

103.    Upon information and belief, defendants have instituted policies and practices which limit the number of available service providers causing the denial and/or delay of the provision of medically necessary services to children between the ages of birth and 5 years.

104.    Specifically, defendant Warren has instituted a policy of refusing to allow

individual providers of speech, occupational therapy, physical therapy and ABA therapy to contract with the County to provide services to children participating in the Early Intervention and/or preschool programs, unless each provider agree to maintain an arbitrary number of cases, as established by defendant Warren.

105. Defendant Warren's illegal policy and practice resulted in a loss of providers in all categories who previously had been under contract with the defendant County to provide early intervention and/or preschool services to developmentally disabled children in Orange County.

106. Upon information and belief, defendants have implemented a policy and practice of arbitrarily limiting the number of ABA hours that autistic children receive through the Early Intervention and/or preschool programs.

107. Upon information and belief, defendants have failed to notify parents of defendants' legal obligations to them.

108. Upon information and belief, defendants have billed third parties for reimbursement of Early Intervention services resulting in a cost to the parents in contravention of both Federal and State law.

109. Upon information and belief, defendant County has failed to adopt and/or implement policies, practices and/or procedures to assure that disabled children's IFSP's are adequately and properly formulated and/or implemented.

110. Upon information and belief, defendants have failed to provide a continuum of services and program options as required by law.

111. Upon information and belief, defendant have failed to train staff and personnel of their responsibilities with respect to developing and implementing IFSPs.

112.  Upon information and belief, defendants have failed to prepare and/or implement IFSPs to provide for services to address all identified needs.

113.  Upon information and belief, defendants have discriminated against plaintiffs by requiring them to travel over 100 miles each day, for a period of approximately 4 hours, to receive appropriate services, far in excess of the time and distance traveled by non-disabled and other-disabled peers.

114.  Plaintiffs and those they purport to represent have expended their own funds to provide compensatory services in light of the defendants' denial of the same.

**Futility of Exhaustion**

115.  The IDEA, the New York Education Law and Public Health Law, all provide administrative procedures by which plaintiffs can seek to perfect their rights to appropriate services, as mandated by both federal and states laws.  However, these procedures are inadequate and futile in the instance circumstances.

116.  Resort to the administrative process is futile because the administrative hearing officers, in many, if not most instances, cannot provide the relief requested.  For example, defendants have failed to hire, train and utilize adequate numbers of related service providers, including speech, OT, PT, and ABA,  to serve the needs of the plaintiff class, in violation of federal and state law.

117.  Even where the administrative officer agrees that the sought-after services must be provided, s/he cannot mandate the provision of early intervention and preschool services that many plaintiffs need and are entitled to by law, but which do not exist, as a result of defendants' pattern and practices of failing to hire, train or utilize sufficient numbers of related service providers.

118. The defendants have failed to contract with sufficient related service providers in the numbers needed by plaintiffs, and it is the lack of providers that in many instances creates the intolerable delays, leads to inappropriate evaluations, and leads to the provision of inappropriate services.

119. Moreover, the administrative process is inadequate because otherwise eligible disabled children will age out of the early intervention and preschool populations before exhausting their administrative remedies, due to the extremely short time-frame during which plaintiffs are entitled to receive early intervention and/or preschool services and the extreme delay that has accompanied the provision of some services and total lack of provision of other medically-necessary services.

## CAUSES OF ACTION

120. Plaintiffs repeat, re-allege and incorporate hereunder by reference the allegations contained in Paragraphs 1 through 124 above.

121. As set forth above, defendants have failed to provide plaintiffs and similarly situated children with appropriate Early Intervention services as mandated under the Individuals with Disabilities Education Act (20 U.S.C. 1400, et seq., 34 C.F.R. 300, et seq.). Pursuant to the 2004 Reauthorization of the IDEA, requires that early intervention services be based on peer-reviewed, scientifically-based research.

122. N.Y.S. Public Health Law 2500 et seq. govern the provision of Early Intervention services to disabled children, impose an obligation upon the defendant to ensure the provision of timely appropriate services to each child with a disability between the ages of birth and 3 years of age and require that the lead agencies comply with the substantive and procedural requirements of said statute as codified in 10 NYCRR 69-4 et

seq.

123.   As set forth above, by their aforementioned acts and omissions, defendants have violated the mandates of the N.Y.S. Public Health Law and the Department of Health's rules and regulations, a claim over which this court has pendent jurisdiction as it arises from the same nucleus as operative facts as the first cause of action.

124.   New York Education Law  4401, et seq., requires that  preschool children with disabilities  be provided a free appropriate preschool education, in the least restrictive environment.

125.   Pursuant to NY Ed Law 4410(9)©, it is the responsibility of the County to contract with related service providers and to maintain a list of appropriately certified and licensed individuals and agencies with which it contracts to provide related services to disabled children.

126.  New York Public Health Law Article 25 prohibits defendants from requiring plaintiffs to allow defendants to bill their private insurance companies for early intervention and/or preschool services such that plaintiffs' life time maximum insurance benefits or annual limits or available medical assistance is reduced, or results in plaintiffs incurring any cost or loss of insurance benefits.

127.   Pursuant to Section 504 of the Rehabilitation Act, *29 U.S.C. 6301, et seq.,* defendants are prohibited from discriminating against plaintiff class on the basis of their disability in the provision of services, including transportation.

128.   The IDEA requires that extended year services  be provided to qualified students with disabilities.  Defendants are prohibited from unilaterally limiting the type, amount or duration of year-round services for students with disabilities.  *34 C.F.R.*

*300.106(a)(3); 8 NYCRR 200.1(eee).*

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court assume and retain jurisdiction over this action and issue the following relief:

(a) certify this as a class action;

(b) empanel a jury to fairly hear and decide all issues within its province;

(c) a judgment declaring that the defendants' policies, procedures, customs, patterns and/or practices deprive them of their constitutional and/or statutory rights, are illegal and/or invalid, and are in contravention of the defendants' statutory and constitutional duty to assure that plaintiffs and similarly situated children receive necessary Early Intervention and/or Preschool services in a timely manner;

(d) a preliminary and permanent injunction requiring defendant to timely and adequately evaluate and identify potentially developmentally delayed children and provide compensatory services as necessary and appropriate for said children and all members of the class;

(e) a preliminary and permanent injunction requiring defendants to rescind each and every policy and/or practice which curtails or limits the number of available service providers to children in both the Early Intervention and Preschool programs;

(f) a preliminary and permanent injunction requiring defendants to rescind each and every policy and/or practice by which it arbitrarily limits the number of ABA hours it provides plaintiffs and those in the class they seek to represent;

(g) a preliminary and permanent injunction requiring defendants to rescind each and every policy and/or practice by which it bills participating families' insurance carriers

for services provided to children in its Early Intervention and Preschool programs, such that families suffer a reduction of benefits and lack of coverage for services which may later be required;

(h) requiring defendants to immediately identify those class plaintiffs who have not been provided timely and/or adequate early intervention and/or preschool services - including speech, OT, PT, ABA, and other related services, and ordering defendants to immediately provide to the identified plaintiffs the appropriate early intervention and/or services guaranteed them by law;

(i) requiring defendants to immediately provide compensatory early intervention and/or preschool services in those instances where future services will not remedy the harm already incurred, or whether plaintiffs would otherwise age-out of the system before the harm incurred can be rectified, to compensate for defendants' past conduct of failing to provide adequate, time and appropriate services;

(j) requiring defendants to immediately identify those class plaintiffs who defendants have billed their insurance carriers for the provision of services causing reduction of plaintiffs' benefits and the lack of future coverage for medical services;

(k) requiring defendants to immediately provide reimbursement to those class plaintiffs whose insurance carriers defendants unlawfully billed for the provision of services and to those families who have expended their own funds to provide services which defendants were required to provide;

(l) requiring defendants to transport plaintiff A.W., and any other similarly aggrieved class plaintiffs, by means of the shortest available bus route;

(m) requiring defendants to provide compensatory services to A.W. and other

similarly aggrieved class plaintiffs who have suffered the loss of educational and developmental opportunities as the result of the defendants unlawful and discriminatory practices;

(n) requiring defendants to immediately identify those preschool class plaintiffs to whom defendants arbitrarily limited the amount, duration and availability of extended year services, including speech, OT, PT, ABA, and other related services, and ordering defendants to immediately provide to the identified plaintiffs the appropriate extended year services based on their individual need, as guaranteed them by law;

(o) a preliminary and permanent injunction requiring defendants to submit a plan to the Court designed to remedy each and every legal violation found in this matter, said plan to be monitored by the plaintiffs' counsel and the Court to assure compliance therewith;

(p) an order directing defendants to pay the costs and disbursements incurred by plaintiffs in commencing and maintaining this action and reasonable attorneys' fees pursuant to 42 U.S.C. 1988, 20 U.S.C. 1415(e)(4) and/or this Court's general equity powers;

(q) such other and further relief as to this Court may seem just and proper.


Dated:    June 15, 2007
          Goshen, New York


Michael H. Sussman, Esq. [3497]
Attorney for Plaintiffs
40 Park Place – PO Box 1005
Goshen, NY  10924
(845) 294-3991