UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

S.W., by her parent and natural guardian, J.W., individually and on behalf of all others similarly situated; A.W., by her parent and natural guardian A.W., individually and on behalf of all others similarly individually and on behalf of all others similarly situated; J.F. and P. F., by their parent and natural guardian, A.F., individually and on behalf of all others similarly situated; L.T., by her parent and natural guardian, R.T., individually and on behalf of all others similarly situated,

        Plaintiffs,

vs.

SHEILA WARREN, sued individually, and as Director of Early Intervention Services for Orange County, ORANGE COUNTY DEPARTMENT OF HEALTH, COUNTY OF ORANGE,

        Defendants.

---

Civ. Action No. 07 CIV 5708 (WCC)

**ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTIVE RELIEF**

Upon the annexed affidavits of Jason Whateley, Anita Wilson, Michele Thompson, AnnMarie Flynn, Patricia Flynn, Mary Jo Whateley, Susanna Hatenboer, Elizabeth Colon, Pamela Williams DiPaolo, and Donna Mcguire, and the exhibits annexed thereto, and the memorandum of law submitted herewith, and no prior application having been made, it is hereby

ORDERED, that Defendants or their attorneys SHOW CAUSE before this Court, at the Federal Court House, 300 Quarropas Street, White Plains, New York, 10601, Room 631, on the 28th day of September, 2007, at 11:45 a.m., or as soon thereafter as counsel may be heard, WHY this Court should not issue a preliminary injunction requiring that Defendants:

(1) Immediately rescind each and every policy and/or practice which curtails or limits the number of available service providers to children in both the Early Intervention and Preschool programs;

(2) Immediately rescind each and every policy and/or practice by which defendants arbitrarily limit the number of ABA therapy hours they provide plaintiffs and those in the class they seek to represent;

(3) Immediately identify those class plaintiffs who have not been provided timely and/or adequate early intervention and/or preschool services - including speech, OT, PT, ABA, and other related services, and ordering defendants to immediately provide to the identified plaintiffs the appropriate early intervention and/or services guaranteed them by law;

(4) Immediately rescind each and every policy and/or practice by with defendants authorize the billing of participating families' insurance carriers for services provided to children in its Early Intervention and/or Preschool programs, such that families suffer a reduction of benefits and lack of coverage for services which may later be required;

(5) Immediately identify those class plaintiffs whose insurance companies defendants have billed causing a reduction or loss of benefits and/or the lack of coverage for future medical services;

(6) Immediately commence transporting plaintiff A.W., and any other similarly aggrieved class plaintiffs, to school by means of the shortest, safe bus route; and

(7) Granting such other and further relief as this Court may deem just and proper; and it is

FURTHER ORDERED, that service of this Order and the papers upon which it is based, on Lamb & Barnosky, LLP, attorneys for defendant, 534 Broadhollow Road, Suite 210, Melville, NY 11747, on or before September 15th, 2007, shall constitute good and sufficient service and notice of the Order.

DATED: White Plains, New York
September 14th, 2007.

(s)
_____
HON. WILLIAM C. CONNER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

S.W., by her parent and natural Guardian, J.W.,
individually and on behalf of all others similarly
situated; B.F. by his parent and natural guardian,
P.F. individually and on behalf of all others
similarly situated; J.F. and P. F., by their parent
and natural guardian, A.F., individually and on
behalf of all others similarly situated,

       Plaintiffs,

vs.

SHEILA WARREN, sued individually, and as
Director of Early Intervention Services for Orange County,
ORANGE COUNTY DEPARTMENT OF HEALTH,
COUNTY OF ORANGE,

       Defendants.

Docket No. 07 CIV 5708

**Affidavit**

---

STATE OF NEW YORK )
         ) ss:
COUNTY OF ORANGE )

  Jason Whateley and Jessica Whateley, of full age, under the penalties of perjury, respectfully say:

  1. We are the parents and natural guardians of S. W., one of the Plaintiffs in the within action. She is 4 years old and is autistic.

  2. In or about January 2005, at the age of 18 months, our daughter was initially evaluated for Early Intervention services. Although she was already exhibiting what we now know to be classic signs of autism - e.g., lack of eye contact, walking on her toes, not responding to her name, lack of social interaction, self-stimming behaviors - no one at Early Intervention informed

us of the need for additional evaluations or arranged for my daughter to be seen by a specialist who could diagnose, or rule out, autism. As a result she was deprived of critical therapies for nearly a full year.

3. At that time, our daughter was approved for speech 2x a week and O.T. 1x a week, and special education services 1x a week. She began receiving those services in February 2005.

4. During the time that she was receiving E.I. services, one of the providers told us "off the record" that we should take our daughter to be evaluated by a neurologist, as she was showing signs of autism. While, deep down we ourselves feared this, so long as none of the "professionals" had said it, we had allowed ourselves to be lulled into a false sense of security that, in fact, our daughter was _not_ autistic, and that it would only be a matter of time until she had "caught up" developmentally. We were reassured in that belief because everyone at E.I. referred to our daughter as simply "developmentally delayed".

5. In November 2005, we took our daughter to Dr. Ronald Jacobson, a pediatric neurologist. He evaluated her and immediately diagnosed her as being autistic. Dr. Jacobson prescribed that our daughter receive 30 hours of ABA per week.

6. When we returned home, we contacted our service coordinator, Denise Guerero, and told her of the diagnosis and prescription for ABA. She said "The County will never approve 30 hours." "Nobody gets that much. Let's start with 15 to 20 hours". Even though she said that, our daughter was actually only started with 6 to 10 hours per week. During the time that Denise Guerero was our service coordinator, our daughter never received more than 20 hours ABA per week.

7. We then changed coordinators to Elizabeth Ramirez and requested that Donna McGuire be the ABA team leader. By the following day, our daughter was approved for 24

hours ABA and O.T. was increased to 3x per week. Unfortunately, our daughter never received the full amount of therapy that her neurologist had prescribed, as she "aged out" three months later.

8. Regarding speech therapy, our daughter was assigned Marcy Maksail, who was very young and not very experienced. She was very obviously intimidated by our daughter's resistance and crying, and was not capable of gaining our daughter's attention and trust. As a result, our daughter made no progress in over a year. In February 2006, we finally told the service coordinator, Denise Guerard, that we wanted a different speech therapist. She said we have to wait because there was a shortage of providers. She asked whether we wanted to keep Marcy in the meantime, and we decided not to, as Marcy made our daughter extremely anxious and stressed and it always took our daughter a great deal of time to calm down afterwards.

9. From February 2006 to August 2006, our daughter was provided no speech therapy whatsoever. She was non-verbal and we feel she lost the opportunity to progress during such a critical time of her development because the County was "punishing" us for not keeping a speech therapist who was basically incompetent.[1]

10. We started out with great trust and confidence in the Early Intervention program and believed that they had the best interests of our daughter at heart. It was an extremely painful realization that, in fact, the primary concern of all the providers was not offending Sheila Warren who I was told intimidated them all and, it seemed to me, especially Denise Guerero.

11. As an example, Denise would says to me "As a Mom, I would say this to you, but as a service coordinator I am required to tell you something else." I was always left with the

---

[1] The only thing the speech therapist taught our daughter was one sign, the sign for "more". This proved disastrous because she used it for everything, without having first been taught any underlying signs for any object that she may want "more" of.

feeling that I could not trust anyone to tell me the real truth of what my daughter needed and what was available to help her, and what we were going to face ahead in what turned out to be a battle for services.

12. As our daughter "aged out" of Early Intervention and into the Preschool system, we asked about compensatory services for the therapies to which she had been entitled but never received, especially the ABA, which they had told us we needed to "take slowly". No one ever told us that by the time the hours were increased, she would have conveniently "aged out" of the program and would no longer be entitled to them. I feel that we were betrayed by the administrators of a system that is supposed to be in place to help a child develop their potential in the early years, when the opportunity to do so is the greatest -- especially for an autistic child. Instead, the way the system works is to slow feed a child as little services as possible.

13. We believe that, on our own, did not know what was available for our daughter. Thankfully, our daughter's grandmother got involved and researched the Early Intervention program and what services were needed for children on the spectrum. If she had not been involved, I do not believe our daughter would have received the level of services she did receive through Early Intervention.

14. Our daughter was deprived of 90 sessions of speech therapy during the time she was in the Early Intervention program. I respectfully request that the Court direct the County to approve and provide our daughter the speech therapy to which she was approved, but never provided. She continues to be non-verbal, but has recently been making progress. This is an excellent time to build on her emerging skills by emersing her in speech and language.

15. Additionally, I request that the Court order that the County provide an updated speech and language evaluation to determine the best course of therapy that would benefit our

daughter at this time.

16. With respect to ABA therapy, our daughter never received the therapy in the amount prescribed by her neurologist, being 30 hours a week. There was never any contrary report stating she did not need at least 30 hours per week. In fact, the New York State Early Intervention Guidelines state that, based upon a child's individual need, she should receive between 20 and 40 hours of ABA per week to maximize her opportunity to develop normally.

17. As a result, our daughter is entitled to receive approximately 500 hours compensatory ABA therapy from Orange County, and we respectfully request that the Court so order the defendants to approve and provide.

18. We believe Sheila Warren intentionally denied our daughter – and most likely every autistic child in Orange County – the opportunity to achieve her highest level of functioning by withholding services she knew were necessary, and which the State Early Intervention Guidelines so clearly and unequivocally recommend be provided to assure each child the best outcome.

19. As our daughter is still only 4 years, there is still the opportunity that she may recover from autism and become an independent, contributing member of our community. Our greatest fear is that she remains non-verbal and unable to care for herself. According to the research we have read, and which the NYS Guidelines quotes, nearly 50% of all autistic children may recover and become mainstreamed if they receive early and intensive ABA therapy for a minimum of 2 years. The clock is still ticking for our daughter and so many other autistic children in Orange County. Their time has not yet run out. We implore the Court to use its power to require Orange County to <u>immediately</u> start providing the services and hiring and training the professionals necessary to provide these services to our children.

20. When our daughter "aged out" of E.I., and into the Preschool program, we looked at

the recommended preschools in Orange County. None of the programs followed the 1:1 ABA model. Therefore, we chose a school in Palisades, New York, which required our daughter to travel 110 miles a day. Additionally, the school only provided speech 3x a week. When we requested that our daughter be approved for additional speech after school hours, she was denied, even though she had made no progress towards the minimal goals that had been set. In denying the increase in speech, the County representative, Susan Lee, commented that "Perhaps we should lower the goals".

21. Our attorney has advised us that, as an autistic child, the law requires that our daughter receive speech 5x a week. The county clearly violated law by refused to provide the additional speech therapy for our daughter. Therefore, we respectfully request that the Court direct the County to approve and provide our daughter an additional 80 sessions of speech, representing 2 sessions per week from September to June 2007 and, further, direct Orange County to develop appropriate and effective preschool programs for autistic children so that, in the future, 3 and 4 year-old autistic children will not be forced to travel such great distances, spending almost as much time alone on the bus – without services – as they had spent in the classroom.

22. Our daughter was approved for summer services from approximately July 5th to August 10th. She was to receive speech 5x per week and OT 3x per week. As of today, she has received no OT, because of "lack of providers" and has only received speech 2x per week for the same reason. I have spoken to other parents who have told me that their children are also going without approved and necessary therapies as the result of the lack of providers in Orange County.

23. We respectfully request that the Court direct the County to provide our daughter with additional compensatory speech and OT which she was entitled to but did not receive during the summer.

24. Additionally, there was no reason presented why our daughter should only receive therapies for 6 weeks over the summer. In fact, the reports showed that our daughter suffered regression over long weekends. An autistic child needs intensive, continuous treatment. By stopping her services for nearly an entire month, we fear that our daughter will, once again, be deprived of the opportunity to progress and may, in fact, suffer regression.

25. Therefore, we respectfully request that the Court direct the County to rescind its policy of only providing 6 weeks of services in the summer and, instead, be required to provide services according to a child's unique needs as, we understand from our attorney, is what the law requires.

Respectfully submitted,

_Jessica Whateley_
Jessica Whateley

Sworn to before me this
7th day of August, 2007.

_Mary J. Whateley_
MARY J. WHATELEY
Notary Public, State of New York
No. 4918265
Qualified in Orange County Ulster
Commission Expires May 31, 19___ 9/14/2011

_Jason Whateley_
Jason Whateley

Sworn to before me this
7th day of August, 2007.

_Mary J. Whateley_
MARY J. WHATELEY
Notary Public, State of New York
No. 4918265
Qualified in Orange County Ulster
Commission Expires May 31, 19___ 9/14/2011