UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

S.W., by her parent and natural guardian, J.W.,
individually and on behalf of all others similarly
situated; **A.W.**, by her parent and natural guardian
A.W., individually and on behalf of all others similarly
individually and on behalf of all others similarly
situated; **J.F.** and **P. F.**, by their parent and natural
guardian, A.F., individually and on behalf of all others
similarly situated; **L.T.**, by her parent and natural
guardian, R.T., individually and on behalf of all
others similarly situated,

                    Plaintiffs,

vs.

SHEILA WARREN, sued individually, and as
Director of Early Intervention Services for Orange County,
ORANGE COUNTY DEPARTMENT OF HEALTH,
COUNTY OF ORANGE,

                    Defendants.

Civ. Action No.

**AFFIDAVIT**

---

STATE OF NEW YORK  )
                           ) ss:
COUNTY OF ORANGE  )

    ANITA WILSON, being of full age, deposes and says:

    1.    I am the parent and natural guardian of my daughter, A.W., a plaintiff herein.

**Early Intervention Issues**

    2.    A.W. entered preschool at the age of 3 years, 2 months. Initially, she attended the Inspire School in Goshen, New York, full day, with a home component of 10 hours ABA. The Inspire School did not provide A.W. with any ABA. It was not a

program geared specifically for autistic children, but rather was a program for all disabled preschoolers in Orange County, no matter their diagnosis.

3. On December 15, 2004, Dr. Steven Wolf, A.W.'s neurologist with Beth Israel Medical Center, diagnosed A.W. with autism and stated in his report that A.W. required immediate placement of 35 to 40 hours per week of home-based ABA therapy, and that she be placed in a full-day ABA-based preschool program beginning September 2005. A copy of Dr. Wolf's report is attached as Exhibit "1".

4. I provided Dr. Wolf's report to the IFSP and requested that his recommendations be implemented. The team met in January 2005 to discuss the report. Although they did not dispute Dr. Wolf's findings and recommendations, the IFSP team would only consent to A.W. receiving 25 hours of ABA per week - not the 35 to 40 hours that Dr. Wolf stated A.W. required.

5. Even though they approved 25 hours of ABA per week, Early Intervention only began A.W. with ABA program in March 2005, and only provided her with 4 hours of ABA per week – not the 25 hours for which she had been approved.

**Preschool Program Issues**

6. By the time A.W. "aged out" of early intervention in September 2005, she was only receiving 10 hours ABA per week - the most hours she was ever provided through Early Intervention. As a result, my daughter, A.W., was deprived of 15 hours per week approved ABA therapy, and 25 to 30 hours per week of the ABA therapy which her neurologist had prescribed.

7. When A.W. "aged out" of Early Intervention, no one - not the County representative, nor an of the Early Intervention team, informed me that A.W. was entitled

to compensatory services to make up for the therapies to which she had been entitled, and which were medically necessary, but which the County had failed to provide.

8. Although I provided these documents to the school and county representatives, the only options that we were provided was for our daughter to attend a half-day county preschool programs, Inspire and George T. Robinson Schools - neither of which was an ABA-based program for autistic children.

9. I asked whether my daughter could continue with her home-based program, as it was working so well and A.W. was making great progress in it. I was told that the home program would not be possible because of the level of services that A.W. needed and the inability to continue to provide those services at home because they did not have the providers to fill the hours.

10. Ultimately, on January 19, 2005, an IEP was developed, by which my daughter was placed in a full-day program at the Inspire Preschool in Goshen, New York, a non-inclusive preschool for disabled children, receiving no ABA in school, receiving speech 3x wk, OT 2x wk, PT 2x wk, vision 1x wk. Each service was for 30 minutes. (A copy of the 1/19/05 IEP is attached as Exhibit "2").[1]

11. As stated above, A.W.'s neurologist, Dr. Wolf, had recommended that A.W. receive between 35 and 40 hours of ABA per week. When I requested that his recommendation be implemented, I was told that there was a shortage of ABA providers and that 10 hours was all that A.W. could receive at home, and that the ABA would only be approved for 10 a week period as "transition" services. (A copy of the 8/9/05 IEP is

---

[1] Although the IEP states that A.W. was to receive speech 3x a week, I believe she only received it twice a week.

attached as Exhibit "3"). [2]  In addition, the IEP reduced speech therapy for A.W. from 3x wk to 2x wk. No justification for the reduction in speech therapy is provided in the IEP.[3]

12. On November 9, 2005, both Sheila Warren and her assistant, Susan Lee, attended A.W.'s IEP meeting. Despite the lack of medical justification, A.W.'s home-based ABA therapy program was decreased from 10 hours to 5 hours per week. ~~A copy of the 11/9/05 IEP is attached as Exhibit "4".~~ I implored the team to continue A.W.'s ABA therapy. As her SEIT had informed the team, she was responding positively and progressing steadily as a result of the ABA. The only basis for a cut in her therapy was the lack of available providers.

13. On January 9, 2006, I retained Legal Services of the Hudson Valley to help me obtain for my daughter the services which her neurologist stated she required. One of Legal Services' staff attorneys, Mary Jo Whateley, Esq., was assigned my case. On January 9, 2006, she sent a letter to Shelly Matlofsky, the CPSE Chairperson of our school district, requesting that a meeting be convened to re-visit the CPSE team's decision to reduce A.W.'s ABA therapy to 5 hours per week, and with a view to increase A.W.'s ABA therapy to 30 hours per week, consistent with the updated recommendations of A.W.'s neurologist, Dr. Steven Wolf. A copy of Ms. Whateley's letter, together with Dr. Wolf's updated report, is attached as Exhibit "5".

14. As a result of the letter, Ms. Matlofsky sent me an amendment to A.W.'s

---

[2] In the 8/9/05 IEP, under "Comments", it is noted that the special education teacher attributed A.W.'s recent notable progress to the inclusion of ABA therapy in the home in February 2005, and made no recommendation that it be discontinued.

[3] Although my daughter was echolalic, at no time - through either the County's Early Intervention or Preschool programs - was my daughter ever provided speech therapy more than 2x per week, each session being 30 minutes.

IEP, restoring A.W.'s ABA therapy to 10 hours per week. A copy of the IEP amendment is annexed as Exhibit "6". A copy of the email from Dynamic Therapy (the ABA provider) acknowledging the re-instatement of the 10 hours of ABA is annexed as Exhibit "6-a".

**Transportation Issue**

15. A meeting was convened at which time it was agreed that A.W. would attend an ABA-based preschool. As none were available within Orange County, I requested that my daughter attend the Fred S. Keller School in Palisades, New York.

16. In anticipation of my daughter being bussed to Rockland County, I drove down there from my home in Middletown, New York, to get a sense of the distance my daughter would be required to be on a bus each day. I traveled at 55 mph (although portions of the highway are posted at 65 mph). It took me one hour and 10 minutes each way.

17. The school day at the Keller School was from 9 am to 2 pm. I was told that the school bus would pick my daughter up at 7:15 am. She would return home from school at approximately 4 pm. When I questioned why the ride was so lengthy, I determined that, instead of taking either of the two highways (being the NY Thruway or the Palisades Parkway) the bus driver was taking local roads, resulting in my daughter having to be on the bus a total of three-and-a-half hours each day - one hour more each day than was necessary.

18. I wrote a letter to Globe Ground requesting that they consider taking the shorter route to and from Keller School so that my daughter would not have to spend so much unnecessary time on a bus.

19. On October 3, 2006, I received a response from Nellie Mendez, Manager of Transportation Services at Globe Ground Co., stating that A.W.'s bus route must remain unchanged "in order to avoid the morning commute traffic congestion at the toll booth in Harriman". A copy of Ms. Mendez' 10/3/06 letter is attached as Exhibit "7". Ms. Mendez failed to address my request that the bus company consider using the Palisades Parkway route, which would avoid the Harriman toll plaza, as well as the cost.

20. I continued contacting the bus company, requesting they consider the Palisade Parkway route. On March 19, 2007, I received another letter from Nellie Mendez, reiterating her position that A.W.'s bus route could not be changed. Regarding the Palisades Parkway route, she sated that there would be the possibility of an accident that would cause delay: "Our buses would have to sit and wait until it can move." A copy of Ms. Mendez' March 19, 2007, letter is attached as Exhibit "8".

21. I continued communicating with Globe Ground, attempting to have them reconsider their bus route. I traveled the Palisades Parkway route and observed two (2) First Student buses traveling on the Parkway -- on the exact route I was asking them to use for my daughter. I called Ms. Mendez and informed her of this. She was dismissive of the information I provided her, stating that "the students were probably not preschool students". At that point, it became clear to me that Ms. Mendez had not conducted a good faith investigation of the feasibility of using the Palisades Parkway route. On March 30, 2007, Ms. Mendez responded in writing, stating that "[I]t was determined that there is no justifiable need to alter the bus route." Having my daughter home and interacting with her family an additional five hours each week, as opposed to being harnassed in a bus seat by herself, was, to me, more than sufficient justification. A copy

of Ms. Mendez' 3/30/07 letter is attached as Exhibit "9".

22. I then called Shelly Matlofsky, at our school district, to request her intercession on our behalf with the bus company. Ms. Matlofsky stated that Orange County was in charge of student transportation.

23. I then contacted Sheila Warren at Orange County. She stated she would look into the matter. On June 18th, she called and told me that she had "looked at" my daughter's bus route with the bus company, and agreed with the bus company's determination. On June 26, 2007, I sent a letter to Ms. Warren memorializing our 6/18/07 conversation. A copy of my 6/26/07 letter is attached as Exhibit "10".

24. I then received a letter dated June 29, 2007, from Jean Hudson, Orange County Commissioner of Health, stating that "In light of the new information you gave me during that call, we are once again reviewing the issue, and will be in contact with you when that has been completed." The "new information" to which she refers - the fact that I observed other First Student buses taking the same shorter route I wanted for my daughter - was not new. I had been stating this to the bus company and Ms. Warren for months. A copy of Dr. Hudson's 6/29/07 letter is annexed as Exhibit "11".

25. As I had not yet heard back from Dr. Hudson, I called her on July 11, 2007, to inquire as to the status of her further investigation. She told me that the issue had "gone to counsel" and that she could not comment until she heard back from them.

26. Since July 11, 2007, I have had no further contact from Dr. Hudson or Sheila Warren, or any official from the bus company, regarding the shortening of my daughter's bus ride. My daughter has recently been hospitalized (for the second time since commencement of Keller School's summer program). She will be again returning to the

Keller School for its summer session on Monday, July 23, 2007.

27. I discussed my concern over my daughter's 3-1/2 hour daily bus ride with her neurosurgeon, Dr. Rick Abbott. He concurred that a bus ride of shorter duration was in my daughter's best interest medically. A copy of his 7/10/07 letter is attached as Exhibit "12".

28. I respectfully request that the Court direct Orange County to require Globe Ground Bus Company, in the best interests of my daughter, to immediately amend its route for my daughter, requiring it to travel the shortest, safe route possible.

**Extended Year Services**

29. My daughter, A.W., was approved for EYS for 2006/07 year. Additionally, Dr. Adriane Myer, a behavioral expert, provided a report stating that A.W. required 12-month services. A copy of Dr. Myer's report is attached as Exhibit "14".

30. In March 2007, I attended my daughter's annual review meeting. While the team agreed that my daughter required EYS, I was informed that such services would only be provided for a 6 week period. I did not object to the 6-week limitation on services because, earlier in the year, I received a letter from Susan Lee and Sheila Warren informing parents that "Preschool Special Education Program services are provided on a school calendar basis". A copy of their (undated) letter is attached as Exhibit "15".

**Conclusion**

Our whole experience with Orange County has been extremely frustrating. Services that our daughter required have continually required a fight to get and, as set forth above, many of her necessary services were not provided her. Right now, is the optimum time to ensure that she has the opportunities to develop to her potential. The

older she becomes, the less effective therapies become, and her opportunity to become mainstream diminishes. If the Court does not require Orange County to stop its pattern and practice of limiting the type and duration of services that children require, they will continue to minimize a child's needs.

The whole process of trying to find an appropriate placement for our daughter, close to home, has been futile and emotionally draining. It is so painful to watch her get onto the bus each morning, knowing she will be on that bus for almost two hours, and another two hours coming home. As an adult, I would not want to have such a commute. As a disabled child, this ride represents time that she could be used to provide therapies, communication and social opportunities for her, which are areas of major deficit for autistic children.

Absent the Court's intervention, I believe my daughter will suffer irreparable injury. The "window of opportunity" for my daughter to maximize her functional development is open now. It may not be in another year or two years. I implore the Court to grant the injunctive relief which we presently seek, so that no further harm is done to my child.

_____
ANITA WILSON

Sworn to before me this
___24t___ day of July, 2007.

_Mary J. Whateley_
MARY J. WHATELEY
Notary Public, State of New York
No. 4918265
Qualified in Orange County   9/17/2007
Commission Expires May 31, 19___