UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

S.W., by her parent and natural guardian, J.W.,
Individually and on behalf of all others similarly
Situated; A.W., by her parent and natural guardian
A.W., individually and on behalf of all others similarly
Individually and on behalf of all others similarly
Situated; J.F. and P.F., by their parent and natural
Guardian, A.F., individually and on behalf of all others
Similarly situated; L.T., by her parent and natural
Guardian, R.T., individually and on behalf of all
others similarly situated,

Civ. Action No.

Plaintiffs,

Vs.

SHEILA WARREN, sued individually, and as
Director of Early Intervention Services for Orange County,
ORANGE COUNTY DEPARTMENT OF HEALTH<
COUNTY OF ORANGE,

Defendants.

---

STATE O NEW YORK   )
                   ) ss:
COUNTY OF ORANGE   )

Donna McGuire, of fully age, under penalties of perjury, respectfully says:

1. I am a certified special education teacher, having been in the State of New York since 1978, and having worked as a full-time Special Education Teacher in the State of New York since 1975.

2. In or about 1996, I began working as an independent contractor for Orange County providing special education services for handicapped children in the Early Intervention Program and as a Special Education Teacher, as well as the Educational

Director of Bright Beginnings Family Services in Orange County, New York beginning October of 2002.

3. Since 1996, because of the policies of Sheila Warren, many autistic children have not been receiving the EI service they need.

4. In 1996, I provided ABA services to an EI child who had only been approved to receive approximately 6 Special Instruction hours from the County. To receive the amount of hours medically necessary, the parents paid providers out of pocket for services and training, amounting to over $~~50,000~~ 100,000. After six months of working privately with this child, his parents insisted that Ms. Warren give me an Independent Contract, as she said there were no ABA teachers available. Eventually, she agreed to this.

5. After years of extensive services, most paid by the parent, the child fully recovered. When I told this to Sheila Warren, she said, "If a child recovers, he was never autistic."

6. Warren made clear her intention to drastically decrease ABA services. She did so by eliminating providers and agencies who made appropriate recommendations for autistic children, contrary to the wishes of Sheila Warren to minimize ABA services, regardless of a child's individual needs.

7. From 1996 to approximately 2001, most of the hours I worked through my Independent Contract were providing ABA services to autistic children. After that, those services were provided through agencies. The bulk of services that Bright Beginnings provided to children in Orange County were ABA cases. I was the supervisor on most of those teams.

8. In October 2005, my Independent Contract was illegally terminated by Sheila Warren, without any reason given to me by her or the County. A few days prior to that, Sheila Warren ordered Bright Beginnings to remove me from all cases. She then illegally terminated the contract of the agency I worked for, Bright Beginnings, Additionally, she terminated the contract of Dynamic Therapy, another agency that provided extensive ABA services to EI and Preschool children. I was officially the Educational Administrator overseeing their cases, as they delivered preschool services through Bright Beginnings.

9. Mary Cooper, an Ongoing Coordinator who had a contract with the County, told me that on September 30, 2004, that she spoke to Sheila Warren personally at the Orange County Health Dept. office, and Ms. Warren told her that I "could never work on any EI or Preschool case in Orange County again".

10. Ms. Warren continually tried to intimidate providers and agencies from making recommendations, especially about ABA, that differed from her view. She tried to make an example of what she would do to those who did not make the recommendations she wanted and she was effective in her intimidation tactics. In September 2004, Ms. Warren sent out an email to approximately 144 school districts and organizations, labeled "Top Priority" and "Urgent," notifying them that my contract, as well as those of Bright Beginnings and Dynamic Therapy, contracts had been terminated. This was the first email I had ever seen notifying providers of any individual or agency voluntarily leaving or being terminated. This served as a threat to other providers and agencies not to go against her no matter what the individual needs of a child may be. I believe Ms. Warren's goal was to drastically cut down on the ABA

services provided in the County, as minimal as they already were.

11. The County reinstated the contracts of both agencies on October 8th, 2004 after the County Executive, Edward Diana, was made aware at a meeting held on October 7, 2004, that Ms. Warren has tried to illegally minimize ABA services to children. Providers from the agencies that were terminated, parents, other agency personnel, and I told him of the abuse providers and families have suffered under S. Warren, as well as her refusal to provide necessary services. They explained people's fear of retaliation by her, the inappropriateness of her making decisions outside of her licensure area, illegal actions taken by her, etc.

12. Mr. Diana responded by agreeing to reinstate all parties provided they sign a waiver releasing the County of all liability, etc. The agencies signed this waiver, but I did not wish to waive my rights, resulting in an interference of my livelihood and a decrease in finances. The County informed me, via email, that contracts would be resumed on completion of receipt of signature of their agreement. As a result, I was unable to work as an Independent Contractor until June 2005, when suit was filed by my attorney, Michael Sussman.

13. Defendant Warren's termination of our contracts also served to deter providers from providing appropriate recommendations, as some of them told me that they feared retaliation from Ms. Warren. Unbelievably, Ms. Warren has remained the Director of Early Intervention in Orange County.

14. Since that time, I have worked on cases, and know of other cases, where children have not received designated services due to Sheila Warren's policies.

15. In June 2005, Orange County reinstated my independent contract and I

resumed providing special education services to children in Orange County as an independent provider and continued to do so, maintaining a caseload of at least five cases during the year.

16. Defendant Warren had created policies that often kept children from receiving the ABA hours approved.

17. In or about September 2001, Sheila Warren changed the policy and would no longer allow individuals working as independent contractors to provide ABA therapy to autistic children. She stated that she would only allow agencies to provide ABA services to children with autism, EI and Preschool, and only one agency was permitted to deliver ABA services on a particular case. This policy continues to this day. This has resulted in many children not receiving the services to which they are entitled. There are providers who work full-time in schools and are available to see a children after school, sometimes providing several sessions per week to one or two children. These providers who held Independent Contracts were terminated and many do not want to work for an agency because their salary would be decreased by almost half. Additionally, many agencies will not hire a provider who can only work these amount of hours.

18. On occasion, defendant. Warren has given autistic children less than half of the ABA hours than the EI Guidebook on Autism recommends. Up until recently almost all cases of autistic children began with no more than 12 hours, and some with less, and then increasing, sometimes to a maximum of 14 or18 hours. I was on a team serving a child with autism who displayed severe delays. Even through IFSP team members team recommended more hours, defendant Warren refused to allow it , arbitrarily always limiting the number of ABA hours to under 20 on that case. There were

many other cases where defendant Warren refused to add recommended hours by the team members who were all in agreement. A few autistic children, whose parents were knowledgeable and demanding, received more than 20 hours.

19. Sometimes defendant Warren would mandate that the hours would start at 12 hours, and increase "gradually" to 18 and then to 20 hours, and she stated that the "gradual increase" needed to be noted in the team meeting minutes. She stated that by "gradual increase" she felt that two hours per month would be appropriate.

20. S. Warren reprimanded providers for their appropriate recommendations on a child's case if they disagreed with hers. After an IFSP meeting where it was agreed by the team that the child, whose father was an attorney, should receive an increase to 31 hours of ABA per week, Sheila Warren called me at home after the meeting and said she was "very angry" that we had agreed to increase the hours. She said that she was calling other members on the team to tell them the same thing.

21. Another time, at an IFSP meeting, the parent requested an additional 6 hours (from 22 to 28). Defendant Warren asked me my "opinion" about it, and I said I believed the child would benefit from the increase. After the meeting, Ms. Warren called the Ongoing Coordinator, Mary Cooper, and told her that she was "very unhappy" with my response. Ms. Warren then called me and told me the same thing. After chastising me, she said, "If parents want large amounts of ABA hours for their children, they should go out and pay for it themselves," like a member of her family had to. I documented this conversation and enclosed it with my family training notes that Bright Beginnings sent to the County at the end of the month. I also personally handed this documentation to her, as well as to Al Coley and Dr. John Kodra, CEO and Administrator from Bright Beginnings, in her office

on June 29, 2004. She did not comment on it, but rather, moved the paper to the side.

22. Sheila Warren tried to discourage providing ABA services through harassment. After this incident on this same case, the Ongoing Coordinator, Mary Cooper, began receiving phone calls from Bridget Perrone, the Initial Service Coordinator, who stated that she and Sheila found fault with my team meeting minutes on this case. After several phone calls back and forth between M. Cooper and B. Perrone, and M. Cooper and myself, she told B. Perrone that she was at a loss as to what the problem was and how to tell me to correct it, as she saw no problem. M. Cooper told me that my minutes were far superior to any minutes she had seen on any ABA case. She told me that she felt that I was being targeted and harassed and didn't understand why.

23. M. Cooper also told me that she notified the owner or director of Ages and States, the agency that she worked, the same thing. She told me that some agencies never even send in the required paperwork. I later addressed this issue of minutes in a memo I sent to defendant Warren on July 1, 2004, requesting that she address the issue of team meeting minutes at a meeting held she was holding for providers, as she had been critical of mine.

24. Defendant Warren did not agree with the NYS Early Intervention Guidelines that recommend a *minimum* of 20 hours of ABA therapy for autistic children, not counting parent time, and tried to intimidate providers to go along with her beliefs.

25. Defendant Warren called Bright Beginnings Family Services, stating that she wanted a meeting with me in her office. I brought Al Koley and Dr. J. Kodra to her office on June 29, 2004. She said the purpose of the meeting was to learn how ABA teams determine the recommended number of ABA hours that a child should receive. She stated that she did not agree with the recommendations regarding the amount of

ABA hours noted in the EI Guidebook on Autism. She questioned me about the "large number of hours" on some of our cases, citing a case from approximately 2001 that entailed each of the two children receiving ABA 35 hours weekly. She reprimanded me for recommending hours that she was not in agreement with. She also was critical of a recent IFSP meeting where the parents asked for an increase of 6 hours, from 22 to 28, because when she asked my opinion, I stated that the child would benefit from it. She would not address the conversation she had with me when she told me that parents should pay for their own hours if they want more, nor did she respond when I told her that she has reprimanded me in the past for the recommending hours that she did not agree with.

26. Defendant Warren would always tell providers that ABA was "not the only method" used to treat autistic children, and when asked about the Guidelines which recommended *only ABA therapy,* and at a minimum of 20 to 40 hours weekly without parental involvement, she would respond, "It's only a guideline," and that it did not entitle a child to receive those hours or that therapy.

27. When children were in the process of transitioning from EI to Preschool, Warren strongly discouraged any SEIT services. She told providers at many meetings, both at CPSE meetings and at general provider meetings, that autistic "children belong in center-based programs" regardless of their diagnosis. When asked about the law requiring placement in the least restrictive environment, she'd repeat herself that disabled preschool children "belong in center-based programs"

28. Defendant Warren has told, and continues to consistently tell, providers that she wants them to use a "family training model" instead of providing direct services to the

child. When I asked her about ABA at a Bright Beginnings staff meeting in May 2003, she said that it was "like trying to put a square peg into a round hole," implying that ABA had no place in the "family training model." At that meeting, she again said that preschool children belong in "center-based programs." When asked about the discrepancy in Orange County practices and the EI Guidebook recommending 20-40 hours of ABA for autistic children, she replied, "It's only a guideline." When asked about placing classified preschool children in the least restrictive setting, she stated that these children belong in center-based programs.

29. Defendant Warren eliminated providers and potential providers from delivering services, causing a shortage of providers in the County. At that meeting, she announced that parents would no longer choose the time of their IFSP meetings with the County, but that the County would choose the time and the providers would be mandated to be there.

30. She was aware that many of our providers teach in public schools and provide services after school hours. When I asked her about this conflict, she responded, "Then don't take the jobs."

31. Sheila Warren withheld information to parents and Coordinators that resulted in a loss of services for their children. There were many ABA cases that I worked on where the children had not been receiving the ABA hours given in their IFSP's prior to my involvement in the case. When one family complained to her, defendant Warren did not tell them that there were Independent Providers, such as myself, available to fill these hours. Denise Mann, an Ongoing Coordinator, noted in her encounter notes that she spoke with Ms. Warren and had advised her that the hours delivered to two children

were less than half of what their IFSP required, and yet Ms. Warren did not offer the parents or D. Mann the names of providers who could offer these services, when she was well aware that I, and other Independent Contractors were available. In fact, she stated that she knew of an agency that she might have been able to contract out of the county, but that it would take "eight to ten weeks". Denise Mann found the Independent Contractors who were experienced ABA teachers to take the case. These children lost invaluable time needlessly by not having their hours delivered as specified.

32. On June 2, 2004, defendant Warren sent notice that a meeting would be held regarding ABA, and requested information from us regarding the delivery of these services. In my memo to her of July 1, 2004, I stated that providers are reluctant to voice their opinion at IFSP meetings because the County has often been critical of their opinions regarding the number of ABA hours a child should receive. I stated that many providers felt that they should recommend many more hours than the child is currently receiving, based on the child's needs, and the guidelines stated in the EI Guidebook on Autism.

33. A few years ago, Sheila Warren implemented a policy whereby only agencies could provide ABA services, eliminating Independent Contractors. Her policy also limited only one agency providing ABA services on any given case, even if this leaves the child short of the full compliment of hours and other agencies were willing to add providers and work together.

34. I worked on one case during 2005-2006 where a 3 year old autistic girl was not receiving the full compliment of ABA hours. When her parents complained to defendant Warren, no action was taken and the hours remained unfilled. When the

family found another agency to add to the hours delivered to come to the amount the child should have been receiving, they asked defendant Warren to place the additional agency in the home and she refused.

35. A family member called the New York State Early Intervention and filed a formal complaint over the phone. As a result, defendant Warren finally acquiesced, and allowed Bright Beginnings Family Services to provide desperately needed therapy to the child.

36. I am currently serving on an ABA case where S. Warren arbitrarily reduced the EI child's at home ABA hours from 20 to 8 after the team had submitted a Note of Justification recommending a change [parent-initiated] in the ratio of hours delivered between the school and at home. Instead of the child receiving the same amount of hours before changing schools, contrary to the providers' recommendations, the child's hours were reduced. In fact, when school was not in session three weeks this summer, his total number of authorized EI hours (school and home ABA) decreased by ~~19~~ 12.5 hours for each of the three weeks.

37. In 2006, a parent whose children were receiving services through EI, was denied the services requested by one of her providers. The parent called the County's Initial Coordinator and demanded in writing the basis for the County's decision to refuse the services. The Coordinator told her that they do not provide such written documentation, but cited "a lack of providers" as the reason she was denied the services.

38. Over the past few months, I asked providers who may have had similar experiences or observed similar situations, if they would come forward and provide their testimony. Several providers told me that they are afraid of retaliation by

defendant Warren, and feared that they would lose their jobs if they spoke up. Some said that, if they are subpoenaed, they will give testimony about their experiences with defendant Warren and her intimidating tactics and arbitrary policies.

39. On several occasions, I have attempted to discuss with Ms. Warren the autistic children who received ABA services and recovered. Each time, she would respond by telling me that "if they recovered, they were never autistic."

40. Defendant Warren attempted to limit parent's rights to acquiring provider information and documentation that would be helpful to them and the CPSE in placing a preschool child receiving ABA services in a regular preschool.

41. Bright Beginnings and Dynamic Therapy were both agencies that provided an abundant amount of ABA services to children in Orange County, in both the EI and Preschool programs. Both contracts were eliminated, and, in each instance, defendant Warren cited a situation involving one provider on an ABA case. It was clear to all providers that defendant Warren was targeting the provision of ABA services - therapy that she made clear that - despite EI Guidelines and despite the knowledge of its effecacy when provided early and intensely - she was firmly set against providing to young autistic children in Orange County.

42. Further, I believe that the evaluation process for children who need EI services is not adequately being delivered in Orange County. I spoke to the parents of an autistic child who referred their child to EI for services approximately two years ago, but who was denied services. Although the child was exhibiting severe developmental delays, the County did not arrange for further evaluation. Upon the district's preschool evaluation noting that she was severely delayed, the parents took her to a neurologist at

their own expense. The neurologist diagnosed her with autism and recommended ABA services, which she is now receiving. The child lost valuable services because EI failed to identify and evaluate the child as being in need of services.

43. The shortage of therapists and service providers in Orange County appears to be dictating policy regarding the parceling out of the limited available services to developmentally disabled children to their significant detriment and possibly irreparable harm.

44. Ms. Warren's policies and/or practices of, amongst others, (1) refusing to allow independent contractors to continue providing ABA services; (2) prohibiting two or more approved agencies to work together to provide a disabled child with the full compliment of approved ABA hours; (3) refusing to contract, or renew contracts, with individual providers who are unable to commit to maintaining a minimum caseload of five; (4) continually and arbitrarily limiting the number of ABA hours she would allow an autistic child to receive; (5) failing to fully and timely evaluate and provide EI services to children who exhibit developmental delays, has ensured that many children will not receive the full scope of EI and preschool services to which they are entitled, and without which may have a devestating effect on their future development and independence.

*/s/ Donna McGuire*
Donna McGuire

Sworn to before me this 3rd day of September, 2007.

*/s/ Mary J. Whateley*

MARY J. WHATELEY
Notary Public, State of New York
No. 4918265
Qualified in Orange County
Commission Expires May 31, 19__   9/14/2010