EXHIBIT 6



**Legal Services of the Hudson Valley**
Protecting Rights Promoting Justice

123 Grand Street, 2nd Floor
Newburgh, New York 10550
Telephone No.: 845-569-9110, Fax No.: 845-569-9120

November 1, 2006

*By Fax (845) 291-3167 and Regular Mail*

Orange County Department of Law
Government Center
255 Main Street
Goshen, NY 10924

Attention: Matthew J. Nothnagle, Esq.
Senior Assistant County Attorney

RE: Samantha Whateley - D/O/B 6/05/03

Dear Mr. Nothnagle:

I am in receipt of your letter dated October 30, 2006, responding to my letter of October 2, 2006. I am enclosing a copy of my follow-up letter to Ms. Warren dated October 16, 2006.

I agree that, ordinarily, once a child "ages out" of Early Intervention, she is no longer entitled to services under the Early Intervention program. However, where, as in my granddaughter's case, a child was entitled to receive specified services pursuant to her IFSP, and the services were not provided, then "aging out" does not alter her right to seek compensatory services under Part C.

I refer you to Office of Special Education Programs (OSEP) guidance document dated August 19, 2003, a copy of which I enclose for your convenience. I have highlighted relevant portions on Pages 2 and 3.

You note that Samantha received "a large volume" of services. Samantha is severely autistic. She requires - as do many autistic children - a "large volume" of services. I refer you to the NYS Department of Health Clinical Practice Guidelines for Autism and PDD, which recommend *a minimum* of 20 hours per week of ABA therapy, which is in addition to other therapies that may be necessary to address the complex deficits of an autistic child. Samantha is non-verbal. The "large volume" of other services she may have received do not compensate for the County's failure to provide speech therapy to Samantha for seven months.

With regard to your statement that my granddaughter's family "rejected the person who had been providing the services", please know that the reason was the person did not competently provide services and, I believe, was terminated by the agency shortly thereafter.

With respect to your statement that "no substitute was available", while I understand there may be a shortage of speech therapists throughout the State, and even nationally, my research into the matter locally has revealed that Sheila Warren may have instituted a policy which resulted in a reduction of the number of available speech therapists in Orange County.

Specifically, I have been informed that Ms. Warren instituted a policy that prohibited speech therapists from maintaining contracts with Orange County unless they agreed to maintain a minimum caseload of five. I understand that a number of speech therapists who had contracts with the County are also full-time speech therapists within our school districts.

I have been further informed that, as a result of Ms. Warren's policy, a number of speech therapists who had previously had contacts with the County no longer were able to continue their contracts because it resulted in too great a burden on them.

If, in fact, Ms. Warren instituted such a policy, I believe she has violated both State and Federal law which requires a lead agency to do everything within its power to maximize the number of available, qualified providers.

I ask for your reconsideration of this matter, as it is my desire, and that of my family, to avoid protracted litigation of this issue and to obtain prompt services for Samantha.

Thank you.

                Very truly yours,

                Mary Jo Whateley
                Staff Attorney


cc: Michael H. Sussman, Esq.
  Mrs. Jessica Whateley

```
                              P.01
         TRANSACTION REPORT
                                           NOV-01-2006 WED 03:28 PM

FOR:                  845 569 9120

DATE   START    RECEIVER      TX TIME   PAGES TYPE      NOTE          M#   DP

NOV-01 03:27 PM 2916324        xx' xx"    0   SEND      BUSY               297

                              TOTAL :           OS PAGES:   0
```



# COUNTY OF ORANGE / Department of Law

GOVERNMENT CENTER, 255 Main Street
GOSHEN, NEW YORK 10924 TEL.: (845) 291-3150

**EDWARD A. DIANA**
County Executive

**DAVID L. DARWIN**
County Attorney

October 30, 2006

Mary Jo Whateley, Esq.
Legal Services of the Hudson Valley
123 Grand Street, Second Floor
Newburgh, New York 10550

      Re: Samantha Whateley

Dear Ms. Whateley:

  Your letter of October 2, 2006 to Sheila Warren has been referred to me for response. The County has no choice but to deny your request for additional speech therapy services under the Early Intervention umbrella. The County may no longer provide such services, now that Samantha is eligible for pre-school services. I refer to you Public Health Law section 2541(8), and the decision in *"BD" v. DeBuono*, 130 F.Supp.2d 401 (S.D.N.Y. 2000).

  In any event, a large volume of services was provided to Samantha, and no speech therapy services were provided from February onward because the family rejected the person



# Legal Services of the Hudson Valley
Protecting Rights Promoting Justice

123 Grand Street
Newburgh, New York  12550
Tel. (845) 569-9110  Ex. 117
Fax. (845) 569-9120

# Fax

**TO:** Matthew J. Nothnagle, Esq.

**FAX #:** 291-3167

**FROM:** Mary Jo Whateley, Esq.

**DATE:** 11/1/06

**SUBJECT:** Samantha Whateley

**PAGES:** Including this cover page

**NOTES:** Hi Matt — In response to your 10/30 letter.

Mary Jo Whateley

Please note: The information contained in this facsimile message is privileged and confidential and is intended only for use of the individual named above who has been specifically authorized to receive it. If you are not the intended recipient, you are hereby notified that dissemination, distribution, or copying of this communication is strictly prohibited. If you received this communication in error, please notify sender. Thank you.



**UNITED STATES DEPARTMENT OF EDUCATION**

OFFICE OF SPECIAL EDUCATION AND REHABILITATIVE SERVICES

AUG 1 9 2003

Your electronic correspondence to Congressman Dave Weldon, concerning       has been referred to the Office of Special Education Programs (OSEP) within the U.S. Department of Education (Department) for reply. In your correspondence, you requested assistance from Congressman Weldon in resolving a complaint you had filed with the Florida Department of Health (FDH), Lead Agency for Part C of the Individuals with Disabilities Education Act (IDEA). You state in your correspondence that you "have exhausted all state administrative processes and would request Congressman Weldon intervene on a federal level."

I am aware that Alma McPherson, OSEP's Part C State contact for Florida, has had several conversations with you regarding your concerns. Our records also indicate that OSEP referred your complaint to FDH on August 8, 2002 for FDH to resolve in accordance with complaint procedures at 34 CFR §§303.510-303.312. FDH was asked to send a copy of the agency's final decision to OSEP. OSEP received a copy of FDH's October 31, 2002 Final Report of Inquiry and reviewed it. While OSEP did review the report, it is important to clarify the regulations implementing the 1997 Amendments to the IDEA removed the Department's authority to conduct Secretarial review of State complaint decisions and that currently, neither the regulations implementing Part B nor Part C provide for a Secretarial review of the State's decisions in a complaint resolution.

In your electronic correspondence to Congressman Weldon you requested "(1) an investigation into deliberate and malicious discrimination against our child who has a disability, (2) for our family to be made whole and our child to receive compensatory services as described in the procedural safeguards for the duration of his assignment in Early Intervention and Prevention, (3) an established jurisdiction for Prevention and Early Intervention to be determined so you may file with the appropriate office. HHS and DOE claim they do not have jurisdiction, (4) under the Freedom of Information Act (FOIA), a copy of the resume of one of the state-sanctioned interpreters, and (5) legislation to provide families with alternative options to Part C to provide a competitive services module to the disabled." We have responded to each of these concerns separately below. You also requested in your electronic correspondence that "Criminal charges to be brought against [staff person] for forging a family member's [sic] name on

400 MARYLAND AVE.. S. W. WASHINGTON. D.C. 20202
www.ed.gov

Our mission is to ensure equal access to education and to promote educational excellence throughout the Nation.

Page 2

a federal document and relief from the false and malicious DCFS charge that has been placed against our family for advocating for our child." OSEP does not have the legal authority to address these two latter issues. Criminal sanctions for any alleged forgery, libel or slander are the subject of State law and may be referred to your State's attorney general's office or local county sheriff or district attorney.

*1. An investigation into deliberate and malicious discrimination against [your] child who has a disability.*

The Department's Office for Civil Rights (OCR) enforces laws that prohibit discrimination based on disability. Section 504 of the Rehabilitation Act of 1973 prohibits discrimination based on disability in programs or activities receiving Federal financial assistance. Title II of the Americans with Disabilities Act prohibits discrimination by public entities on the basis of disability. Enforcement of these laws by OCR extends to all Part C lead agencies, all State education agencies and preschool, elementary and secondary schools that receive Department funds. For assistance related to civil rights or to file a complaint, you should contact the OCR enforcement office serving Florida.

The OCR office for Florida is located at:

>Atlanta Office
>Office for Civil Rights
>U.S. Department of Education
>61 Forsyth St. S.W., Suite 19T70
>Atlanta, GA 30303-3104
>
>Telephone: 404-562-6350
>FAX: 404-562-6455; TDD: 404-331-7236
>Email: OCR_Atlanta@ed.gov

*2. For [your] family to be made whole and [your] child to receive compensatory services as described in the procedural safeguards for the duration of his assignment in Early Intervention and Prevention.*

The regulations governing Part C emphasize the importance of the lead agency to resolve complaints in a way that provides individual relief when, in resolving a State complaint filed under 34 CFR §§303.510-303.512, it finds a failure to provide appropriate early intervention services to an infant or toddler with a disability and his or her family. Under 34 CFR §303.510(b), a resolution must address both: (1) how to remediate the denial of services for the individual child, which can include an award of compensatory services, monetary reimbursement or other corrective actions appropriate to the needs of the child and family, and (2) appropriate future provision of services for all infants and toddlers with disabilities and their families. Because the basis of the compensatory services remedy is the past denial of early intervention services that were not originally provided, compensatory services as a remedy could, if determined appropriate, be available even

Page 3

after a child is no longer receiving services under Part C and independent of any current right the child may have to a free appropriate public education. Receiving special education and related services under Part B would not alter a child's right to compensatory services under Part C, if compensatory services were identified by the lead agency, a due process hearing officer, or a judge as an appropriate remedy to redress a denial of services.

In the FDH's Final Report of Inquiry regarding your State complaint, the investigation team found that "the Early Intervention Program failed to document in Family Support Plans completed during the period of time covered by this investigation, the reasons why some services were not provided in X's home."[1] By copy of this letter to FDH, we are asking FDH to review its finding and determine whether the failure to document in the Family Support Plan why your child's services were not provided in his home impeded your child receiving early intervention services and, if so, whether compensatory services or any other individual remedy is appropriate for your child. Additionally, under Part C, you also may request a due process hearing to resolve complaints concerning any matters related to the identification, evaluation, placement, or the provision of appropriate early intervention services to your child and family. 34 CFR §303.420. If you pursue this option, the request for a due process hearing must be filed in accordance with FDH's procedures. FDH must also allow parties to disputes to resolve the disputes through a mediation process, which, at a minimum, must be available whenever a hearing is requested. 34 CFR §303.419(a).

*3. An established jurisdiction for Prevention and Early Intervention to be determined so you may file with the appropriate office. HHS and DOE claim they do not have jurisdiction.*

OSEP is responsible for the administration of the IDEA at the Federal level. The Monitoring and State Improvement Planning (MSIP) Division of OSEP is responsible under Part B and Part C for State Plan review and approval, and for monitoring OSEP's formula grant programs to ensure consistency with Federal requirements and to ensure, on a systemic basis, that States and other public agencies continue to implement programs designed to improve results for infants, toddlers, children, and youth with disabilities and their families. However, while OSEP is responsible for the administration of the IDEA, the final regulations implementing Part C of the IDEA place the responsibility for the resolution of individual complaints with the State lead agency for Part C.

The Part C regulations require that the Governor establish or designate a lead agency as the single line of responsibility for the general administration and supervision of programs and activities under Part C. 34 CFR §303.501. FDH has been designated the lead agency in Florida. It is the responsibility of the FDH to adopt and use proper methods of administering programs under Part C, including monitoring agencies used to carry out Part C services, enforcing any obligations imposed on agencies, providing technical assistance, and correcting any deficiencies identified through monitoring. 34

---

[1] Final Report of Inquiry Conducted by the Department of Health Children's Medical Services Involving X Early Intervention Program, October 31, 2002, page 8.

Page 4

CFR §303.501(b). Additionally, the FDH must have written procedures for resolving any complaint, including provisions for the filing of a complaint with FDH, and disseminating to parents and other interested individuals those procedures. 34 CFR §303.510(a).

4. *Under the Freedom of Information Act (FOIA), a copy of the resume of one of the state-sanctioned interpreters.*

The Federal Freedom of Information Act (FOIA) applies to documents held by agencies of the executive branch of the Federal Government. The FOIA does not apply to private companies; private organizations; or State or local governments. However, all States and some localities have enacted laws like FOIA that allow individuals to request access to, and copies of, public records. Florida's Public Records Act is at Chapter 119 of Florida's statutes. To determine whether the document is a publicly available document under Florida's Public Records Act and the process for requesting it from a specific State agency, you may wish to contact an attorney, the Florida attorney general's office and/or the State agency's legal office.

5. *Legislation to provide families with alternative options to Part C to provide a competitive services module to the disabled.*

Congress is currently reauthorizing the IDEA. On April 30, 2003 the House approved, H.R. 1350, the Improving Education Results for Children with Disabilities Act of 2003 and on June 25, 2003 the Senate Committee on Health, Education, Labor, and Pensions approved, S. 1248, the Individuals with Disabilities Education Improvement Act of 2003. The IDEA bill is still pending full Senate consideration. If you wish to review either of these bills, you may do so at the following websites:
    *http://health.senate.gov/bills/013_bill.html*
    *http://edworkforce.house.gov/index.htm*

I hope this information is helpful to you.

        Sincerely,

        *Patricia J. Beard*

        for Stephanie S. Lee
        Director
        Office of Special Education Programs

cc: Monica Rutkowski, Bureau of Prevention and Early Intervention, FDH
    Michael L. Haney, Prevention and Interventions Children's Medical Services, FDH
    Ms. Shan Goff, Bureau of Instructional Support and Community Services, FDOE