# EXHIBIT "A"

The Transition of Children

from

The New York State Department of Health

Early Intervention Program

to

The State Education Department

Preschool Special Education Program or

Other Early Childhood Services

February 2005

## Table of Contents

I. PURPOSE AND BACKGROUND ................................................................................... 1
   INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) ....................................... 1
   NEW YORK STATE'S ADMINISTRATION OF IDEA ........................................................ 2
      *Early Intervention Program* ............................................................................ 2
      *Preschool Special Education Program and Services* ....................................... 3

II. PROGRAMMATIC ELIGIBILITY FOR EARLY INTERVENTION AND
PRESCHOOL SPECIAL EDUCATION........................................................................... 4
   EARLY INTERVENTION PROGRAM .................................................................................. 4
   PRESCHOOL SPECIAL EDUCATION PROGRAM AND SERVICES ...................................... 5

III. AGE ELIGIBILITY FOR EARLY INTERVENTION AND PRESCHOOL SPECIAL
EDUCATION ..................................................................................................................... 6
   EARLY INTERVENTION PROGRAM .................................................................................. 6
   PRESCHOOL SPECIAL EDUCATION................................................................................. 7
   CHILDREN REFERRED TO THE EIP WHEN AGE-ELIGIBLE FOR PRESCHOOL SPECIAL EDUCATION. 8

IV. TRANSITION PROCEDURES .................................................................................... 9
   TRANSITION PLANNING FOR ALL CHILDREN................................................................. 9
   TRANSITION PLANNING FOR CHILDREN FOR WHOM A REFERRAL TO PROGRAMS UNDER SECTION
   4410 OF THE EDUCATION LAW IS NOT THOUGHT TO BE APPROPRIATE ...................... 9
   TRANSITION PLANNING FOR CHILDREN POTENTIALLY ELIGIBLE FOR PRESCHOOL SPECIAL
   EDUCATION SERVICES UNDER SECTION 4410 OF THE EDUCATION LAW .................... 10
   DECIDING WHETHER THE CPSE SHOULD BE NOTIFIED OF THE CHILD'S POTENTIAL TRANSITION
   AND A TRANSITION CONFERENCE SHOULD BE SCHEDULED ...................................... 10
      *Notice Requirements and Timeframes for the Transition Conference*................. 11
      *Purposes and Content of the Transition Conference* ............................................ 12
      *Procedures to Refer the Child to the Committee on Preschool Special Education*.............. 14
      *CPSE Evaluation Process*....................................................................................... 15
   IEPS AND IFSPS FOR CHILDREN FOUND ELIGIBLE FOR PRESCHOOL SPECIAL EDUCATION
   PROGRAMS AND SERVICES REMAINING IN THE EIP BEYOND THEIR THIRD BIRTHDAY .............. 16
   CPSE PROGRESS REPORTS AND THE ANNUAL REVIEW............................................... 18

V. TRANSITION FOR CHILDREN IN FOSTER CARE.................................................... 19

VI. OTHER PROGRAMS AND RESOURCES FOR CHILDREN AND THEIR
FAMILIES........................................................................................................................... 19
   OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES ................... 19
   OFFICE OF MENTAL HEALTH ....................................................................................... 20
   OFFICE OF CHILDREN AND FAMILY SERVICES ........................................................... 20
   COMMISSION FOR THE BLIND AND VISUALLY HANDICAPPED ..................................... 20
   OFFICE OF ALCOHOLISM AND SUBSTANCE ABUSE SERVICES...................................... 20
   OFFICE OF ADVOCATE FOR PERSONS WITH DISABILITIES............................................ 21
   COMMISSION ON QUALITY OF CARE FOR PERSONS WITH DISABILITIES ..................... 21
   DEVELOPMENTAL DISABILITIES PLANNING COUNCIL (DDPC)................................... 21

STATE EDUCATION DEPARTMENT ........................................................................... 21
    *State Education Department Early Childhood Direction Centers* ...................... 21
    *Special Education Quality Assurance Regional Associates* ................................ 22
DEPARTMENT OF HEALTH ................................................................................... 22
OTHER COMMUNITY RESOURCES ......................................................................... 22

**VII.  FREQUENTLY ASKED QUESTIONS AND ANSWERS ON TRANSITION ........... 23**

  AGE ELIGIBILITY ............................................................................................. 23
  NOTIFICATION AND REFERRAL ............................................................................ 24
  TRANSITION CONFERENCE .................................................................................. 26
  TRANSITION PLAN ............................................................................................ 27
  CPSE EVALUATION PROCESS .............................................................................. 28
  TRANSITION FROM THE EIP TO PRESCHOOL SPECIAL EDUCATION PROGRAMS AND SERVICES .. 29

**APPENDIX A - COMPARISON OF EI AND PRESCHOOL SPECIAL EDUCATION .... 33**

**APPENDIX B - EARLY CHILDHOOD DIRECTION CENTERS ........................................ 37**

**APPENDIX C - CHILD CARE RESOURCE AND REFERRAL CENTERS ...................... 40**

**APPENDIX D - ROLES AND RESPONSIBILITIES IN THE TRANSITION PROCESS
TO PRESCHOOL SPECIAL EDUCATION PROGRAMS AND SERVICES ..................... 45**

**APPENDIX E - SUMMARY OF PARENT CONSENTS FOR THE TRANSITION
PROCESS AND SAMPLE PARENT CONSENT FORMS ...................................................... 50**

**APPENDIX F – ELIGIBILITY AND TRANSITION DATES ............................................... 55**

**APPENDIX G - SAMPLE TRANSITION NOTICE .......................................................... 56**

**APPENDIX H - STATE EDUCATION DEPARTMENT REGIONAL ASSOCIATES ..... 60**

**APPENDIX I - TRANSITION ROLES AND RESPONSIBILITIES FOR CHILDREN IN
FOSTER CARE ............................................................................................................. 61**

**APPENDIX J - DEVELOPMENTAL DISABILITIES SERVICES OFFICES (DDSOS) .. 63**

**APPENDIX K - OTHER PROGRAMS AND RESOURCES FOR YOUNG CHILDREN
AND THEIR FAMILIES ................................................................................................. 67**

  SPECIAL EDUCATION TRAINING AND RESOURCE CENTERS (SETRCS) ...................... 67
  BILINGUAL SPECIAL EDUCATION RESOURCES NETWORK ......................................... 71
  RESOURCES FOR CHILDREN WITH VISION IMPAIRMENTS/HEARING LOSS .................. 72
  TRAID PROJECT, NYS OFFICE OF ADVOCATE FOR PERSONS WITH DISABILITIES .................. 73
  HEAD START AND EARLY HEAD START .................................................................. 75
  PARENT SUPPORTS ........................................................................................... 76
  PARENT TO PARENT OF NEW YORK STATE ............................................................ 78

**APPENDIX L - COMMON ABBREVIATIONS FOR TRANSITION TERMS ................. 80**

APPENDIX M - RELEVANT SECTIONS OF PUBLIC HEALTH LAW ........................... 81

APPENDIX N - SECTION 69-4.20 EARLY INTERVENTION REGULATIONS ............. 82

APPENDIX O - EXCERPTS FROM PART 200 REGULATIONS OF THE
COMMISSIONER OF EDUCATION ..................................................................................... 84

## I. PURPOSE AND BACKGROUND

This memorandum provides guidance on the transition of children from the Early Intervention Program (EIP) to preschool special education programs and services, other state service delivery systems, or other early childhood services available to support children and their families. To ensure the transition process is successful for families, it is important that parents and professionals understand the requirements for transition and the services available in their communities for young children with, and without, disabilities.

The memorandum:

- briefly describes the Individuals with Disabilities Education Act (IDEA) and New York State's Administration of IDEA, including the EIP under Article 25 of the Public Health Law and preschool special education programs and services under Section 4410 of the Education Law;

- describes the components of the transition process for children transitioning from the Early Intervention Program to preschool special education programs and services, including State and federal requirements;

- identifies and describes the components of the transition process for children whose developmental status has improved significantly and who are not eligible for preschool special education programs and services and may – or may not – need other early childhood services;

- describes other state service delivery systems that are available to support children with disabilities and their families;

- includes important information about resources available to help families, providers, and public officials with the transition process; and,

- provides answers to questions often asked by parents, providers, Early Intervention Officials, and school district personnel about the transition process.

### *INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA)*

IDEA is the federal law that authorizes both the EIP and preschool special education programs and services. Requirements for the EIP are under Part C, and preschool special education programs and services are under Part B of IDEA. IDEA requires states to designate a lead agency responsible for administration and oversight of the EIP and requires the state education agency to oversee Part B special education services for children ages three through twenty-one years.

The Part C EIP is optional to states. States participating in the EIP, including New York, must provide for a comprehensive, statewide, interagency, multidisciplinary early intervention system for eligible infants and toddlers with special needs and their families.

1

Under Part B of IDEA, all states must provide for a free appropriate public education (FAPE)[1] for children with disabilities ages three through twenty-one years. Parts C and B of IDEA have specific requirements for the transition of children from the EIP to preschool special education programs and services. In addition, Part C requires that all children exiting the EIP have a transition plan to assist them and their families in transitioning from EIP services to other early childhood services as appropriate.

It is also important to note that, unlike general education for children and youth which is mandatory beginning at age five years, participation in both the Early Intervention Program and preschool special education programs and services is *voluntary* to families.

### NEW YORK STATE'S ADMINISTRATION OF IDEA

*Early Intervention Program*

In New York State, the lead agency for the Early Intervention Program (EIP) is the Department of Health (NYSDOH). As lead agency, NYSDOH is responsible for the general administration of the EIP. In addition, Public Health Law requires the chief elected official of each municipality to designate an Early Intervention Official (EIO)[2] who is responsible for the local administration of the EIP. The EIO is responsible for ensuring that children ages birth through two years who are at risk for or have a suspected disability are identified and referred to the EIP. Primary referral sources, including health care providers, social service providers, child care providers, providers of EIP services, and a range of professionals involved in caring for young children, are required to refer children at risk for or suspected of having a disability to the EIP, unless the parent objects to a referral. For children at risk, the EIP coordinates screening and tracking to ensure that children are referred for EIP services if they experience developmental delay or disability.

For children with a suspected developmental delay or disability, the EIO must designate an initial service coordinator to assist the family in obtaining an evaluation for their child. The EIO is also responsible for ensuring an individualized family service plan (IFSP) is developed for all children who are evaluated and found eligible for EIP services, and services included in the IFSP are provided. Services provided under the EIP are designed to meet the developmental needs of children and the needs of families related to enhancing their children's development. Eligible children and their families select an

---

[1] Free appropriate public education is defined in IDEA as "special education and related services that: (a) have been provided at public expense, under public supervision and direction and without charge; (b) meet the standards of the State educational agency; (c) include an appropriate preschool, elementary, or secondary school education in the involved State; and, (d) are provided in conformity with the individual education program that meets the requirements of §300.340 – 300.350 34 CFR Parts 300 and 303-§300.13.

[2] Throughout this document, the term "EIO" will be used to reference both Early Intervention Officials and their designees.

ongoing service coordinator and receive the services included in their IFSPs.  There are no out-of-pocket costs to families for participation in, or services provided by, the EIP.

### Preschool Special Education Program and Services

The New York State Education Department (NYSED) administers, through local school districts, preschool special education programs and services for preschool students with disabilities, ages 3 to 5 years of age.  The board of education (BOE) or trustees of each school district are required, by regulation (Part 200.2(a)), to identify all students with disabilities who reside in the school district and establish a register of children who are entitled to attend public schools in the district or to attend a preschool program during the next school year.  In addition, various people can refer a child to the Committee on Preschool Special Education (CPSE), such as the parent, doctor, judicial officer, designated person in a public agency, or someone from an Early Childhood Direction Center, an approved preschool program or the EIP.  There are specific requirements for referral of children from the EIP to the CPSE, which will be discussed in detail in this guidance memorandum.

Individual child evaluations to determine eligibility are conducted, and the CPSE, including the parent(s) of the child, develop an Individualized Education Program (IEP) for eligible children, outlining the special education programs and services to address the child's needs.

It is important for families to understand the differences between the EIP and preschool special education.  The EIP:

- focuses on enhancing the development of infants and toddlers with disabilities, and minimizing their potential for developmental delay;

- minimizes the need for special education services when children reach school age; and,

- enhances the capacity of families to meet the special needs of their infants and toddlers with disabilities.

The EIP includes a requirement to provide a service coordinator to each family and to ensure that services are provided year round.

Preschool special education focuses on children's educational needs, including:

- ensuring access to the general curriculum for all children; and,

- strengthening the role of parents and ensuring families have meaningful opportunities to participate in the education of their children at school and at home.

Appendix A, "Comparison of Early Intervention and Preschool Special Education" highlights the key elements of each program.

3

## II. PROGRAMMATIC ELIGIBILITY FOR EARLY INTERVENTION AND PRESCHOOL SPECIAL EDUCATION

### *EARLY INTERVENTION PROGRAM*

To be eligible for EIP services, a child must have either (1) a developmental delay consistent with the State definition of developmental delay; or, (2) a diagnosed condition with a high probability of developmental delay.

EIP regulations 10 NYCRR Section 69-4.1(g) define developmental delay as follows:

"Developmental delay means that a child has not attained developmental milestones expected for the child's chronological age adjusted for prematurity in one or more of the following areas of development: cognitive, physical (including vision and hearing), communication, social/emotional, or adaptive development.

A developmental delay for purposes of the EIP is a developmental delay that has been measured by qualified personnel using informed clinical opinion, appropriate diagnostic procedures and/or instruments and documented as:

- a 12 month delay in one functional area; or

- a 33 percent delay in one functional area or a 25 percent delay in each of two areas; or,

- if appropriate standardized instruments are individually administered in the evaluation process, a score of at least 2 standard deviations below the mean in one functional area or of at least 1.5 standard deviations below the mean in each of two functional areas."

EIP regulations at Section 69-4.3(e) define diagnosed conditions with a high probability of delay as:

- chromosomal abnormalities associated with developmental delay (*e.g.,* Down Syndrome);

- syndromes and conditions associated with delays in development (*e.g.,* fetal alcohol syndrome);

- neuromuscular disorder (*e.g.,* any disorder known to affect the central nervous system, including cerebral palsy, spina bifida, microcephaly or macrocephaly);

- clinical evidence of central nervous system (CNS) abnormality following bacterial/viral infection of the brain or head/spinal trauma;

- hearing impairment (a diagnosed hearing loss that cannot be corrected with treatment or surgery);

- visual impairment (a diagnosed visual impairment that cannot be corrected with treatment including glasses or contact lenses or surgery);

- diagnosed psychiatric conditions, such as reactive attachment disorder of infancy and early childhood; (symptoms include persistent failure to initiate or respond to primary caregivers; fearfulness and hypervigilance that does not respond to comforting by caregivers; absence of visual tracking); and,

- emotional/behavioral disorder (the infant or toddler exhibits atypical emotional or behavioral conditions, such as delay or abnormality in achieving expected emotional milestones such as pleasurable interest in adults and peers; ability to communicate emotional needs; self-injurious/persistent stereotypical behaviors).

In 1999, the NYS DOH issued guidance on diagnosed conditions with a high probability of developmental delay, including a list of conditions and their corresponding International Classification of Diseases (ICD-9) codes that should be used for eligibility purposes.

### PRESCHOOL SPECIAL EDUCATION PROGRAM AND SERVICES

Education Law and regulations define a preschool student with a disability as either having a disability or disorder in one or more functional areas of development (Part 200.1(mm)), or a specific condition (Part 200.1(zz)), as follows:

A child is defined as having a disability when s/he exhibits a significant delay or disorder in one or more functional areas related to cognitive, language and communicative, adaptive, socio-emotional, or motor development which adversely affects the student's ability to learn. Such delay or disorder must be documented by the results of the individual evaluation which includes but is not limited to information in all functional areas obtained from a structured observation of a student's performance and behavior, a parental interview and other individually administered assessment procedures, and, when reviewed in combination and compared to accepted milestones for child development, indicate:

- a 12 month delay in one or more functional areas; or

- a 33 percent delay in one functional area or a 25 percent delay in each of two functional areas; or

- if appropriate standardized instruments are individually administered in the evaluation process, a score of 2.0 standard deviations below the mean in one functional area, or a score of 1.5 standard deviations below the mean in each of two functional areas.

A preschool child can be classified as a preschool student with a disability if he/she meets the criteria set forth in the current disability classifications in the Part 200 regulations:

- autism;

- deafness;

- deaf-blindness;

- hearing impairment; (not covered under the definition of deafness),

- orthopedic impairment (caused by congenital anomalies, disease, or impairments from other causes);

- other health impairments (including but not limited to heart condition, tuberculosis, sickle cell anemia, asthma);

- traumatic brain injury (acquired); and,

- visual impairment.

In order to be eligible for services under Section 4410 of the Education Law, children must have a significant developmental delay that adversely affects the child's ability to learn. A child may also be eligible if the child can be classified as having one of the above disabilities, and the disability has been shown to adversely affect the child's ability to learn.

NYSED has issued the "Guide for Determining Eligibility and Preschool Special Education Programs and/or Services for Preschool Students with Disabilities" to assist professionals and families in understanding eligibility for services under Section 4410 of the Education Law (available on the SED Web site, http://www.vesid.nysed.gov).

## III. AGE ELIGIBILITY FOR EARLY INTERVENTION AND PRESCHOOL SPECIAL EDUCATION

### EARLY INTERVENTION PROGRAM

Section 2541 of the Public Health Law (PHL) defines "eligible child" for the Early Intervention Program (EIP) as an infant or toddler from birth through two years of age who has a disability, *except that any toddler with a disability who has been determined to be eligible for services under Section 4410 of the Education Law and who*:

- turns three years of age on or before August 31, shall, if requested by the parent, be eligible to receive EIP services contained in an Individualized Family Service Plan (IFSP) until September 1 of that calendar year; or,

- turns three years of age on or after September 1, shall, if requested by the parent and if already receiving EIP services, be eligible to continue receiving EIP services until January 2 of the next calendar year.

This means that children in the EIP who have been determined eligible for services under Section 4410 of the Education Law before their third birthday (e.g., the day before the child turns three years of age), and who are born during the months of January through August, can, at the option of their parents, remain in the EIP until September 1st

(e.g., through August 31st) of that same calendar year.  Children in the EIP who have been determined eligible for services under Section 4410 of the Education Law and who are born during the months of September through December can, at the option of their parents, remain in the EIP until January 2nd  (e.g., through January 1st) of the next calendar year.

Section 2541 also provides that any toddler who is receiving preschool special education programs and services under Section 4410 of the Education Law cannot also be an eligible child under the EIP.

Under Public Health Law (PHL), a child's eligibility for the EIP **ends as of his or her third birthday, unless the child has been referred to the CPSE and has been found eligible for services under Section 4410 of the Education Law before the date of his/her third birthday**.  The last date the child is eligible to receive services under the EIP, unless the child has been found eligible for services under Section 4410 of the Education Law, *is the day before his or her third birthday*.  For a child referred to the CPSE and found eligible for services under Section 4410 of the Education Law before the child's third birthday, the child's parents can choose either to transition their child to preschool special education; or, choose to have their child remain in the EIP until s/he ages out of EIP.

It is very important for parents to understand that before age three, their children must have been referred, evaluated, and found eligible by the CPSE for preschool special education programs and services, to ensure that services for their children can continue.

It is also important for parents to understand that not all children are appropriate for referral to preschool special education programs and services.  Some children make such significant progress from participating in the EIP that they will not need or be eligible for services under Section 4410 of the Education Law.  Early Intervention Officials, parents, service coordinators, and service providers should review the child's progress as s/he approaches age eligibility for preschool special education to determine whether the child may need services under Section 4410 of the Education Law; is no longer in need of services; or, would benefit from other early childhood services to maintain the developmental gains made in the EIP (see Section IV on Transition Procedures).

### PRESCHOOL SPECIAL EDUCATION

Under Section 4410 of the Education Law and Part 200 regulations, children with disabilities may be determined eligible for preschool special education programs and services *by their third birthday or earlier*.  Part 200.1(mm)(2) defines a child as eligible for services under Section 4410 of the Education Law as follows:

- If the child's birthday falls before July 1st, the child is eligible on January 2nd of the calendar year; otherwise, a child is eligible on July 1st of the calendar year.  A child is a preschool child with a disability through the month of August of the school year in which the child first becomes eligible to attend school.

This means that children with birth dates between January 1 and June 30 are first eligible for services under Section 4410 of the Education Law on *January 2* of *the calendar year during which they turn three years old*. Children with birth dates that fall on July 1 through December 31 are first eligible for services under Section 4410 of the Education Law on *July 1 of the calendar year during which they turn three*.

Children with birth dates that fall on July 1 through December 31st are first eligible for services under Section 4410 of Education Law on July 1 of the calendar year during which they turn three if they require a structured learning environment of twelve months to prevent substantial regression. Services for other children who only need ten months of programs and/or services would begin on the September starting date of the approved preschool program.

### CHILDREN REFERRED TO THE EIP WHEN AGE-ELIGIBLE FOR PRESCHOOL SPECIAL EDUCATION

It is strongly recommended that primary referral sources and parents of children age two and a half or older, who may have a developmental delay or disability and are not in the EIP, contact their school district CPSE to begin the CPSE process.

If a child is referred to the EIP when s/he is age-eligible for services under Section 4410 of the Education Law and has a disability or developmental delay that may impact on his/her education, the EIO may recommend to the parent that s/he refer the child directly to the CPSE rather than continue with the referral to the EIP. However, if a parent chooses to continue with the child's referral to the EIP, the EIO must designate an initial service coordinator and the service coordinator must assist the parent in the receipt of a multidisciplinary evaluation consistent with EIP requirements. The multidisciplinary evaluation must be completed and an IFSP must be developed within forty-five calendar days of the child's referral. The initial service coordinator must also explain to the parent that to ensure the child continues to receive services when s/he turns three – either through the EIP or preschool special education - the child must also be referred to the CPSE and be determined eligible for services under Section 4410 of the Education Law by her/his third birthday. If the child is found eligible for services under Section 4410 of the Education Law by the child's third birthday, the parent then has the option to transition his/her child to preschool special education programs and services, or the child may remain in the EIP until s/he ages out of EIP.

The parent must also be informed that if a child meets the eligibility criteria for the EIP but is not determined to be eligible for services under Section 4410 of the Education Law, the child's eligibility for EIP services will end at the child's third birthday. The last date that services can be delivered under the child's IFSP under these circumstances is *the day before the child's third birthday*.

## IV. TRANSITION PROCEDURES

### TRANSITION PLANNING FOR ALL CHILDREN

A transition plan must be developed for all children exiting the EIP, whether the child will be transitioning to programs and services under Section 4410 of the Education Law or to other early childhood services and supports. *It is very important to begin planning for transition as early as possible to ensure a successful transition for the child and family.* It is also important for parents, service coordinators, providers, and public officials to work together to:

- review the progress made by the child and family, and consider whether any services may be needed when the child exits the EIP;

- determine whether a referral is appropriate for preschool special education programs and services;

- determine whether the child and family may need services from other programs under the auspices of the NYSDOH, or services administered by other state or local agencies such as the Office of Mental Retardation and Developmental Disabilities (service coordination services, respite, etc), Office of Mental Health (children's mental health services), Office of Children and Family Services (child care services), etc.;

- ensure a transition plan is in place within required timelines to ensure continuity of services, as appropriate, for the child and family, and with parent consent, to incorporate the transition plan into the IFSP;

- develop a transition plan for the child and family, that includes steps to help the child adjust to and function in a new setting; and, procedures to prepare program staff or individual qualified personnel who will be providing services to the child to facilitate a smooth transition; and,

- identify community resources needed by and available to assist the child and family.

If a child has made such significant progress in the EIP that the child and family do not require any type of continuing services, the IFSP should include the steps that will be taken to discharge the child and family from the EIP.

### TRANSITION PLANNING FOR CHILDREN FOR WHOM A REFERRAL TO PROGRAMS UNDER SECTION 4410 OF THE EDUCATION LAW IS NOT THOUGHT TO BE APPROPRIATE

Transition planning for children for whom a referral to preschool special education programs and services is not thought to be appropriate should begin at the IFSP

9

meeting within six months prior to the child's third birthday, or earlier, if local procedures require that transition planning for these children begin at an earlier time. The transition plan must include steps to ensure the transition is completed by the time the child exits the EIP before his/her third birthday (when the child is no longer age eligible for the EIP). The last date for services under the IFSP must be the day before the child's third birthday.

The service coordinator is responsible for assisting the parent in identifying, locating, and accessing other early childhood and supportive services that may be needed by the child and family. The service coordinator may refer the family to the Early Childhood Direction Center (ECDC) or to the Child Care Resource and Referral Program (CCRR), which may assist the family in accessing child care services. Lists of the ECDCs and CCRRs are included in Appendix B and Appendix C.

### TRANSITION PLANNING FOR CHILDREN POTENTIALLY ELIGIBLE FOR PRESCHOOL SPECIAL EDUCATION SERVICES UNDER SECTION 4410 OF THE EDUCATION LAW

There are specific requirements in State and federal law for actions that Early Intervention Officials (EIOs) and school district officials must take for toddlers in the EIP and approaching their third birthday, who may be potentially eligible for services under Section 4410 of the Education Law. Many children in the EIP, particularly those with diagnosed conditions with a high probability of developmental delay or a substantial developmental delay may meet the eligibility criteria for preschool special education programs and services (see "Programmatic Eligibility" above). The definitions of developmental delay for purposes of preschool special education programs and services eligibility and for EIP eligibility are similar (see "Programmatic Eligibility" above); however, the Committee on Preschool Special Education (CPSE) must determine the extent to which the developmental delay will affect the child's ability to learn to decide whether a child is eligible for preschool special education programs and services. Appendix D contains a chart describing the roles and responsibilities of public officials, professionals, and parents in the transition process.

### DECIDING WHETHER THE CPSE SHOULD BE NOTIFIED OF THE CHILD'S POTENTIAL TRANSITION AND A TRANSITION CONFERENCE SHOULD BE SCHEDULED

Early Intervention Officials have explicit responsibility in the PHL for notifying school districts, with parental consent, of children's potential eligibility for services under Section 4410 of the Education Law and for arranging transition conferences for these children and their families. Children who make significant progress in EI may not need special education services, and a referral to the CPSE may not be appropriate.

All parents have the right to refer their children to the school district in which they reside for an evaluation for special education programs and services. In addition, service providers and other referral sources designated under the Education Law can directly refer a child who may be in need of special education programs and services to the child's school district.

As the child approaches the age at which s/he is first eligible for services under Section 4410 of the Education Law, the EIO, service coordinator, service providers, and parent(s) should review the progress made by the child. The following should be considered in deciding whether it is appropriate to refer a child in the Early Intervention Program for services under Section 4410 of the Education Law:

- the nature and extent of the child's disability, including whether a child has a condition that affects the child's ability to learn;

- developmental progress made by the child, and whether the child continues to experience a significant developmental delay (or delays in multiple areas) that impact the child's ability to learn;

- functional abilities and needs of the child;

- the family's perspective on the child's developmental and functional status and ability of the child to learn;

- results of any recent evaluations and ongoing assessments completed by service providers; and,

- recommendations made by the child's service providers, health care providers, specialists involved in the child's care, etc., about the child's potential need for services under Section 4410 of the Education Law.

### *Notice Requirements and Timeframes for the Transition Conference*

Under Section 2548 of the PHL and Section 69-4.20(b) of EIP regulations, the EIO is required, with parental consent, to notify the school district in which a child resides of the child's potential eligibility for services under Section 4410 of the Education Law at least 120 days before the child is first eligible for these services. In addition, the EIO must, with parental consent, arrange for a transition conference among the EIO, service coordinator, parent, and the chair (or her/his designee) of the CPSE at least 90 days before the child is first eligible for services under Section 4410 of the Education Law, or the child's third birthday, whichever is first. If the child is already receiving, or may need additional services from another state agency (for example, if a child is in an Office of Mental Retardation and Developmental Disabilities (OMRDD) waiver program or may be eligible for services under OMRDD) it may be appropriate to invite representatives of that agency, with the parent's consent.

EIOs must obtain parental consent for the notice to the CPSE of the child's potential eligibility for services under Section 4410 of the Education Law, convening of the transition conference, and referral to the school district *in writing* and ensure these consents and all actions related to transition are documented in the child's record. It is recommended that the EIO send the referral to the CPSE with a return receipt requested.

If the EIO does not ensure that the school district is notified of the child's potential eligibility for services under Section 4410 of the Education Law, and a referral is not

11

made to the CPSE within the required timeframes to ensure an eligibility determination is rendered by the CPSE before the child's third birthday, the parent(s) has due process rights under the EIP. The child should continue to receive the services included in the most recent IFSP until all due process proceedings are completed. However, there are no due process rights for parents under the EIP if parents do not consent in a timely fashion to a referral to the CPSE by the EIO and do not provide timely consent to the CPSE to evaluate the child. Appendix E provides a chart with required parent consents related to the transition process and sample consent forms for key events in the transition process.

In managing the notice and transition conference requirements at the municipal level, it is permissible for the EIO to group children by the months in which their birth dates occur, as long as notices are sent and transition conferences are convened within the required timeframes. The chart in Appendix F describes eligibility and transition dates.

Under Section 4410 of the Education Law, the chair of the CPSE, or his or her designee, must participate in transition conferences arranged by the EIO for children potentially eligible for services under Section 4410 of the Education Law. The notice to the school district should request the CPSE chair or designee to participate in the conference, and should include information about the date, time, and location of the conference. The CPSE chair or designee should also be informed that s/he may participate in the conference by telephone if s/he is unable to participate in person.

### Purposes and Content of the Transition Conference

The purposes of the transition conference are to decide whether the child should be referred to preschool special education programs and services under Section 4410 of the Education Law; review program options available to the child and family; and, develop a transition plan. There may be some circumstances under which a child is referred to the CPSE prior to the convening of a transition conference. The parent must be provided with the opportunity to participate in a transition conference even if the child has already been referred for services under Section 4410 of the Education Law.

As part of this discussion, parents should be informed about the following:

- The EIO must ensure that children who are potentially eligible for services under Section 4410 of the Education Law are referred, with parental consent, to the CPSE, of the school district in which they reside.

- The parent may also refer the child directly to the CPSE, as can service providers and other referral sources (such as health care providers) under the Education Law.

- The child must be determined eligible for services pursuant to Section 4410 of the Education Law before her/his third birthday, in order to ensure continuity of services beyond that date.

- The CPSE will contact the parent to provide information about the CPSE evaluation process following the receipt of a referral from the EIO, the parent, service provider, or any other referral source under the Education Law.

- The parent must provide consent to the CPSE to evaluate the child for the CPSE to determine the child's eligibility for services under Section 4410 of the Education Law. This consent to evaluate the child must be provided to the CPSE within sufficient time to ensure the child is evaluated and an eligibility determination is made before the child's third birthday, to ensure continuity of EIP services for the child. It is very important that the EIO explain to the parent that the CPSE must receive the consent in a timely manner in order to ensure that an eligibility determination is made by the CPSE before the child's third birthday.

- The CPSE must act within 30 school days of its receipt of the parent's consent to evaluate the child and make a recommendation to the board of education. *School days* are defined in Part 200.1(n)(1) of Education Regulations as "*any day, including a partial day, that students are in attendance in school, including students with disabilities and without disabilities, except that, during the months of July and August, school day means every day except Saturday, Sunday, and legal holidays.*"

- If the parent does not complete and return the consent for the child's evaluation by the CPSE, the CPSE must follow up with the parent to ensure the parent received the request to evaluate the child and understands this request.

- The child's most recent EIP evaluation report, and other EIP evaluation and assessment records can be provided to the CPSE with parental consent and are a valuable resource for CPSE members in deciding the type and extent of evaluation needed to establish a child's eligibility for services under Section 4410 of the Education Law. Parents should be encouraged to work with their service coordinator to identify and select appropriate reports and records that may be helpful in the CPSE's evaluation and eligibility determination process, and provide consent to transmit these records to the CPSE. It is not necessary or required that children be re-evaluated by the EIP before transitioning to preschool special education. This provision is meant to reduce unnecessary or duplicative evaluations of children.

- If the child is determined eligible for services pursuant to Section 4410 of the Education Law before her/his third birthday, the parent may transition the child to preschool special education programs and services or may choose to have the child remain in the EIP until s/he ages out.

- As with EIP services, the child's participation in preschool special education programs and services is voluntary on the part of parents.

- If no referral is made and the child is not evaluated and, therefore, no eligibility determination is made for services under Section 4410 of the Education Law before the child's third birthday, the child's and family's participation in the EIP will end at the child's third birthday. Similarly, if the parent does not sign and return

the consent to the child's evaluation to the CPSE in a timely manner, and therefore, the CPSE does not render an eligibility determination before the child's third birthday, the child's and family's participation in the EIP ends at the child's third birthday. A transition plan will be developed, which may include referral to other services (e.g., Head Start, other early childhood programs). The last day of services in the IFSP will be the day before the child's third birthday.

- If the CPSE finds that the child is not eligible for services under Section 4410 of the Education Law, the child's eligibility for the EIP will end at the child's third birthday, and a transition plan to other appropriate early childhood and supportive services will be developed. The last date for services in the IFSP will be the day before the child's third birthday.

- If the parent has signed and returned the consent to the child's evaluation to the CPSE in a timely manner, but the CPSE does not render an eligibility determination before the child's third birthday, the child's eligibility for the EIP will end at his/her third birthday. The last date for services in the IFSP will be the day before the child's third birthday. The parent has due process rights under Section 4410 of the Education Law to access preschool special education services while a determination from the CPSE is pending.

Parents have a key role in the transition of their children from the EIP to preschool special education. It is important that parents take an active role in transitioning their children from the Early Intervention Program to preschool special education programs and services under Section 4410 of the Education Law. The transition conference is an important opportunity for parents to learn about all available options and participate in the transition process. However, if parents choose not to participate in the transition conference, the EIO should notify the parent in writing of all of the above information that would otherwise be discussed at the transition conference. A sample notice is included in Appendix G.

*Procedures to Refer the Child to the Committee on Preschool Special Education*

A referral to CPSE is a written statement asking the school district to evaluate the child to determine if he or she needs special education services. Various people can make a referral to the CPSE including the parent, a doctor, a judicial officer, a designated person in a public agency or someone from an Early Childhood Direction Center, an approved preschool program or the EIP. Once the referral has been made, parental consent is required for the child to be evaluated.

If a determination is made at the transition conference to refer the child to the CPSE, and the parent consents to the referral, the EIO must refer the child in writing to the chairperson of the CPSE in the school district in which the child resides. If the parent does not participate in the transition conference, the EIO is still responsible for referring the child to the CPSE, with parental consent, if the EIO believes the child is potentially eligible for services under Section 4410 of the Education Law. The referral must specify the extent to which the child has received EIP services prior to the referral.

*Transition of Children At Age Three*

A CPSE chairperson who receives a referral must immediately notify the parent by telephone or in writing that a referral has been received and request consent for evaluation of the child. The parent's consent to the evaluation by the CPSE must be in writing and must be returned by the parent to the CPSE. In order to avoid unnecessary disruption of programs and services, it is important for parents to respond as quickly as possible with written consent to evaluate their children, to ensure an eligibility determination can be made by the CPSE before the children's third birthday.

Once written parental consent to evaluate a child has been received, the CPSE must assure that the process to determine a child's eligibility and need for special education programs and services is initiated and completed in time for children to begin receiving services on the third birthday or the first date of eligibility, whichever comes first.

If the parent does not provide consent for an individual preschool evaluation, the CPSE is required to follow-up with the parent to ensure that the parent has received and understands the request for consent. The parent should be advised by the CPSE and service coordinator that if parental consent is not given within sufficient time for an evaluation and eligibility determination by the CPSE before the child's third birthday, the child's and family's participation in the EIP will end on the child's third birthday and a transition plan will be developed, which may include referral to other services (e.g., Head Start, other early childhood services).

### CPSE Evaluation Process

After a child is referred for an evaluation for special education, the parent will be asked to give written consent to have the child evaluated by an approved evaluator selected by the parent. The parent will also receive a copy of the Procedural Safeguard Notice, which provides a full explanation of their rights under IDEA, from the CPSE chair or his or her designee. Within 30 school days of receiving the parent's consent for the child's evaluation, the CPSE must be convened at a mutually convenient time and place, to review the evaluation results and to develop a recommendation regarding the preschool child's eligibility for special education programs and services. Eligibility is determined consistent with Section 200.1(mm) of the Regulations of the Commissioner of Education. For more information on eligibility determinations and parental rights, go to the "Guide for Determining Eligibility and Preschool Special Education Programs and/or Services for Preschool Students with Disabilities" (available on the SED Web site, http://www.vesid.nysed.gov).

It is important that the child's parent understand that s/he is a member of the school district CPSE for his or her child. Parents have a significant role in the evaluation of the child, in the CPSE's discussion regarding eligibility for preschool special education, and in planning and developing the child's Individualized Education Program (IEP). Parents may share information regarding the child's developmental, health, and family history as well as the child's strengths, needs, likes, dislikes, and typical behavior related to self-care, language and communication, motor skills, and social interaction with peers and adults.

It is important to note that part or all of the evaluations performed under the EIP can be provided to the CPSE with parent consent and can be used by the CPSE in making a determination as to whether a child is eligible for preschool special education programs and services under Section 4410 of the Education Law. The CPSE may determine that the evaluation is sufficient to make an eligibility determination or may require additional evaluations.

If the CPSE determines that a child is not eligible for services under Section 4410 of the Education Law, the child's eligibility for the EIP will end the day before the child's third birthday and a transition plan to other appropriate early childhood and supportive services will be developed. If parents disagree, or if the CPSE does not make a recommendation in a timely way, they should discuss their concerns with the CPSE. In addition parents or school districts may contact their Office of Vocational and Educational Services for Individuals with Disabilities (VESID) Special Education Quality Assurance Regional Offices for clarification and technical assistance (see Appendix H for contact information). If it is not possible to resolve disagreements informally, mediation may be used to work out differences in a timely way. Parents also have the right to request an impartial hearing in writing to the BOE. The decision made by the impartial hearing officer (IHO) is final, unless the parents or the school district ask for a review of the decision by a State Review Officer.

Until all proceedings have been completed, pendency for the child is an approved preschool special education program and/or services agreed to by the CPSE and the parents, appropriate to meet the needs of the child (Section 200.16(g)(3)(iv) of the Regulations of the Commissioner). In the event that the CPSE and the parents cannot agree, the IHO will determine the child's pendency placement. A child who has received Early Intervention Services and is now of preschool age may, during hearings and appeals, receive special education in the same program as the early intervention program only if that program is also an approved preschool program.

If parents believe that their school districts have violated procedures under State or federal special education laws and regulations, they may submit a written complaint to the New York State Education Department, Coordinator, Statewide Education Quality Assurance (see Appendix H). Complaints are investigated and determinations are made within sixty calendar days of receipt, unless exceptional circumstances exist with respect to the specific complaint.

If a child is found eligible for preschool special education programs and services, the parent must be informed that the child may transition to preschool special education programs and services; or, remain in the EIP on and past their third birthday until the child ages out. When the child transitions to preschool special education programs and services in his or her IEP, the CPSE is responsible for arranging for the provider(s) to deliver the preschool special education programs and services for the child.

### *IEPS AND IFSPS FOR CHILDREN FOUND ELIGIBLE FOR PRESCHOOL SPECIAL EDUCATION PROGRAMS AND SERVICES REMAINING IN THE EIP BEYOND THEIR THIRD BIRTHDAY*

If the CPSE determines that the preschool child has a disability, the committee must recommend appropriate special education services and/or programs and develop an individualized education program (IEP) for the child in accordance with State and federal laws and regulations. An IEP must be developed for all children determined to be eligible for preschool special education programs and services, regardless of whether the parent elects to have the child transition to services under Section 4410 of the Education Law, or remain in the EIP on and after the child's third birthday. The CPSE must indicate on the IEP the date for initiation of special education programs and services, based on the agreement reached by the CPSE and the date the child is first eligible for preschool special education.

In developing the IEP, the CPSE may consider a number of special education programs or services to meet the child's individual needs. The recommendation for special education services must be implemented with consideration given to the least restrictive environment. The four educational environments are listed below, in order from least to most restrictive:

- Related services such as speech therapy, physical therapy, and occupational therapy.

- Special Education Itinerant Teacher (SEIT) - A special education teacher works with a child in a home or community setting recommended by the CPSE.

- Special Class in an Integrated Setting (SC/IS) - A class with preschool students with disabilities and their typically developing peers.

- Special Class (SC) - A class with only preschool students with disabilities.

Prior to recommending special education services in a setting that includes only preschool children with disabilities, the committee shall first consider providing special education services in a setting where age-appropriate peers without disabilities are typically found. Provision of special education services in a setting with no regular contact with age-appropriate peers without disabilities must be documented on the child's IEP and shall only be considered when the nature or severity of the child's disability is such that education in a less restrictive environment, with the use of supplementary aids and services, cannot be satisfactorily achieved.

In the CPSE process, parents have the right to express a preference for services that must be considered by the CPSE. However, the CPSE, based on the consensus of the members, must recommend appropriate programs and services for each eligible child. If the CPSE recommends different programs and services than the parents requested, the CPSE recommendation must indicate the parent's preference, and the reason why the CPSE made a different recommendation. Parents must also be given information about their due process rights to receive information about the actions that the CPSE will take, as well as ways that parents can challenge the CPSE recommendation.

At the time the IEP is developed, the CPSE (which includes a professional designated by the EIO charged with responsibility for the child transitioning from the EIP) must explain the following to the child's parent:

- The differences between the IEP and IFSP.

- The parent can choose to have their child complete the transition to preschool special education programs and services under the IEP; or, to continue to receive the services in the child's and family's IFSP, until the child is no longer age-eligible for the EIP.

- The CPSE must indicate on the IEP the date for initiation of special education programs and services based on the agreement reached by the CPSE, the date the child is first eligible for preschool special education, and whether the parent wishes to have the child transition to services under Section 4410 of the Education Law, or continue to receive services in the child's and family's IFSP until the child is no longer age-eligible for the EIP.

- The IFSP will be modified to include the date EIP services will end and the child will transition to preschool special education programs and services.

- The parent may choose, at any time, to transition the child to services under Section 4410 of the Education Law at an earlier date than the start date in the IEP.

Upon receipt of the recommendation of the CPSE, the board of education must arrange for the child to receive the recommended special education programs and services beginning with the July, September, or January starting date for the approved program. However, if the recommendation of the CPSE is made less than 30 school days prior to, or after the July, September, or January starting date, the services must be provided no later than 30 school days from the recommendation. To avoid a gap in services for those children who will continue in the EIP on and past their third birthday, the BOE must arrange for the child to receive programs and services on the date recommended by the CPSE.

### CPSE PROGRESS REPORTS AND THE ANNUAL REVIEW

When parents and the CPSE develop a child's IEP, they must decide how and when the parent(s) will be informed of the child's progress. Once a child transitions to preschool special education programs and services, progress reports must be provided at least as often as they are for non-disabled children in a regular education program in their school district. Progress can be reported by regular telephone calls from the child's teacher or service provider, notes and comments in a shared notebook or formal progress reports, which tell how the child is progressing toward IEP goals, and whether the child is expected to meet the goals on the IEP by the date planned.

A child's IEP must be reviewed at least once a year. If needed, parents, the school district CPSE, or the preschool program provider may also ask for a meeting at any time during the school year to discuss a child's progress or review a child's program.

18

## V. TRANSITION FOR CHILDREN IN FOSTER CARE

All of the transition procedures described above apply to children in foster care who are in the Early Intervention Program (EIP). However, for children in foster care, the local social services commissioner responsible for the child must be involved in the transition planning process (i.e., the local social services commissioner who has the care and custody or custody and guardianship of the child). The local social services commissioner should be invited to participate in the review of IFSP to determine whether the child needs a referral for services under Section 4410 of the Education Law, and, if applicable, should be invited to participate the child's transition conference.

It is also important to note that children in foster care may, under certain circumstances, require the appointment of a surrogate parent by the EIO or Committee on Preschool Special Education (CPSE). If the EIO has appointed a surrogate parent for a child in foster care, it is possible that the CPSE will continue to have this surrogate parent represent the child, or there may be a need for the CPSE to appoint a different surrogate parent for purposes of services under Section 4410 of the Education Law. If a surrogate parent is appointed by either the EIO or the CPSE, the surrogate parent is accorded all the rights and responsibilities of the child's parent for purposes of the Early Intervention Program and preschool special education programs and services.

Appendix I includes information about the roles and responsibilities of Early Intervention Officials, service coordinators, local Department of Social Services caseworkers, and the CPSE in the transition process for children in the EIP who are also in the foster care system. The Department of Health and Office of Children and Family Services jointly developed a protocol for children in foster care and the EIP, which is available on the Department's Web site (http://www.health.state.ny.us).

## VI. OTHER PROGRAMS AND RESOURCES FOR CHILDREN AND THEIR FAMILIES

In addition to the Early Intervention Program (EIP) and preschool special education programs and services, there are a number of programs administered by other State agencies that are helpful to children with special needs and their families. It is important for all professionals working with young children and their families to be informed about and help families access services available through other State agencies. Although this is particularly important when children are transitioning from the EIP to other services, it is also important for families and service coordinators to be aware of and access these other service delivery systems as needs emerge while children are receiving services from the EIP. These include:

### OFFICE OF MENTAL RETARDATION AND DEVELOPMENTAL DISABILITIES

The Office of Mental Retardation and Developmental Disabilities (OMRDD) operates 13 Developmental Disabilities Services Offices (DDSOs) responsible for arranging and planning for the care, treatment, habilitation, and rehabilitation services to individuals with mental retardation and developmental disabilities (such as autism, cerebral palsy, seizure disorders, Down syndrome, and children with multiple disabilities). In partnership with consumers, families, staff, private providers, and local governments,

19