UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
S.W., by her parent and natural guardian, J.W.,
individually and on behalf of all others similarly
situated; A.W., by her parent and natural guardian
A.W., individually and on behalf of all others similarly
situated; B.F., by his parent and natural guardian, P.F.,
individually and on behalf of all others similarly
situated; J.F. and P.F., by their parent and natural guardian,
A.F., individually and on behalf of all others similarly          Civ. Action No.
situated; L.T., by her parent and natural guardian, R.T.,         07 CIV 5708 (WCC)
individually and on behalf of all others similarly situated,

                              Plaintiffs,

              - against -

SHEILA WARREN, sued individually, and as
Director of Early Intervention Services for Orange County,
ORANGE COUNTY DEPARTMENT OF HEALTH,
COUNTY OF ORANGE,

                              Defendants.
-------------------------------------------------------------------------X


# DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION
## FOR PRELIMINARY INJUNCTIVE RELIEF


LAMB & BARNOSKY, LLP
*Attorneys for Defendants*
SHEILA WARREN, ORANGE
COUNTY DEPARTMENT OF HEALTH,
COUNTY OF ORANGE
534 Broadhollow Rd., Ste. 210
P. O. Box 9034
Melville, New York  11747-9034
(631) 694-2300
Fax:  (631) 454-3811

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT................................................................................. 1

STATEMENT OF FACTS.......................................................................................... 3

STATUTORY FRAMEWORK................................................................................... 3

POINT I

PLAINTIFFS ARE NOT ENTITLED TO THE RETROSPECTIVE
INJUNCTIVE RELIEF SOUGHT..................................................................... 4

POINT II

BECAUSE PLAINTIFFS ARE NOT ENTITLED TO THE INJUNCTIVE
RELIEF REQUESTED AND NO CLASS HAS BEEN CERTIFIED,
CLASSWIDE INJUNCTIVE RELIEF IS EQUALLY INAPPROPRIATE . 6

POINT III

PLAINTIFFS HAVE FAILED TO SATISFY THE HEIGHTENED
STANDARD FOR ENTITLEMENT TO MANDATORY INJUNCTIVE
RELIEF AGAINST A GOVERNMENTAL AGENCY ................................. 7

a.  Plaintiffs Cannot Establish a Clear or Substantial Likelihood of Success
    on the Merits Given That They Have Failed to Exhaust Their
    Administrative Remedies .......................................................................... 8

b.  The Transportation Issue is Moot as to A.W. and In Any Case Should
    Be Properly Decided in an Administrative Hearing ................................. 11

c.  The County's Policies Do Not Limit the Number of Available
    Service Providers ...................................................................................... 12

d.  The County Does Not Limit the Number of ABA Therapy Hours......... 14

e.  The County Lawfully Advises Parents Regarding Evaluations and
    Services for Children Between the Ages of Two and a Half and
    Three Years ............................................................................................... 15

f.    Defendants Are Not Obligated By Law to Provide Plaintiffs With
PreSchool Special Education Services ...................................................    17

g.    There is an Adequate Remedy at Law Available to Address Plaintiffs'
Insurance Complaint..................................................................................    18

POINT IV

PLAINTIFFS' FEDERAL CLAIMS SHOULD BE BARRED BY
THE EQUITABLE DOCTRINE OF LACHES................................................    19

POINT V

PLAINTIFFS IMPROPERLY REQUEST PRELIMINARY INJUNCTIVE
RELIEF EQUIVALENT TO THE ULTIMATE INJUNCTIVE RELIEF
THEY SEEK.......................................................................................................    20

CONCLUSION .............................................................................................................    21

# TABLE OF AUTHORITIES

Federal Cases

200 E. 84th St. Owners, Inc. v. Salomone & Co., 1989 WL 111105 ....................................... 20

Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 187, 200
    (1982) ................................................................................................................................. 14

Cave v. East Meadow Union Free Sch. Dist., 480 F. Supp.2d 610, 632 (E.D.N.Y.
    2007) ........................................................................................................................ 8, 10, 11

Consolidation Coal Co. v. Disabled Miners of Southern West Virginia, 442 F.2d 1261, 1267
    (4th Cir. 1971) ................................................................................................................... 12

D.D. v. New York City Bd. Of Educ.,, 465 F.3d 503, 510 ........................................................ 8

Ebanks v. The Neiman Marcus Group, Inc., 414 F. Supp.2d 320, 327 ...................................... 2

Ford v. Reynolds, 316 F.3d 351, 355 (2d Cir. 2003) ............................................................... 19

J.S. ex rel. N.S. v. Attica Cent. S.D., 386 F.3d 107, 114 (2d Cir. 2004) .................................. 10

K.P. v. Juzwic, 891 F. Supp. 703, 715 (D. Conn. 1995) .......................................................... 19

Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002) ..................................................... 19

Malkentzos v. DeBuono, 102 F.3d 50 (2d Cir. 1996) ............................................................. 4, 8

Mastrovincenzo v. City of New York, 435 F.3d 78, 89 (2d Cir. 2006), *amended on other
    grounds*, 480 F.3d 138 (2d Cir. 2007) ................................................................................. 8

Matrejek v. Brewster Cent. Sch. Dist., 471 F. Supp.2d 415, 418 .............................................. 9

Meineke Discount Muffler Shops, 603 F. Supp. 443, 444 (E.D.N.Y. 1985) ................. 7, 13, 20

Michaels v. Mills, 2004 WL 816918 (W.D.N.Y. 2004) .......................................................... 10

Polera v. Bd. of Ed. of the Newburgh ECSD, 288 F.3d 478, 489 (2d Cir. 2002) .................... 10

R.M. ex rel. J.M. v. Vernon Bd. of Educ., 208 F. Supp.2d 216, 220 (D. Conn. 2002) ............. 9

Riley v. Ambach, 668 F.2d 635, 640 (2d Cir. 1981) ..................................................... 9

Robins Island Preservation Fund Inc., v. Southold Dev. Corp., 959 F.2d 409, 423 (2d Cir.1992) ................................................................................................................ 19

Sanford v. R.L. Coleman Realty Co. 573 F.2d 173, 178 (4th Cir. 1978) ................................... 7

Spinner v. City of New York, No. CV-01-2715 (CPS), 2003 WL 23648356, at *1 n.2, *7 (E.D.N.Y. October 10, 2003) ................................................................................ 6

W.S. ex rel. C.S. v. Rye City Sch. Dist., 454 F. Supp.2d 134, 137 ............................................ 9

Walczak v. Florida UFSD, 142 F.3d 119 (2d Cir. 1998) ........................................................ 14

Waldman Publishing Corp. v. Landoll, Inc., 43 F.3d 775, 785 (2d Cir. 1994) ....................... 12

WarnerVision Entertainment Inc. v. Empire of Carolina, Inc., 101 F.3d 259, 261 (2d Cir. 1996)................................................................................................................. 20

## Federal Statutes

20 U.S.C. § 1400 ................................................................................................... 3, 4, 18

20 U.S.C. § 1415 ......................................................................................................... 18

20 U.S.C. § 1415(f) ...................................................................................................... 9

20 U.S.C. § 1436 ......................................................................................................... 14

28 U.S.C. § 1746 ........................................................................................................... 2

§ 1983 ...................................................................................................................... 11

Section 504 ............................................................................................................... 11

## State Statutes

Education Law § 4402 ................................................................................................ 4, 13

Education Law § 4404(1) ............................................................................................. 18

Education Law § 4410 ................................................................................................ 4, 19

Education Law § 4410(2) ................................................................................................ 15

Education Law § 4410(3)(a)(1) ...................................................................................... 14

Education Law § 4410(5) ................................................................................................ 15

Education Law § 4410(5)(f) ............................................................................................ 15

Education Law § 4414(b) ................................................................................................ 11

Education Law § 4414(d) ................................................................................................ 11

Public Health Law § 2540 ................................................................................................ 3

Public Health Law § 2541(8) ....................................................................................... 3, 5

Public Health Law § 2545 ........................................................................................... 3, 14

Public Health Law § 2549 ................................................................................................ 9

Public Health Law § 2552 ................................................................................................ 4

Federal Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 3

Fed. R. Civ. P. 19(a) ...................................................................................................... 11

State Regulations

8 N.Y.C.R.R. § 200.16 ................................................................................................ 4, 13

8 N.Y.C.R.R. §§ 200.2(d) ............................................................................................... 13

8 NYCRR § 200.5 ........................................................................................................... 18

## PRELIMINARY STATEMENT

The parents of six children with disabilities are seeking preliminary mandatory injunctive relief against Defendants, COUNTY OF ORANGE (the "County"), ORANGE COUNTY DEPARTMENT OF HEALTH (the "Department of Health") and SHEILA WARREN, sued individually and as Director of Early Intervention Services for Orange County ("Warren"). For the reasons detailed below, Plaintiffs have failed to meet the heightened standard for entitlement to mandatory relief against a governmental agency, that of a "clear or substantial showing of the likelihood of success." For this reason and the other reasons set forth herein, their request should be denied.

First, the Court should note that none of the Plaintiffs are currently eligible to receive services through the County's early intervention program and their request for injunctive relief with respect to that program is entirely retrospective at this point. Further, no class has been certified and classwide injunctive relief is inappropriate here.

Second, none of these parents has invoked the administrative remedy available to them should they disagree with the services provided under an Individualized Family Service Plan (IFSP) or an Individualized Education Plan (IEP), as the case may be, for their children. The failure to do so deprives the Court of the expertise of the specially trained impartial hearing officers and the development of a full record concerning these factually sensitive and legally technical issues. Rather, Plaintiffs seek to circumvent the administrative remedy provided for in the federal and state statutory scheme regarding the provision of early childhood and preschool services to disabled children based upon the conclusory and self-serving allegation that administrative relief is futile because of the unwritten policies and practices of the County. While Plaintiffs may argue that time is of the essence and that they cannot await the outcome of

1

an administrative due process hearing, or even a trial on the merits, the Court should note that in many cases Plaintiffs sat on claims for compensatory services since 2004/05, and that Plaintiffs waited almost 3 months from the filing of the Complaint to bring on the present Preliminary Injunction motion.

Worse still, Plaintiffs wish to circumvent pre-trial discovery and a trial on the merits and, based upon an incomplete and inchoate record, procure the ultimate injunctive relief that they are seeking in their Complaint on a preliminary basis. As more fully set forth below, ultimate relief should not be granted on a motion for preliminary injunction.

Plaintiffs are also seeking relief that will adversely affect parties who have not been joined in this action, namely the individual School Districts that are responsible for the development of IEPs and the provision of services to pre-school children. The Court cannot grant the relief sought by Plaintiffs absent these necessary parties.

Further, it should be noted that the affidavits submitted in support of Plaintiffs' motion are replete with unsubstantiated hearsay statements and in many cases the hearsay is not attributed to any particular individual(s) such that the County can even rebut the hearsay statements. Therefore these statements should not be considered by the Court. Further, no consideration should be given to the Affidavit of Patricia Flynn, which is not signed, notarized or dated, nor to the Affidavit of AnnMarie Flynn, which also is not notarized. *Ebanks v. The Neiman Marcus Group, Inc.*, 414 F. Supp.2d 320, 327 (S.D.N.Y. 2006) (finding unsworn affidavits inadmissible unless they comply with 28 U.S.C. § 1746, which allows for the submission of an unsworn declaration to a court if it is subscribed by the declarant, as true under penalty of perjury, and dated).

2

Lastly, Defendants have simultaneously moved the Court for the dismissal of Plaintiffs'

Complaint pursuant to FRCP 12(b)(6). For the reasons fully set forth in Defendants' Memorandum of

Law in Support to Motion to Dismiss ("MOL – Motion to Dismiss"), this action should be dismissed

thereby automatically resulting in the denial of the present motion for injunctive relief.

## STATEMENT OF FACTS

The relevant facts are summarized in the Affidavits of Sheila Warren, Susan Lee and Dr.

Jean Hudson, sworn to on October 16, 2007.

## STATUTORY FRAMEWORK

Pursuant to the IDEA, New York enacted Public Health Law § 2540 *et seq.*, which established

New York's Early Intervention Program ("EIP"). Children under the age of three years who have a

disability or developmental delay are eligible for the EIP. Pub. Health Law § 2540 *et seq.* Under the

EIP, the County is responsible for the development and implementation of an Individualized Family

Service Plan ("IFSP") and the payment for services provided thereunder. *Id.* The IFSP will include

the types of services, frequency and duration of the services to be provided to the child. Pub. Health

Law § 2545.

Under Public Health Law § 2541(8), a child's eligibility for the EIP ends as of his/her 3rd

birthday. A child who continues to require services after the age of 3 may receive services under the

Preschool Special Education Program administered by the New York State Department of Education

and provided through local school districts, subject to parental consent and qualification for services.

20 U.S.C. § 1400 *et seq.*; Educ. Law §4410.

Decisions concerning whether a child is eligible for preschool services, and the type and level

of services a child is to receive in the preschool program are determined by the child's local school

district based on recommendations made by the school district's Committee on Preschool Special

3

Education ("CPSE").  Educ. Law 4410; 8 NYCRR § 200.16.  The CPSE develops an individualized

education plan ("IEP") for the child and the school district is responsible for arranging for the services

listed in the IEP.  Educ. Law 4410; 8 NYCRR § 200.16.

The County is not a mandated member of the CPSE.  Educ. Law 4410.  A representative of

the County may attend a CPSE meeting, as available, but attendance by the County is not required.

The County is only responsible for the payment to service providers.  Educ. Law 4410; 8 NYCRR §

200.16.

Once the child reaches school age (age 5), the County's IDEA obligations toward that child

ceases.  20 U.S.C. § 1400 *et seq.*

## POINT I

### PLAINTIFFS ARE NOT ENTITLED
### TO THE RETROSPECTIVE
### INJUNCTIVE RELIEF SOUGHT

It is well settled that a Plaintiff may not seek retrospective relief against a governmental entity,

that is relief that seeks to undo alleged past wrongs, through a preliminary injunction motion.

*Malkentzos v. DeBuono,* 102 F.3d 50 (2d Cir. 1996) (the District Court abused its discretion in issuing

a preliminary injunction ordering government entity to reimburse parent for retrospective out-of-

pocket expenses incurred in providing child with ABA therapy).

Plaintiffs seek a preliminary injunction requiring Defendants to immediately provide to the six

named Plaintiffs appropriate early intervention and/or preschool services guaranteed them by law.

(Plaintiffs' Brief at 3.)   However, the County is only obligated by law to provide services to students

in the Early Intervention Program.  Education Law §§ 4402 and 4410 (providing school districts are

responsible for the provision of special education services and programs to preschool children -- age 3

to 5 -- and school age students -- age 5 and up); Public Health Law § 2552 (requiring that counties are

"responsible for insuring that the early intervention services contained in an IFSP are provided to eligible children and their families"). Because the County is no longer required by law to provide special education services for any of the six Plaintiffs, Plaintiffs' motion for retrospective injunctive relief is improper.

Under Public Health Law § 2541(8), a child is eligible for early intervention if the child is:

> (a) . . . an infant or toddler from birth through age two who has a disability; provided, however, that any toddler with a disability who has been determined to be eligible for program services under section forty-four hundred ten of the education law [preschool services] and;

> (i) who turns three years of age on or before the thirty-first day of August shall, if requested by the parent, be eligible to receive early intervention services contained in an IFSP until the first day of September of that calendar year; or

> (ii) who turns three years of age on or after the first day of September shall, if requested by the parent and if already receiving services pursuant to this title, be eligible to continue receiving such services until the second day of January of the following calendar year.

> (b) Notwithstanding the provisions of paragraph (a) of this subdivision, a child who receives services pursuant to section forty-four hundred ten of the education law [preschool services] shall not be an eligible child.

Plaintiff A.W. aged out of early intervention on August 31, 2005 and transitioned into preschool that same month. (Pl's Br. at 9). Beginning in September 2007, A.W. aged out of preschool services (Lee Aff. at ¶11). Plaintiff L.T. aged out of early intervention on August 31, 2007 and is currently receiving preschool services (Pl's Br. at 12). Plaintiff B.F. aged out of early intervention on August 31, 2006 (Pl's Br. at 14). Plaintiff S.W. aged out of early intervention on August 31, 2006 and began receiving preschool services in September 2006 (Pl's Br. at 11). Plaintiffs P.F. and J.F. are no longer eligible to receive early intervention services from the County because they transitioned to and have been receiving preschool services since September 2007 (Lee Aff. at ¶ 19; Pl's. Br. at 14).

Accordingly, since all six Plaintiffs are currently ineligible for early intervention services, Plaintiffs are improperly seeking retrospective injunctive relief against the County. The County has no legal obligation to provide early intervention services to school age or preschool children such as the six Plaintiffs, and the local school districts who are responsible for providing preschool and school age services have not been made parties to this case. It is respectfully submitted that the Plaintiffs' Motion for Preliminary Injunctive Relief should be denied on this basis alone.

## POINT II

### BECAUSE PLAINTIFFS ARE NOT ENTITLED TO THE INJUNCTIVE RELIEF REQUESTED AND NO CLASS HAS BEEN CERTIFIED, CLASSWIDE INJUNCTIVE RELIEF IS EQUALLY INAPPROPRIATE

As demonstrated in Point I *supra*, the six individual Plaintiffs are not entitled to the requested injunctive relief because, as to them, such relief would be retrospective in nature. Issuing the requested injunctive relief to the proposed class is equally inappropriate because: (a) no class has yet been certified; (b) Plaintiffs have made no showing that there are actual members of a class currently eligible for early intervention services who are entitled to such relief; and (c) Plaintiffs are not individually entitled to the injunctive relief they seek through the filing of a proposed class action.

It is undisputed that Plaintiffs have not yet been certified to represent a class of potential litigants. Generally, Plaintiffs must wait until they have been certified as class representatives to bring on a motion for preliminary injunction on behalf of a class. *Spinner v. City of New York,* No. CV-01-2715 (CPS), 2003 WL 23648356, at *1 n.2, *7 (E.D.N.Y. October 10, 2003) (adjudication of a motion for class certification is a condition precedent to consideration of the motion for preliminary injunction).

An exception to this general rule applies where the Plaintiffs demonstrate that they are entitled to the same injunctive relief in their individual capacities as they seek for the proposed class. *Sanford v. R.L. Coleman Realty Co.* 573 F.2d 173, 178 (4th Cir. 1978). However, this exception does not apply in the present case because the six named Plaintiffs are not entitled to the requested injunctive relief in their individual capacities since they have aged out of the early intervention program. Moreover, they have presented no evidence that there are children currently eligible for early intervention services that are entitled to the injunctive relief sought. Accordingly, Plaintiffs' present motion for injunctive relief must be denied both as to them individually and as to the proposed class.

## POINT III

### PLAINTIFFS HAVE FAILED TO SATISFY THE HEIGHTENED STANDARD FOR ENTITLEMENT TO MANDATORY INJUNCTIVE RELIEF AGAINST A GOVERNMENTAL AGENCY

Plaintiffs' requests for preliminary injunctive relief concern five basic areas: (1) transportation services for A.W.; (2) billing of B.F.'s insurance company for early intervention services; (3) County imposed limits on the number of hours of ABA therapy services; (4) the impact of County policies regarding service providers on the provision of services to preschool and early intervention children; and (5) the identification of class plaintiffs who were not provided timely and/or adequate early intervention and/or preschool services. Plaintiffs do not, and can not, show that they will be irreparably harmed in the absence of preliminary injunctive relief, much less that they have a substantial likelihood of success on the merits.

Plaintiffs must "put forth *clear proof* of an imminent threat of irreparable injury and not mere unsupported speculation." *Meineke Discount Muffler Shops*, 603 F. Supp. 443, 444 (E.D.N.Y. 1985) (emphasis added).

7

Where, as here, Plaintiffs seek a mandatory injunction which alters the status quo and requires the other party to engage in affirmative action, Plaintiffs must meet a higher standard of proof than generally required for preliminary injunctive relief. In addition to showing irreparable harm, Plaintiffs "must make a *clear or substantial* showing of a likelihood of success on the merits" and show that "*extreme or very serious damage*" will otherwise result. *Cave v. East Meadow Union Free Sch. Dist.*, 480 F. Supp.2d 610, 632 (E.D.N.Y. 2007) (internal quotations omitted) (emphasis added).

This higher standard is "especially appropriate when a preliminary injunction is sought against government," as is the case here. *D.D. v. New York City Bd. Of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (*citing Mastrovincenzo v. City of New York*, 435 F.3d 78, 89 (2d Cir. 2006)), *amended on other grounds*, 480 F.3d 138 (2d Cir. 2007).

Instead of satisfying this higher standard, and despite agreeing that the standard applies (see Plaintiffs' Brief In Support of Motion for Preliminary Injunction (Pl. Br. at 15), Plaintiffs make only conclusory statements of irreparable harm, allegations of County policies and practices with no accompanying proof of the existence of such policies and practices, falsely allege wrongdoing on behalf of the County regarding actions this Court has no power to redress, and demand the County to act where it has no legal obligation or ability to perform. For the reasons detailed below, Plaintiffs have not satisfied this higher burden and preliminary injunctive relief should not be issued.

###### a. *Plaintiffs Cannot Establish a Clear or Substantial Likelihood of Success on the Merits Given That They Have Failed to Exhaust Their Administrative Remedies*

First, as a preliminary matter, and as more fully demonstrated at Point II of MOL - Motion to Dismiss, Plaintiffs must first exhaust their administrative remedies before bringing an action in federal court under the IDEA. To do this, parents of children in New York's Early Intervention Program

8

must initially seek review of their child's placement through an impartial due process hearing conducted before an administrative law judge (ALJ). The application of the exhaustion doctrine in the IDEA context permits administrators to use their expertise in the area and promptly resolve grievances. *Matrejek v. Brewster Cent. Sch. Dist.*, 471 F. Supp.2d 415, 418 (S.D.N.Y. 2007); *see also* 20 U.S.C. §§ 1415(f); N.Y. Pub. Health Law § 2549; *W.S. ex rel. C.S. v. Rye City Sch. Dist.*, 454 F. Supp.2d 134, 137 (S.D.N.Y. 2006) ("Plaintiffs who bring suit under the [IDEA] must first exhaust the administrative remedies available to them under the statute. A party who disagrees with his child's [IFSP] or other decisions made regarding services for their child must request an impartial due process hearing before the state or local educational agency."); *R.M. ex rel. J.M. v. Vernon Bd. of Educ.*, 208 F. Supp.2d 216, 220 (D. Conn. 2002); *B.D. v. DeBuono*, 130 F. Supp.2d at 401, 416 (S.D.N.Y. 2000) ("Only after the administrative procedures are exhausted may an aggrieved parent seek court review of the adequacy of the IFSP.").

At the very least, the Administrative Hearing produces a record that will be extremely helpful to the court, since the State administrative official will likely have probed the issue with expertise, and therefore, have illuminated the issues for the federal court. *Riley v. Ambach*, 668 F.2d 635, 640 (2d Cir. 1981).

In the present case, Plaintiffs do not even attempt to claim that they have exhausted their administrative remedies or even that they have attempted to exhaust them. Instead, they allege in conclusory fashion that in each case exhaustion would be futile because of "systemic violations" of the IDEA on the part of the County.

However, analysis of the individual claims of each of the Plaintiffs reveals that their grievances are simply a disagreement over the scope and frequency of the services provided to their children under the IFSP. *See* Defendants' MOL - Motion to Dismiss, pages 10 to 12, for an analysis

9

of each individual complaint. The issues raised here (*i.e.*, whether or not a child is receiving sufficient

ABA, speech and language services, etc. to meet his/her individual needs) are typical of administrative

due process hearings and are routinely heard and decided by ALJs. *See J.S. ex rel. N.S. v. Attica Cent.*

*S.D.*, 386 F.3d 107, 114 (2d Cir. 2004) (parents' grievances presented "textbook case best left to

educational experts"). If the Plaintiffs were successful in having their child's IFSP changed by the

ALJ and/or the County failed to implement the services, as ordered by the ALJ, only then would this

matter be ripe for judicial enforcement by this Court. *Cave, supra.*

The cumulative effect of the six individual claims does not add up to a "systemic" IDEA

violation. There has been no showing that should the Plaintiffs prevail in an administrative hearing,

the County would refuse or be unable to abide by the decision and provide the services found to be

appropriate by the ALJ. Plaintiffs have not pointed to any case where the County had failed to

implement an Administrative Order thereby rendering the due process procedures futile and

unavailing. Moreover, Plaintiffs have failed to demonstrate how the relief they seek -- annulment of

the alleged County policies and practices -- will result in the provision of appropriate and beneficial

child services, particularly since there is no evidentiary record establishing which services are needed

and at what frequency they should be provided. This is equally true for Plaintiffs' inchoate claim to

compensatory services. Respectfully, the Court does not have the expertise to make such decisions,

particularly upon the incomplete record of a preliminary injunction motion. For this reason alone, the

Court should not excuse Plaintiffs' failure to exhaust their administrative remedies. *See Polera v. Bd.*

*of Ed. of the Newburgh ECSD*, 288 F.3d 478, 489 (2d Cir. 2002); *Michaels v. Mills*, 2004 WL 816918

(W.D.N.Y. 2004).

Based on the foregoing, Plaintiffs have failed to exhaust their administrative remedies or demonstrate that they fall under the narrow futility exception.[1]  As a result, like the Plaintiffs in *Cave*, they:

> . . . have failed to establish a clear likelihood that they will succeed on the merits of their claims for injunctive relief in that they have failed to exhaust their administrative remedies and cannot proceed with these federal causes of action.  Also, even in the event that it be determined this is not a request for a mandatory injunction and the lesser standard would govern, the Court determines that the plaintiffs have not established a serious question going to the merits.

480 F. Supp.2d at 639.  Accordingly, Plaintiffs' request for preliminary injunctive relief should be denied and the complaint should be dismissed.

### b.  *The Transportation Issue is Moot as to A.W. and In Any Case Should Properly Be Decided in an Administrative Hearing*

Plaintiffs seek preliminary injunctive relief requiring Defendants to "immediately commence transporting plaintiff A.W., and any other similarly aggrieved class plaintiffs, to school by means of the shortest, safe bus route."  (Order to Show Cause, ¶ 6).  With respect to A.W., this request is moot and was so when it was made on September 14, 2007 as A.W. aged out of pre-school services and has been receiving school age services through her local school district since September 1, 2007 (Hudson Aff., ¶4).  Therefore, A.W.'s educational placement and transportation are the sole responsibility of her school district and the County no longer has any responsibility or jurisdiction over her.  Educ. Law §§ 1414(b), (d).  With respect to any other aggrieved plaintiffs, as detailed in Point II above, no class has been certified and classwide injunctive relief is inappropriate.

Plaintiff's request for relief should also be denied due to Plaintiff's failure to join the responsible school district as a necessary party.  Fed. R. Civ. P. 19(a) provides, in relevant part:

---

[1] As fully set forth in Defendants' MOL - Motion to Dismiss, failure to exhaust under IDEA also acts as a bar to Plaintiffs' § 1983, Section 504, N.Y. Public Health Law and Education Law claims.

11

A person . . . shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded to those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest . . .

In the absence of the school district as a defendant, complete relief cannot be accorded to Plaintiff A.W.

Further, as noted in Defendants' MOL - Motion to Dismiss at Point II, this is the type of relief that should properly be decided within the administrative due process remedies still available to Plaintiff A.W.

### c. *The County's Policies Do Not Limit the Number of Available Service Providers*

The Plaintiffs seek a preliminary injunction requiring defendants to "rescind each and every policy and/or practice which curtails or limits the number of available service providers to children in both the Early Intervention and Preschool Programs." (Pl.'s Br. 2).

This injunctive relief is unreasonably broad in that it restrains more than what is reasonably required to accomplish its ends. *Consolidation Coal Co. v. Disabled Miners of Southern West Virginia*, 442 F.2d 1261, 1267 (4th Cir. 1971). "Injunctive relief should be narrowly tailored to fit specific legal violations. Accordingly, an injunction should not impose unnecessary burdens on lawful activity." *Waldman Publishing Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994) (internal quotation omitted). It is also too vague for the County to implement or for the Court to reasonably enforce. Moreover, it is impossible to demonstrate -- and certainly Plaintiffs have failed to do so on the present motion -- the causal relationship between a given policy or practice and a shortage of service providers within a given area of expertise.

Even if the Court were to issue the relief sought, there is no evidence that the requested injunctive relief of rescission of the policy and/or practice will remedy any of the alleged failures to provide services. To warrant injunctive relief, Plaintiffs must "put forth *clear proof* of an imminent

threat of irreparable injury and not mere unsupported speculation." *Meineke Discount Muffler Shops*, 603 F. Supp. at 444 (emphasis added).

More importantly, the County has no policy or practice limiting the number of available service providers (Warren Aff., ¶ 7). While the County does have requirements for its service providers, the requirement encourages professional collaboration, supervision and best practices while streamlining the County's administration of services and payment (*id.* 7, 19-23). The State, not the County, licenses and approves service providers, early intervention programs and preschool programs. *Id.*

It is not possible for these requirements to have "curtail[ed]" or "limit[ed]" the number of available service providers for preschool services since the School District is responsible for arranging for the services listed in a child's IEP and may locate and arrange for services with a provider who is not on the County's list of approved providers (those who do not maintain a case load of five or those who are not with an agency). Educ. Law §§ 4402; 8 N.Y.C.R.R. §§ 200.2(d) ("[b]oard of education of each school district shall "arrange for the appropriate special education programs and services to be provided to a student with a disability as recommended by the committee on special education."), 8 N.Y.C.R.R. § 200.16(f); Warren Aff., 6.

Plaintiffs have failed to provide any evidence that the number of available service providers or the amount of services actually provided to students has been affected by the County's requirement that each provider have at least five clients to maintain a contract with the County or its requirement that all future contracts must be with agencies and not independent service providers. Moreover, the record shows that no child has lost early intervention services as a result of the County's requirements. (Warren Aff., ¶ 25). There is nothing unlawful. Indeed, the New York State Department of Health

(NYSDOH) authorized the County's implementation of its five case load requirement. (*Id.,* ¶ 23). Further, similar requirements are used in other New York counties. (*See id.,* ¶ 30).

### d.   *The County Does Not Limit the Number of ABA Therapy Hours*

Plaintiffs seek a preliminary injunction that would require the County to "rescind each and every policy and/or practice by which defendants arbitrarily limit the number of ABA hours they provide plaintiffs and those in the class they seek to represent." (Order to Show Cause, ¶ 2). Plaintiffs allege that there is a County policy or practice limiting ABA services to 10 hours per week (Wilson Aff., ¶ 11, Thompson Aff., ¶¶ 10, 11). They provide no evidence of a policy or practice in support of this claim, and merely hearsay statements which are refuted by Plaintiffs' parents' own statements. For example, in the Affidavit of Anita Wilson submitted in support of Plaintiffs' request for preliminary injunction, Ms. Wilson acknowledges that her child's IFSP recommended 25 hours per week of ABA services (*see* Affidavit of Anita Wilson, ¶ 4).

The County vehemently denies the existence of any policy or practice limiting the number of ABA hours (Warren Aff., ¶ 40; Lee Aff., ¶ 5). The County only determines the type and level of services to be provided to children through its Early Intervention Program. The frequency and duration of services is determined by the early intervention team on a case-by-case basis depending upon the individual needs of the child. The team looks at all the factors, and not just the prescription pad of the child's private physician. The IFSP does not have to reflect the recommendations of services suggested by the student's physicians or any other professional. 20 U.S.C. § 1436 (providing mandatory guidelines for development of IFSPs); Pub. Health Law § 2545. Moreover, the County is not legally obligated to provide an optimal number of ABA hours, but the amount found to be appropriate to provide an educational benefit. *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 187, 200 (1982); *see also Walczak v.*

14

*Florida UFSD*, 142 F.3d 119 (2d Cir. 1998) ("IDEA does not require states to develop IEPs that 'maximize the potential of handicapped children.' What the statute guarantees is an 'appropriate' education, 'not one that provides everything that might be thought desirable by loving parents'"). Nevertheless, the County sets no limits on the number of hours of ABA therapy, or any other type of therapy, to be provided through its EIP. If the Plaintiffs disagree with the number of hours recommended by the team, their remedy is an administrative due process hearing, not a lawsuit, as is detailed in Defendants' MOL - Motion to Dismiss, Point II.

Moreover, Plaintiffs A.W., S.W. and L.T.'s allegations that they did not receive adequate services in their preschool programs are equally without merit. The statutory scheme for the provision of special education services to disabled children between the ages of three and five years specifically makes it the responsibility of the local school district, *not* the County, to identify and evaluate a child, and if the child is determined to have a disability, to determine the type, duration, intensity and frequency of services to be provided and to arrange for the provision of services to the child. Educ. Law §§ 4410(2), (5)[2]. The County's role is statutorily limited to being one of many participants on the CPSE, should a County representative be present for the meeting, and contracting with the agency selected by the school district and arranging for payment for services provided. Educ. Law §§ 4410(3)(a)(1), (5)(f). Thus, any order by the Court relative to the County will not be able to effectuate complete relief and therefore preliminary injunctive relief is not appropriate.

e.   ***The County Lawfully Advises Parents Regarding Evaluations and Services for Children Between The Ages of Two and a Half and Three Years***

Plaintiffs seek preliminary injunctive relief which would:

> rescind each and every policy and/or practice by which defendants
> avoid providing EI evaluations and services for children between

---

[2]   While Plaintiffs' brief alleges at page 16 that autistic children require speech five times per week as a matter of law, the requirement to which they cite is incorrect, but in any case, this is a requirement only applicable to school age children.

> the ages of 2-1/2 and 3 years by failing to apprise parents of such
> children of their right to participate in the EI program and, instead,
> instructing them to apply to their school districts for evaluation of
> their children.

(Pls. Br. at 3). Plaintiffs have provided no evidence establishing that the County's practices are

unlawful, necessitating Court or administrative relief, or that Plaintiffs' injuries may only be remedied

by an injunction.

To the contrary, the only evidence in the record is that no such policy or practice exists. In

accordance with the law, if a child between the ages of 2.5 and 3 years is referred to Early Intervention

for evaluation, the parents are counseled about the available options. Depending upon when the

child's third birthday falls, the County encourages the parents to choose between two options: 1) have

the child evaluated for Early Intervention Services and an IFSP developed, while simultaneously

having the child evaluated separately for Preschool Services by the School District's Committee on

Preschool Education (CPSE), or 2) refer the child for evaluation and services by the CPSE. The

County counsels parents about these issues and encourages a plan of action that would maximize

available services for the child and avoid a disruption of continuous services. (Warren Aff. ¶ 12 ).

This is consistent with New York State EIP Transition Guidelines which state:

> [f]or a child referred to the CPSE and found eligible for services under Section
> 4410 of the Education Law before the child's third birthday, the child's parents
> can choose either to transition their child to preschool special education; or,
> choose to have their child remain in the EIP until s/he ages out of EIP. . . . [I]t is
> strongly recommended that primary referral sources and parents of children age
> two and a half or older, who may have a developmental delay or disability and are
> not in the EIP, contact their school district CPSE to begin the CPSE process. If a
> child is referred to the EIP when s/he is age-eligible for services under Section
> 4410 of the Education Law . . . the [Early Intervention Official] may recommend
> to the parent that s/he refer the child directly to the CPSE rather than continue
> with the referral to the EIP.

(*Id.*, Ex. A. p. 8). Whether the services are provided under early intervention or preschool, the

County is the one that foots the bill.

16

Thus, Plaintiffs' request that this Court issue preliminary injunctive relief is inappropriate.

      **f.**   ***Defendants Are Not Obligated By Law To Provide Plaintiffs With PreSchool Special Education Services***

The Plaintiffs seek injunctive relief requiring that the County:

> immediately identify those class plaintiffs who have not been
> provided timely and/or adequate early intervention and/or
> preschool services - including speech, OT, PT, ABA, and other
> related services, and ordering defendants to immediately provide to
> the identified plaintiffs the appropriate early intervention and/or
> services guaranteed them by law.

Here, again, the relief sought is way too broad for the County to implement or for the Court to enforce. No class has yet been certified. In effect, Plaintiffs are seeking to use the equitable powers of this Court to have the County prove their case for them. It is the Plaintiffs' burden to establish the elements of their claim and their right to class certification. Surely, this is not a proper purpose of a preliminary injunction.

Moreover, with respect to the six identified Plaintiffs in addition to the request being an inappropriate demand for retrospective relief, this request is moot because the County is no longer required by law to provide special education services for any of the six Plaintiffs. *See* Point I, *supra*.

Accordingly, since all six Plaintiffs are currently ineligible for early intervention services, their request for relief is moot. The County has no obligation under the law to provide early intervention, preschool, or school-age special education services to any of the six Plaintiffs in this action.

Further, even if the County had an obligation, there is no way to know based on the existing record what compensatory services are currently warranted. There is a saturation point beyond which additional hours of ABA or any other therapy cause fatigue and become counter

productive (Warren Aff., ¶ 41). Services that were appropriate when the child was 2 may no longer be beneficial when the child is 4 or 5.

Again, this is precisely the type of relief more properly brought before an administrative body to determine. 20 U.S.C. § 1415; Educ. Law § 4404(1); 8 N.Y.C.R.R. § 200.5. *See* Point III(A), *supra,* and Defendants' MOL - Motion to Dismiss, Point II.

### g. *There is an Adequate Remedy at Law Available To Address Plaintiffs' Insurance Complaint*

Plaintiffs seek preliminary injunctive relief requiring the County to:

> rescind each and every policy and/or practice by which they bill participating families' insurance carriers for services provided to children in its Early Intervention and Preschool programs, causing families to suffer a reduction of benefits and lack of coverage for services which may later be required.

(Pl.'s Br. 3.) Plaintiffs also seek preliminary injunctive relief requiring the County to:

> rescind each and every policy and/or practice by which they bill participating families' insurance carriers for services provided to children in its Early Intervention and Preschool programs, causing families to suffer a reduction of benefits and lack of coverage for services which may later be required.

The genesis of Plaintiffs' complaint appears to be that Plaintiff B.F.'s insurance was allegedly improperly billed for Early Intervention Services provided to him in 2005 and 2006. (P. Flynn Aff., ¶¶ 7-9). In support of this claim, Plaintiffs submit only the unsigned and undated Affidavit of Patricia Flynn and an attached insurance company statement for 2006. There is no evidence that the insurance billing issue is ongoing or involves anyone other than B.F. At this point B.F. has aged out of the County's early intervention program, the County has not billed his insurer for Preschool Services (*see* Lee Aff., ¶¶ 16-17), and no claim has been made by Plaintiffs about Preschool Services. Accordingly, the relief plaintiffs are seeking is purely retrospective, which is not appropriately obtained through preliminary injunctive relief.

In addition, the requested injunctive relief is not appropriate because the Plaintiffs can be reimbursed for any out-of-pocket costs caused by the County's billing practices and thus have an adequate remedy at law. *Ford v. Reynolds*, 316 F.3d 351, 355 (2d Cir. 2003) (denying plaintiffs injunctive relief because harm they suffered could be remedied by monetary damages).

Further, Plaintiffs' allegation that the County "billed plaintiffs' insurance carriers for the provision of services *likely* causing reduction of plaintiffs' benefits and the lack of coverage for future medical services" (Complaint, ¶ 1(d) (emphasis added)), is insufficient to satisfy the irreparable harm requirement Plaintiffs must show in order for this Court to grant the preliminary injunction. Irreparable harm "must be shown to be actual and imminent, not remote or speculative." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002).

## POINT IV

### PLAINTIFFS' FEDERAL CLAIMS SHOULD BE BARRED BY THE EQUITABLE DOCTRINE OF LACHES

Plaintiffs' laches in not timely seeking relief weighs against them on a balancing of the equities. Laches is an equitable defense which may be asserted even where there is no statutory time-bar. Laches "occurs when a party, by omission or neglect, fails to assert a right in a timely fashion and that lapse of time causes prejudice to the adverse party." *Id*. at 1113. It is applied "where it is clear that a plaintiff unreasonably delayed in initiating an action and a defendant was prejudiced by the delay." *K.P. v. Juzwic*, 891 F. Supp. 703, 715 (D. Conn. 1995) (*quoting Robins Island Preservation Fund Inc., v. Southold Dev. Corp.*, 959 F.2d 409, 423 (2d Cir.1992)).

Here, Plaintiffs' failure to act timely in seeking relief militates against granting them the relief they belatedly ask this Court to grant. In many cases, Plaintiffs sat on claims for compensatory services since 2004-2005. Even after commencing this action Plaintiffs waited almost 3 months from

the filing of the Complaint to bring this motion. Certainly, these facts evidence that there is no

urgency to the relief requested by Plaintiffs, and in fact, if it is to be granted at all, it should only be

granted after a trial on the merits.

## POINT V

### PLAINTIFFS IMPROPERLY REQUEST PRELIMINARY INJUNCTIVE RELIEF EQUIVALENT TO THE ULTIMATE INJUNCTIVE RELIEF THEY SEEK

In their motion for preliminary injunction, Plaintiffs seek the identical remedies that they seek

in their Complaint. The courts in the Second Circuit "have been reluctant to grant preliminary

injunctive relief where, as here, the injunction would in effect award plaintiff the ultimate relief

sought." *Meineke Discount Muffler Shops,* 603 F. Supp. at 444. A motion for a preliminary

injunction seeking equivalent relief to the ultimate relief the Plaintiffs are requesting is improper

because it ignores a "basic principle of preliminary injunction law." *WarnerVision Entertainment Inc.*

*v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996). As the Second Circuit has explained:

> [t]he purpose of a preliminary injunction is not to give the plaintiff the ultimate
> relief it seeks. It is "to prevent irreparable injury so as to preserve the court's
> ability to render a meaningful decision on the merits," "to keep the parties,
> while the suit goes on, as far as possible in the respective positions they
> occupied when the suit began." As a general rule, therefore, a temporary
> injunction "ought not to be used to give final relief before trial."

*Id.* at 261-62 (internal citations omitted); *see also 200 E. 84th St. Owners, Inc. v. Salomone & Co.*,

1989 WL 111105, *2 (S.D.N.Y. 1989).

Accordingly, Plaintiffs' motion should be denied.

20

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court deny the Plaintiffs' motion for preliminary injunction.

Dated: Melville, New York
October 16, 2007

Respectfully submitted,

LAMB & BARNOSKY, LLP

By: _____
Sharon N. Berlin
*Attorneys for Defendants*
SHEILA WARREN, ORANGE COUNTY
DEPARTMENT OF HEALTH,
COUNTY OF ORANGE,
534 Broadhollow Road, Ste. 210
P.O. Box 9034
Melville, New York 11747-9034
631-694-2300

21