UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

S.W., by her parent and natural Guardian, J.W.,
individually and on behalf of all others similarly
situated; A.W., by her parent and natural guardian
A.W., individually and on behalf of all similarly
situated,  B.F. by his parent and natural guardian,
P.F. individually and on behalf of  all others
similarly situated; J.F. and P. F., by their parent
and natural guardian, A.F., individually and on
behalf of all others similarly situated, L.T., by her
parent and natural guardian, R.T., individually and
on behalf of all others similarly situated,

        Plaintiffs,      07 CIV 5708
                     (WCC)

   vs.

SHEILA WARREN, sued individually, and as
Director of Early Intervention Services for Orange
County,
ORANGE COUNTY DEPARTMENT OF HEALTH,
COUNTY OF ORANGE,

                Defendants.

-------------------------------------------------X

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### STATEMENT OF FACTS

According to the Complaint, this is a class action

to remedy defendants' illegal conduct, which includes

implementation of policies which have (a) caused a
shortage of  service providers, including providers of
speech, occupational therapy, physical therapy, and
Applied Behavior Analysis ("ABA") therapists, resulting
in the lack of provision of medically-necessary
services to children between the ages of birth and 5;
(b) intentionally and arbitrarily limited the  number
of hours of  ABA services for children diagnosed with
autistic spectrum disorder and participating in the
Early Intervention and preschool programs  throughout
Orange County;   arbitrarily limited the amount,
duration and availability of  extended year services to
preschool children, refusing to consider each child's
individual and unique needs;  (d) billed plaintiffs'
insurance carriers for the provision of services likely
causing reduction of  plaintiffs' benefits and the lack
of future coverage for medical services; (e) failed to
properly and timely identify and/or evaluate children
in Orange County in need of Early Intervention
services; (f) failed to develop sufficient and

2

appropriate programs within Orange County to meet the specific needs of preschool children with autism and (g) caused plaintiffs to travel distances over 100 miles each day, resulting in travel time of up to 4 hours each day, far in excess of the time and distance traveled by non-disabled or other-disabled peers.

The representative children are or had been enrolled in the Early Intervention Program and/or are classified as Preschoolers with a Disability. Defendant County is responsible for the provision and payment of services for such children. Plaintiff children, and numerous similarly situated children (present and future), are developmentally, physically, educationally or otherwise disabled, or believed to be disabled.

Defendants have failed to meet their State and Federal statutory and regulatory obligations to plaintiffs and numerous similarly situated children enrolled in the Early Intervention program throughout Orange County who are entitled to timely services from

Defendant County.  Defendants have failed to meet their
State and Federal statutory and regulatory obligations
to plaintiffs and numerous similarly situated children
classified as Preschoolers with Disabilities who are
entitled to timely receive necessary services from
Defendant County.

According to the complaint, defendants' procedures
are rife with defects; for example, defendants have not
complied with the applicable provide appropriate
services for children with disabilities or those
suspected of possessing one or more disabling
conditions.

At the time the Complaint was filed, plaintiffs
included S.W., then four years old and autistic, A.W.,
then just five years of age and also autistic, BF, then
four years old and also autistic; P.F. and J.F., then
two years old twins, and L.T, then nearly three years
of age.  According to the complaint, all of these
children qualified for services provided by the County
defendants. Defendants include Orange County, a

4

municipal corporation, required by Public Health Law
sec. 2544 to provide early intervention services,
through its Department of Health, the County's
Department of Health, "the lead agency responsible for
ensuring that Early Intervention services are provided
to developmentally disabled children in Orange County.
*N.Y.S. Public Health Law 2540, et seq.* and Sheila
Warren, Director of the Division of Intervention
Services (DIS) who is sued individually and in her
official capacity.  According to the complaint,
defendant Warren is responsible for the policies and
administration of Orange County's Early Intervention
program and for setting policies, procedures and
administration of Orange County's Preschool Related
Services program.  *N.Y.S. Ed. Law 4410*(*9*).

   Plaintiffs raise federal claims under the
Individuals with Disabilities Education Act (IDEA), as
amended, 20 U.S.C. 1400, 1415(j)(2) and section 504 of
the Rehabilitation Act of 1973, as amended, 29 U.S.C.
794 ("Section 504").  The various state claims arise

from the same nucleus of operative facts as the federal claims, providing this Court jurisdiction pursuant to 28 U.S.C. 1367.   The court also has jurisdiction over the claim for declaratory relief  pursuant to 28 U.S.C. secs. 2201 and 2202.

In the complaint, plaintiffs assert their desire to represent a class of similarly-situated children and assert that defendants have acted and refused to act on grounds generally applicable to the named and class plaintiffs, making appropriate declaratory and injunctive relief as to the class as a whole.

The class consists of children between the ages of birth and five years old residing in the County of Orange, present and future, who are, or should be, classified as disabled under the Individuals with Disabilities Education Act (20 U.S.C. 1400, *et seq.*), and who have been, are being, or will be denied their rights pursuant to said statute, either substantively or procedurally, due to the illegal acts and omissions

6

of defendants.    According to the complaint, the members of this class are so numerous as to make joinder of each individually impracticable.    There are hundreds of children in Orange County who are disabled and entitled to receive early intervention and preschool services, and who did not, have not, or will not receive timely, appropriate identification, evaluations, recommendations and/or early intervention and/or preschool services in the least restrictive environment that meet their individual needs.    The exact number of disabled children is unknown to plaintiffs, but should be known to defendants.

Moreover, the class includes the hundreds of children with disabilities who, in the near future, will be subject to defendants' policies that systematically violate federal and state statutory and regulatory requirements during the short time span in which these early intervention and preschool services must be provided.

There are questions of law and fact common among

7

the named plaintiffs and the members of the class they seek to represent, namely, whether defendants have violated, are violating and shall continue to violate the substantive and procedural rights of the class members, which rights are guaranteed to individuals with disabilities by the laws of the United States, including rights accorded by statute and regulation, and those questions predominate over all other questions affecting individual class members.

Such violations include the failure of defendants to identify and assure a timely determination of the eligibility of plaintiffs and similarly situated children for appropriate services, including speech, OT, PT and ABA, and assure that appropriate services are timely provided when warranted and defendants' failure to provide adequate and or appropriate facilities and services for children with disabilities.

The complaint further avers that the claims of the named plaintiffs are typical of the class member claims and that each named plaintiff has been determined to

8

have a disability pursuant to the Individuals with Disabilities in Education Act; each named plaintiff has been recommended and approved for either early intervention and/or preschool special education services.  In addition, the named plaintiffs' claims arise from the same illegal course of conduct by defendants.

Finally, the complaint asserts that the named plaintiffs will fairly and adequately protect the interests of this class, as their interests do not, in any way, conflict with the interests of the class sought to be represented and that individual claims cannot easily be compromised to the detriment of the claims of the class as a whole.  The Complaint also alleges that, in addition to meeting the requirements of Rule 23, a class action is necessary in this case to avoid problems of mootness during the course of litigation and to ensure future enforceability of judgment for plaintiffs.  Due to the extremely short time-frame during which plaintiffs are entitled to

receive early intervention and/or preschool services, named plaintiffs may age-out of the EI/Preschool population before this litigation is completed.

Additionally, defendants may provide appropriate EI/Preschool services to all named plaintiffs, thus mooting their individual cases, yet continue to implement policies which consistently violate the law by [a] causing a shortage of service providers, including providers of speech, occupational therapy, physical therapy, and Applied Behavior Analysis ("ABA") therapists; [b] intentionally and arbitrarily limiting the number of hours of medically-necessary ABA, and other services for developmentally disabled children participating in the Early Intervention and/or Preschool programs throughout Orange County; [c] arbitrarily limiting the amount, duration and availability of extended year services to preschool children, without regard to their individual and unique needs; [d] billing plaintiffs' insurance carriers for the provision of services likely causing reduction of

plaintiffs' benefits and the lack of future coverage for medical services; [e] failing to develop sufficient and appropriate programs within Orange County to meet the specific needs of preschool children with autism and [f] requiring plaintiffs to travel distances over 100 miles each day to receive appropriate services, resulting in travel time of up to 4 hours each day, far in excess of the time and distance traveled by non-disabled or other-disabled peers.

The complaint contains specific allegations with respect to the treatment allegedly provided to each named plaintiff as follows:

In or about January 2005, S.W. commenced receiving Early Intervention services through Orange County. Although their own initial evaluations indicated that S.W. exhibited symptoms consistent with a diagnosis of autism, defendants did not inform her parents of this nor recommend or arrange of S.W. an evaluation by a neurologist or any other qualified specialist. It was not until S.W.'s parents took her for a private

evaluation by a neurologist in November 2005 that she was diagnosed as autistic.  In November 2005, S.W.'s neurologist provided defendants with a prescription stating that S.W. required 30 hours of ABA per week. There was no contrary evidence that S.W. required less ABA therapy.  Nevertheless, <u>from **November 2005 through August 2006**</u>, the County arbitrarily failed and refused to provide S.W. this ABA therapy.  [1] At the time she commenced Early Intervention services, S.W. was non-verbal.  She initially was provided speech two times each week.  As she was making no gains, in February 2006, the EI team agreed that S.W. should receive speech three times each week, and amended S. W. service plan to so reflect.  Despite S.W.'s entitlement to receive speech therapy 3 times per week, between **February 2006 and August 2006, defendants failed to provide S.W. with any speech therapy whatsoever**.

    In September 2006,  plaintiff requested that

_____

[1]

    We highlight these dates in light of the defendants' frivolous effort to suggest that the claimed violations occurred in 2004 and 2005.

defendant County provide S.W. compensatory services. Defendant County refused, noting, in part, a shortage of providers in the County.  As a result, S.W. has been deprived the opportunity to progress and achieve the level of functioning she may otherwise have attained. [2]

In or about **September 2006**, A.W., who is autistic, commenced attending Fred S. Keller Preschool in Rockland County, New York,  as there was no appropriate placement available within Orange County.   This facility is located approximately 55 miles from A.W.'s home.   A.W. continues to attend the Fred S. Keller School for approximately 5 hours each day.  A.W. spends approximately four hours each day on the bus being transported to and from school.   During these four hours that A.W. is on the bus, she receives no services whatsoever.

In September 2006, A.W.'s mother, A.W.,

---

2

Unconscionably, defendants' recitation of SW's claims seek to trivialize the deprivations which this child has endured. Plainly, according to the complaint, she was denied services basic to the progress of an autistic child, namely ABA therapy and speech therapy.

ascertained that the bus company was not using the shortest route available and, as a result, A.W. was spending an unnecessary hour on the bus each day. From **September 2006 through May 2007**, A.W's mother contacted the bus company and defendant County on numerous occasions, requesting that they use the shorter route, so that plaintiff A.W. would not be required to spend such an excessive amount of time on the bus. Defendant County has refused to alter the bus route, stating that they have no control over the bus route. As a result of defendant County's failure and refusal to alter plaintiff A.W.'s bus route, plaintiff A.W. **is required** to travel distances over 100 miles each day, resulting in travel time of up to 4 hours each day, far in excess of the time and distance traveled by non-disabled or other-disabled peers. As a result, plaintiff A.W., has suffered a substantial loss of educational and developmental opportunity.

On or about April 2004, Plaintiff B.F. commenced receiving speech and occupational therapies through

14

E.I. Although B.F. had been exhibiting symptoms indicative of autism, defendants did not recommend or arrange for his evaluation by a specialist.    In or about June 2005, B.F.'s parents brought him to a developmental pediatrician who diagnosed him as being autistic; thereafter, B.F. began receiving ABA therapy. In April 2004, at the Early Intervention intake, defendants representative, Susan Lee, asked B.F.'s mother for insurance information.  P.F. asked whether her insurance was going to be billed for services. Ms. Lee responded that it would not and that taking such information was merely a formality.

**In or about July 2006**, plaintiff's mother, P.F., submitted bills for medical services on behalf of B.F. The insurance company denied payment.    P.F. ascertained that defendant County **had been billing** for Early Intervention services and, as a result, Brendan had "capped out" and was not entitled to additional coverage.    Further, as the result of Early Intervention having billed plaintiff's insurance company for

15

reimbursement for services, B.F.'s life-time maximum insurance coverage has been significantly reduced.

   **On June 4, 2007**, a CPSE meeting was held to determine an appropriate  summer services for B.T. B.F.'s mother and all service providers attended and were in agreement that B.F. required continuation of his services through the summer as he suffers significant regression, even after a week without services.

B.F. was approved for continuation of speech, OT, PT, and ABA for the summer.

However, **with total disregard for B.F's individual and unique needs**, P.F. was informed that B.F. would not receive any services except for a period of 6-weeks, being from July 2, 2007, to August 14, 2007, which was the extent of the extended year services provided through defendant County.  As a result of the County's arbitrary limitation on the duration of necessary services B.F. will receive **between June and September 2007**, B.F. will assuredly suffer significant regression

16

and loss of skills that he and his providers have worked so hard for him to gain.

Plaintiffs P.F. and J.F. were born on November 25, 2004. In **August 2006**, Plaintiffs P.F. and J.F. were evaluated by defendants and determined to be in need of speech therapy, each child exhibiting a 33% delay in speech. Early Intervention services were commenced, but defendants provided each child with only one session of speech per week. Plaintiff's mother, A.F., requested additional speech therapy, as she did not believe her children were making sufficient progress. In October 2006, a team meeting was held, and the EI coordinator agreed to allow one extra session of speech. However, she stated that the children must "share" that session because of a shortage of speech providers. **From October 2006 to January 2007**, neither P.F. nor J.F. received any additional session of speech.

In **January 2007**, another team meeting was held and, ultimately, it was agreed that both P.F. and J.F. both

17

needed and should receive an additional session of speech.  However, the defendant County representative again stated that there was a shortage of speech providers.  As a result, P.F. and J.F. have both been deprived the opportunity to progress and achieve the level of functioning they may otherwise have attained.

In July 2006, Plaintiff L.T. was referred to Early Intervention and was initially evaluated on August 16, 2006.  As a result of the August 2006 evaluation, L.T. was only approved for speech, which commenced in September 2006. Although her initial evaluation indicated that L.T. was exhibiting behaviors consistent with a diagnosis of autism, defendant E.I. and its agents neither  suggested nor arranged for any further evaluations of L.T.   Although her initial evaluation indicated that L.T. was exhibiting behaviors consistent with autism, defendant E.I. and its agents failed to so inform L.T.'s parents. As a result of defendant E.I. and its agents' failure and refusal to timely and appropriately identify L.T.'s

18

disability, L.T. was not provided the early and
intensive one-to-one behavioral therapy that New York
State's E.I. Guidelines stress are key to positive
outcomes for young autistic children.  L.T. began
receiving speech therapy in September 2006.  L.T. was
unable to participate in the speech therapy due to
"sensory issues". Defendant E.I. and its agents then
recommended an occupational therapy (O.T.) evaluation
be performed.  L.T. was approved for O.T. services
twice a week. After L.T. began receiving O.T., the
therapist noted  that L.T. demonstrated significant
"social/emotional" difficulties.  As a result of the
O.T.'s comments, at the following IFSP meeting, L.T.
was approved for a "parent/child" group session once a
week, and a social worker.  Despite their knowledge
that L.T. suffered from speech deficits, sensory
issues, and social/emotional difficulties  -- all  of
which are symptoms of  autism --   defendant I.E. and
its agents failed and refused to so inform L.T.'s
parents.  Despite their knowledge that L.T. suffered

19

from speech deficits, sensory issues, and social/emotional difficulties -- all of which are symptoms of autism -- defendant I.E. and its agents failed and refused to recommend, or arrange for, L.T. to be evaluated by a neurologist or developmental pediatrician to determine the cause of her behaviors and deficits. As a result of the defendant EI and its' agents' inactions, L.T. was deprived of the early and intensive one-to-one behavioral therapy, and the opportunity to benefit from such therapy which, according to defendant E.I.'s own Guidelines, are critical to obtain the best outcome for young autistic children. In **December 2006** - six months after L.T.'s initial evaluation by defendant E.I. and its agents - a parent of another disabled child in the defendant's E.I. program urged L.T.'s parents to have her evaluated for autism, stating that "E.I. is never going to tell you if they suspected your daughter was on the spectrum". L.T.'s parents independently arranged for L.T.'s evaluation by a specialist. On January 18,

2007, L.T. was diagnosed with autism and her doctor, Erica Loutsch, M.D., New York Medical College, Department of Psychiatry and Behavioral Sciences, stated that the then current services were inadequate and insufficient, and recommended that speech be increased to 3 sessions per week, toddler development class be likewise increased to 3 sessions per week, and that 20 hours of applied behavioral analysis (ABA) be provided, stating that the **"the prompt implementation of the above plan will increase her chances of becoming mainstreamed by kindergarten."** L.T.'s parents promptly provided defendants with a copy of the doctor's report, and a IFSP meeting was scheduled.   At the IFSP meeting held in January 2007,  Dr. Loutch's report was discussed and unrefuted by any of defendant E.I.'s agents present at the meeting.   The IFSP team agreed to increase L.T.'s speech therapy sessions to 3 times per week pursuant to Dr. Loutch's recommendation.

However, despite Dr. Loutch's stated urgency for the "prompt implementation" of her recommendations of

20 hours per week of ABA, and despite the defendant E.I.'s lack of dispute of L.T.'s needs, **the IFSP team would only approve 10 hours a week of ABA.** Further, **despite the approval of 10 hours, plaintiff L.T., in fact, was only provided 6 hours of ABA per week**.

When plaintiff L.T.'s parents questioned why she could not be given more, defendants stated a multitude of excuses. Finally, however, defendant E.I.'s agents admitted that there were no providers available to give plaintiff L.T. the number of hours of ABA therapy her doctor so strongly recommended, or even the number of hours for which she had been approved. As a result of defendant E.I. and its agents' intentional refusal to provide medically necessary services, from **January to April 2007**, plaintiff L.T. was not provided the critical behavioral therapies that her doctor so urgently recommended and prescribed. As a result, L.T. has been deprived the opportunity to progress and achieve the level of functioning she may otherwise have attained.

Congress enacted the Individuals with Disabilities Education Act (IDEA) requiring, *inter alia*, that each State develop an Early Intervention program to serve the needs of developmentally disabled children, between the ages of birth and three years old, to maximize their developmental potential. <u>See</u>, 20 U.S.C. 1400 <u>et seq.</u>, 34 C.F.R. 300 <u>et seq.</u>, N.Y.S. Public Health Law 2500 <u>et seq</u>. and 10 NYCRR 69-4 <u>et seq</u>.

The IDEA establishes a system of procedural and substantive requirements requiring States to use a multi-disciplinary evaluation to identify children who have a developmental delay or a diagnosed physical or mental condition with a high probability of causing developmental delay.

As alleged above, defendants  have failed to fulfill their legal obligations and promptly and properly evaluate, identify and/or provide the appropriate services to children who are so entitled. The complaint alleges that defendants have failed to conduct or perform these legally required duties,

23

including determinations of eligibility,
identification, referral, evaluations and/or provision
of appropriate medically necessary services, in a
timely manner.  Instead, according to the complaint,
defendants have instituted policies and practices which
limit the number of available service providers causing
the denial and/or delay of the provision of  medically
necessary services to children between the ages of
birth and 5 years.

Specifically, the Complaint avers that defendant
Warren instituted a policy of refusing to allow
individual providers of speech, occupational therapy,
physical therapy and ABA therapy to contract with the
County to provide services to children participating in
the Early Intervention and/or preschool programs,
unless each agreed to maintain an arbitrary number of
cases, as established by defendant Warren.  This policy
caused a shortage of providers in all categories as
persons who previously  had been under contract with
the defendant County to provide early intervention

24

and/or preschool services to developmentally disabled
children in Orange County were dropped from such roles.

   The complaint further alleges that defendants have
implemented a policy and practice of arbitrarily
limiting the number of ABA hours that autistic children
receive through the Early Intervention and/or preschool
programs.  In furtherance of this policy and practice,
defendants have systematically failed to notify parents
of defendants' legal obligations to them.

   Defendants have also billed third parties for
reimbursement of Early Intervention services, resulting
in an illegal cost to the parents in contravention of
both Federal and State law.

   Defendant County has failed to adopt and/or
implement policies, practices and/or procedures to
assure that disabled children's IFSP's are adequately
and properly formulated and/or implemented.

   The complaint also alleges that defendants failed
[a] to provide a continuum of services and program
options as required by law, [b] to train staff and

personnel of their responsibilities with respect to developing and implementing IFSPs, [c] to prepare and/or implement IFSPs to provide for services to address all identified needs and have [d] discriminatorily required one plaintiff to travel over 100 miles each day, for a period of approximately 4 hours, to receive appropriate services, far in excess of the time and distance traveled by non-disabled and other-disabled peers.

The complaint recognize that the IDEA and the New York Education Law and Public Health Law "all provide administrative procedures by which plaintiffs can seek to perfect their rights to appropriate services, as mandated by both federal and states laws." [para. 115]. However, these procedures are inadequate and futile in the instance circumstances.

According to the complaint itself, "[R]esort to the administrative process is futile because the administrative hearing officers, in many, if not most instances, cannot provide the relief requested.   For

26

example, defendants have failed to hire, train and
utilize adequate numbers of related service providers,
including speech, OT, PT, and ABA, to serve the needs
of the plaintiff class, in violation of federal and
state law. Even where the administrative officer
agrees that the sought-after services must be provided,
s/he cannot mandate the provision of early intervention
and preschool services that many plaintiffs need and
are entitled to by law, but which do not exist, as a
result of defendants' pattern and practices of failing
to hire, train or utilize sufficient numbers of related
service providers." This is because "[t]he defendants
have failed to contract with sufficient related service
providers in the numbers needed by plaintiffs, and it
is the lack of providers that in many instances creates
the intolerable delays, leads to inappropriate
evaluations, and leads to the provision of
inappropriate services." " Moreover, the
administrative process is inadequate because otherwise
eligible disabled children will age out of the early

27

intervention and preschool populations before
exhausting their administrative remedies, due to the
extremely short time-frame during which plaintiffs are
entitled to receive early intervention and/or preschool
services and the extreme delay that has accompanied the
provision of  some services and  total lack of
provision of other medically-necessary services."

　　Based upon these facts, as alleged, plaintiffs
claim that defendants have failed to provide plaintiffs
and similarly situated children with appropriate Early
Intervention services, thus violating the Individuals
with Disabilities Education Act (20 U.S.C. 1400, et
seq., 34 C.F.R. 300, et seq.) and NY  Public Health Law
2500 et seq., which governs the provision of Early
Intervention services to disabled children and imposes
an obligation upon the defendant to ensure the
provision of timely appropriate services to each child
with a disability between the ages of birth and 3 years
of age and requires that the lead agencies comply with
the substantive and procedural requirements of said

statute as codified in 10 NYCRR 69-4 <u>et seq</u>.

As the IDEA also requires that extended year services  be provided to qualified students with disabilities, by unilaterally limiting the type, amount or duration of year-round services for students with disabilities, defendants violated that statute and its implementing regulations. **See**, *34 C.F.R. 300.106(a)(3); 8 NYCRR 200.1(eee).*

Plaintiffs also allege that defendants have violated New York Education Law  4401, et seq., requires that  preschool children with disabilities  be provided a free appropriate preschool education, in the least restrictive environment and Public Health Law Article 25, which prohibits defendants from requiring plaintiffs to allow defendants to bill their private insurance companies for early intervention and/or preschool services such that plaintiffs' life time maximum insurance benefits or annual limits or available medical assistance is reduced, or results in plaintiffs incurring any cost or loss of insurance

29

benefits.

Defendants also have violated section 504 of the Rehabilitation Act, *29 U.S.C. 6301, et seq.,* by discriminating against plaintiff class on the basis of their disability in the provision of services, including transportation.

For relief, plaintiffs requested a declaration that defendants' policies, procedures, customs, patterns and/or practices deprive them of their statutory rights, are illegal and/or invalid, and are in contravention of the defendants' statutory duty to assure that plaintiffs and similarly situated children receive necessary Early Intervention and/or Preschool services in a timely manner; a preliminary and permanent injunction requiring defendant to timely and adequately evaluate and identify potentially developmentally delayed children and provide compensatory services as necessary and appropriate for said children and all members of the class; a preliminary and permanent injunction requiring

defendants to rescind each and every policy and/or practice which curtails or limits the number of available service providers to children in both the Early Intervention and Preschool programs;  a preliminary and permanent injunction requiring defendants to rescind each and every policy and/or practice by which it arbitrarily limits the number of ABA hours it provides plaintiffs and those in the class they seek to represent; a preliminary and permanent injunction requiring defendants to rescind each and every policy and/or practice by which it bills participating families' insurance carriers for services provided to children in its Early Intervention and Preschool programs, such that families suffer a reduction of benefits and lack of coverage for services which may later be required; an order requiring defendants to immediately identify those class plaintiffs who have not been provided timely and/or adequate early intervention and/or preschool services  -  including speech, OT, PT, ABA, and other

31

related services, and ordering defendants to
immediately provide to the identified plaintiffs the
appropriate early intervention and/or services
guaranteed them by law; an order  requiring defendants
to  immediately provide compensatory early intervention
and/or preschool services in those instances where
future services will not remedy the harm already
incurred, or whether plaintiffs would otherwise age-out
of the system before the harm incurred can be
rectified, to compensate for defendants' past conduct
of failing to provide adequate, time and appropriate
services; an order  requiring defendants to immediately
identify those class plaintiffs who defendants have
billed their insurance carriers for the provision of
services  causing reduction of  plaintiffs' benefits
and the lack of future coverage for medical services;
an order requiring defendants to immediately provide
reimbursement to those class plaintiffs whose insurance
carriers defendants unlawfully billed for the provision
of services and to those families who have expended

32

their own funds to provide services which defendants were required to provide; an order requiring defendants to transport plaintiff A.W., and any other similarly aggrieved class plaintiffs, by means of the shortest available bus route; an order requiring defendants to provide compensatory services to A.W. and other similarly aggrieved class plaintiffs who have suffered the loss of educational and developmental opportunities as the result of the defendants unlawful and discriminatory practices; an order requiring defendants to immediately identify those preschool class plaintiffs to whom defendants arbitrarily limited the amount, duration and availability of extended year services, including speech, OT, PT, ABA, and other related services, and ordering defendants to immediately provide to the identified plaintiffs the appropriate extended year services based on their individual need, as guaranteed them by law and a preliminary and permanent injunction requiring defendants to submit a plan to the Court designed to

remedy each and every legal violation found in this matter, said plan to be monitored by the plaintiffs' counsel and the Court to assure compliance therewith.

**LEGAL ARGUMENT**

**STANDARD ON MOTION TO DISMISS**

To survive a motion a dismiss, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief". FRCP 8(a)(2). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the ...claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. ____, _____, 127 S. Ct. 1955 (2007). Further, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Twombly, supra, at ___ (citing, Szierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1, 122 S. Ct. 992 (2002); Neitzke v. Williams, 490 U.S. 1683, 40 L. Ed. 2d 90 (1974)).

In deciding Twombly, the Supreme Court re▲examined

the standard for

motions to dismiss,1  and adopted a new "flexible
'plausibility standard' which obliges a pleader to
amplify a claim with some factual allegations in those
contexts which such amplification is needed to render
the claim plausible." Iqbal v. Hasty, 490 F.3d 143,
158 (2nd Cir. 2007).   Under this standard, a
complaint may not be dismissed unless it fails to plead
"enough facts to state a claim to relief that is
plausible on its face." Twombly, 127 S. Ct. at 1974.
"A plaintiff's obligation to provide the grounds of his
entitlement to relief requires  more than labels and
conclusions, and a formulaic recitation of the elements
of a cause of action will not do." Id., at 1965.

     "It remains true, however, that specific facts are
not necessary; the statement need only give the
defendant fair notice of what the claim is and the
grounds upon which it rests." Johnson & Johnson v.
Guidant Corporation, et al., 2007 U.S. Dist. LEXIS
64114 (S.D.N.Y.), quoting, Erickson v. Pardus, 127 S.

35

Ct. 2197, 2200, 167 L.Ed. 2d 1081 (2007).

As set forth below, plaintiffs' complaint amply complies with the pleading standard set forth in Twombly as interpreted by the Second Circuit. Therefore, defendant's motion seeking dismissal of the complaint should be denied in its entirety. We next address the specific arguments defendants have raised in support of their motion.

I.   PLAINTIFFS HAVE SUFFICIENTLY STATED A CLAIM FOR
     **RELIEF UNDER SECTION 504 OF THE REHABILITATION ACT**

In seeking dismissal of plaintiffs cause of action for relief under Section 504 of the Rehabilitation Act, defendants rely solely on the Wenger v.Canastota Central. School Dist., 979 F. Supp. 147, 152 (N.D.N.Y. 1997). But,Wenger is a summary judgment case and inapposite to the facts plead here.  In the Complaint before the Court, plaintiffs have outlined a systematic effort by defendants county and Warren to thwart proper implementation of the requirements of the IDEA,

undertaken in bad faith and driven by financial considerations. Specifically, among other issues, the Complaint alleges that defendants made the decision to limit ABA therapy that it would provide to autistic children in Orange County  to less than 20 hours per week, absent any medical support, and contrary to the recommendations of treating physicians.

From these allegations, the Court may infer that plaintiffs can prove "gross misjudgment" and "bad faith." Simply stated, if plaintiffs are able to show that defendants knew that the effects of their policy decisions would thwart implementation of the IFSPs and IEPS of numerous putative class members, including named plaintiffs, they functioned in bad faith and showed gross misjudgment.  This has yet to be proven, but, applying the proper standard on a motion to dismiss, this Court cannot say that plaintiffs will be unable to prove exactly such a systemic violation.

Moreover, unlike Wenger, where the status of the disabled child made implementation of his IEP

difficult, here, the Complaint demonstrates no good faith basis for the county's failure to implement approved educational plans.  And, the complaint suggests that the county's implementation failures are part of a calculated choice to imperil the progress of disabled children precisely because they are vulnerable and politically powerless.  See, Romano v. SLS Residential Inc., et al. [07 Civ. 2034, S.D.N.Y.] (SCR)(holding that where statute specifically is intended to protect vulnerable individuals and complaint suggests that the defendant[s] have targeted such individuals for mistreatment because of their status, discrimination has been sufficiently alleged to fall within the statutory ambit).

Moreover, the complaint shows that the defendants have engaged in many practices which, quite evidently, are dissimilar from the manner in which any government, charged with implementing federal policy, would be expected to perform such duties.  Thus, the complaint suggests that rather than identify and train qualified

38

professionals to service this disabled population, the
county has arbitrarily limited both the number of
providers it will hire, thus knowingly failing to
insure that services can be provided in a manner
consistent with law.  This kind of gross mismanagement,
especially where the consequences are visited upon a
protected and highly vulnerable class, suggests
discriminatory intent.  We certainly do not expect
local units of government to so cavalierly fail to
implement the requirements imposed by federal and state
law and a fair inference of discrimination may be drawn
from the allegations set forth in the complaint.

Finally, the purpose of the provision of services
as required in the IFSPs and IEPs is to provide
disabled children with an opportunity to equally
benefit from public educational resources as non-
disabled children.  Thus, inherently, if the
county denies these students the services they require,
it is engaged in discrimination because the consequence
of its failing is to disallow this class of children

participating as equally as they can [with the relevant services] in the public schools.    See, Rothschild v. Grottenthaler & Ramapo Central School Dis.,907 F.2d 286, 289 (2d Cir. 1990)(denial of sign language interpreter to deaf parents violates section 504 because it deprives the parents of "equal opportunity to participate in [school] activities because they cannot effectively communicate with teachers and other School District personnel").  Here, the plaintiffs are being denied the services they require.  These services are intended, as in Rothschild, to allow them equal opportunity to benefit from and participate in public education services.  The denial of such services disallows these disabled children from participating in as equal manner as is possible.  If the Court of Appeals held that parents of a non-disabled child were discriminated against when denied the use of a sign language interpreter, a fortiori, defendants violate the section 504 rights of disabled students by failing to afford them the services they need to access public

40

education to the maximum extent possible.

As in <u>Rothschild</u>, the defendants' discrimination occurs when they fail to provide the services needed by the disabled to access public education; under the statutory scheme, there is no need to compare these disadvantaged disabled students to their non-disabled counterparts to make out a claim of discrimination prohibited by this statute.

Further, defendants attempt to narrow plaintiffs' Section 504 claims to the allegations set forth in Paragraphs 48▲53 of the Complaint. But, this proceeds on the erroneous theory, refuted above, as to what constitutes impermissible discrimination under section 504. Unsurprisingly, defendants do not cite the Second Circuit's decision in <u>Rothschild</u> in explaining the proper application of section 504, but, rather a district court case which is not binding on this Court.[3]

---

[3]     While <u>Wenger</u> was affirmed by the Second Circuit, this occurred in an unpublished opinion which lacks precedential value and then only as to the parent's claim under section 504.

Plaintiff A.W.'s claims are not moot.  The complaint was filed while she was still in the preschool program.  <u>Cf.</u>, <u>B.D, et al. V. DeBuono, et al.</u>, 130 F.Supp. 401, 430.(S.D.N.Y. 2001)(CM)(noting that on January 15, 1999, her Honor denied plaintiffs' motion for Rule 23(b)(2) class certification, finding that the named plaintiffs "had all aged out of the early intervention program (the program that allegedly relied on the inappropriate policy) prior to the time the lawsuit <u>was commenced.</u>").

II.  PLAINTIFFS NEED NOT HAVE EXHAUSTED ADMINISTRATIVE
**<u>REMEDIES BECAUSE TO DO SO WOULD HAVE BEEN FUTILE</u>**

Exhaustion is excused when:  (1) it would be futile to use the due process procedures required by IDEA, (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to law or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies, such as, for example, when a hearing officer lacks authority or

<u>See</u>, <u>Sabatini v. Corning-Painted Post Area S.D.</u>, 78 F.Supp.2d 138, 146 (W.D.N.Y. 1999)(limiting precedential value of <u>Wenger</u> and its affirmance).

42

the ability to grant the relief sought.  <u>Mrs. W. v.
Tirozzi</u>, 832 F.2d 748 (2nd Cir. 1987).

Here, plaintiffs have alleged, <u>inter alia</u>, that
defendants pursued general policies of limiting ABA
hours in violation of IDEA and limiting the number of
available providers of all therapies for children ages
0 to 5 years.  Further, plaintiffs are requesting
declaratory and injunctive relief.   In holding that
plaintiffs similar claims were not barred for failure
to exhaust, the Court in <u>BD v. County of  Westchester,
supra.</u> held,  "This is exactly the type of relief that
is not available to plaintiffs under the IDEA.   They
could not have exhausted this claim in a proceeding in
front of an ALJ." <u> Id.</u>, at 426.

Defendants rely on <u>Polera v. Board of Education of
the Newburgh Enlarged City School District</u>, 288 F.3d
478 (2d Cir. 2002) for the proposition that the
individual plaintiffs had recourse for the claimed
deprivations through the administrative process and,
therefore, this Court lacks jurisdiction to adjudicate

the advanced claims.  This argument misconstrues the claims plaintiffs advance. The Complaint makes clear that defendants have adopted policies and procedures which make impossible implementation of individual education plans and which constrain those developing such plans from appropriately providing for the individual child's educational needs.  As a consequence of these policies, the plaintiffs have been and, in certain cases, continue to be injured.  Even where educational plans have properly accounted for the child's disabilities and offered appropriate related services, according to the Complaint, the child has not gained the benefit of these services on account of systemic policies which preclude the availability of sufficient providers and the delivery of services.

Polera involved no such claims.  There, the plaintiff simply argued that in her case, the school district had not properly provided her needed study materials, compensation for tutoring and recognition of her academic achievement.  The Court of Appeals held

44

that rather than filing in federal court, this student
could have accessed the administrative process to
redress her grievances.  She plead no systematic
violations of law by Newburgh which stood between her
and the relief she demanded.  Exhaustion was useful and
required in Polera because, according to the Court of
Appeals, the IEPS were vague and it was not clear what
services the district had failed to provide the
student. Distinguishing the statements of Senator Paul
Simon's that exhaustion was not to be required by the
IDEA where a school district did not implement an EIP,
the Circuit noted, "This is not the sort of case
described by Senator Simon, in which a school has
failed to implement services that were specified or
otherwise clearly stated in an IEP.  Polera's claim
unavoidably encompassed both a failure to provide
services and a significant underlying failure to
specify what services were to be provided." Id. at 489.
Here, plaintiffs' underlying claim is that defendants
did not implement IFSPs which did require related

services and, thus, the cited logic of <u>Polera</u> is inapposite.

Indeed, in many ways, our case is the polar opposite: plaintiffs allege that by dint of officially adopted policies, their educational needs cannot be met and that defendants have adopted these policies so as to not meet their educational needs. Addressing these issues at a "macro" level makes sense because, according to the Complaint, these policies affect hundreds of autistic children including plaintiffs.

Defendants recognize that complaints alleging such systematic illegality are not subject to the exhaustion requirement, but simply minimize the allegations which are set forth in plaintiffs' Complaint. <u>See</u>, <u>J.S. v. Attica Central Schools</u>, 386 F.3d 108 (2d Cir. 2004).

Exhaustion only applies to claims seeking relief under other federal statutes when the same relief is available under the IDEA. Here, as is plain from the Complaint, plaintiffs are not seeking relief through sec. 504 which is available under the IDEA. The IDEA

46

does not permit broad injunctive relief for violations of the IDEA and section 504 plainly allows the victims of discrimination to obtain such relief.

Defendants also assert that plaintiffs' state law claims should be rejected for failure to exhaust administrative remedies.  However, section 1415(1) of IDEA applies only to claims brought under other federal statutes, not state laws.  Thus, defendants' argument that supplemental Education and Public Health Law claims which arise from the same nucleus of operative facts, must be dismissed is wrong.

### III.  **42 U.S.C. IS A JURISDICTION-GRANTING PROVISION**

42 U.S.C. sec. 1983 affords federal courts jurisdiction where federal law or constitutional provisions afford rights to individuals.  Here, both the IDEA and the Rehabilitation Act provide enforceable federal rights and 42 U.S.C. sec. 1983 affords citizens the right to access the courts to vindicate these rights.  Plaintiffs make no claim that any additional

47

substantive rights are provided by 42 U.S.C. sec. 1983.

To the extent that defendants claim that the complaint does not demonstrate that the county and its decision-makers acted as state actors, subjecting themselves to this court's jurisdiction pursuant to 42 U.S.C. sec. 1983, they again misread the Complaint. All of the acts and omissions therein enumerated were taken, as is alleged, by Warren as director of intervention services, a state-created program intended to operationalize federal and state mandates. Moreover, the complaint plainly alleges that the decisions which Warren has made and implemented represent final agency actions she was authorized to make and implement.  Thus, the requisites for liability under 42 U.S.C. sec. 1983 have been met.

IV. DEFENDANT WARREN MAY BE HELD INDIVIDUALLY LIABLE **UNDER THE REHABILITATION ACT OF 1973**

While we concede that the Complaint, as written, contains no claim for monetary relief, it is plaintiffs' current intention to seek to amend the

48

complaint to seek monetary damages pursuant to section 504 of the Rehabilitation Act.

Individuals who have violated that statute can be held personally responsible for the injuries they have caused.  <u>Johnson v. New York Hospital, et al.</u>, 897 F.Supp. 83, 85-86 (S.D.N.Y. 1995), <u>Bartlett v. New York Board of Law Examiners</u>,156 F.3s 321, 331 (2nd Cir. 1998), <u>Robinson v. Gorman</u>, 145 F.Supp.2d, 201, 206 (D.Ct. 2001).  To the extent that defendant Warren seeks dismissal of the claims against her, the Complaint sufficiently alleges that she proceeded with at least deliberate indifference to the fact that the implementation of her policies resulted in the violation of federal law, denying plaintiffs equal opportunity to access and participate in public

schools.

V.  PLAINTIFFS WERE NOT REQUIRED TO FILE NOTICES OF CLAIMS **SINCE COUNTY LAW SEC. 52 APPLIES ONLY TO TORT CLAIMS**

Plaintiffs Complaint includes several ancillary state claims which arise from the same facts as inform

the federal claims.  In <u>Brooklyn School for Special</u> <u>Children v. Crew</u>, 1997 U.S. Dist. LEXIS 12974 (S.D.N.Y. 1997), Judge Preska rejected a similar argument as follows: "[Defendants] assert that plaintiffs' non-compliance [with notice of claim requirements] bars their state law causes of action against the Board of Education and the City of New York. As discussed above, plaintiffs' claims are primarily for injunctive and declaratory relief rather than monetary damages. Courts have repeatedly held that notice of claim requirements do not apply to actions which seek monetary relief only as an incident of prospective declaratory and injunctive relief. <u>See</u>, <u>e.g.</u>, <u>Ruocco v.</u> <u>Doyle</u>, 38 A.D.2d 132, 134, 327 N.Y.S.2d 933 (2d Dep't 1972)."

Moreover, both NY County Law sec. 52 and General Municipal Law sec. 50-i relate to the "presentation of tort claims," and plaintiffs' claims do not sound in tort.

Finally, citation to this court's decision in

50

Weathers v. Millbrook, 428 F.Supp.2d 180 (S.D.N.Y.
2006) is unavailing.  There, plaintiff asserted
negligence [tort] claims against defendant school
district and its agents and failed to file a notice of
claim as required by section 3813 of the Education Law.
Here, the state law s violated are unrelated to
negligence claims, but, rather go to the county's
failure to follow state law which required a functional
early intervention program, which meets the needs of
classified children, the provision of proper
transportation to such children, the provision of pre-
school special education services and the protection of
medical insurance policies held by the parents of
disabled children.

Defendants have made no showing that any notice of
claim requirement applied to any of these duties and
the county's alleged violation thereof.  See, Board of
Educ.v. Elite Associates 138 Misc.2d 1038, 525 N.Y.S.2d
1015 (1988).

VI.  THE STATUTE OF LIMITATIONS HAS NOT RUN ON

51

## PLAINTIFFS' STATE LAW CLAIMS

Without any specificity, defendants claim that
"many" of the plaintiffs' state law claims arose in
2004-2005 and cannot timely be raised in 2007.  A
careful reading of the complaint shows that the claims
arose within 1 year and ninety days of the filing of
the Complaint.  Moreover, defendants have not
demonstrated that this time period defines the actual
limitations period set by New York for the violations
enumerated in the complaint.

VII.   ORANGE COUNTY DEPARTMENT OF HEALTH IS A

PROPER **PARTY**

In our district, county departments of health have
repeatedly been sued and found liable [or been
dismissed on the merits] in similar cases: See, B.D. v.
DeBuono, et al., 130 F.Supp.2d 401 (S.D.N.Y. 2001), MM
v. Kaplan, et al., 98 CIV 872 (SDNY)(CM), D.D. v. NY
City Department of Education, et al., 465 F.3d 503
(2d Cir. 2006)(complaint named subordinate governmental

bodies like Community School District 29).

Here, the plaintiffs have sued the County [para. 12] and the County's Department of Health.  If the Court accepts the defendant's argument that the County Department of  Health has no independent juridical identity, we respectfully note that the County of Orange has already been sued and served and dismissal of the department would serve absolutely no purpose.

### CONCLUSION

For the reasons set forth, the defendants' motion to dismiss should be denied in its entirety.

_____Respectfully submitted,

MICHAEL H. SUSSMAN

SUSSMAN & WATKINS

PO BOX 1005

GOSHEN, NEW YORK 10924

(845)-294-3991

Counsel for Plaintiffs

Dated: October 28, 2007

Goshen, New York