UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X
**S.W.**, by her parent and natural guardian;
**J.W.**, individually and on behalf of all :
others similarly situated; **A.W.**, by her
parent and natural guardian; **A.W.**,          :          07 Civ. 5708 (WCC)
individually and on behalf of all
others similarly situated; **B.F.**, by his :
parent and natural guardian; **P.F.**,                     **ECF CASE**
individually and on behalf of all others:
similarly situated; **J.F. and P.F.**, by
their parent and natural guardian; **A.F.**,:
individually and on behalf of all others
similarly situated; **L.T.**, by her parent :
and natural guardian; and **R.T.**,
individually and on behalf of all others:
similarly situated,
                                        :          **OPINION**
                                                   **AND ORDER**
                        Plaintiffs,
                                        :
            - against -
                                        :
SHEILA WARREN, sued individually, and
as Director of Early Intervention      :
Services for Orange County; ORANGE
COUNTY DEPARTMENT OF HEALTH; and COUNTY :
OF ORANGE,
                                        :
                        Defendants.
- - - - - - - - - - - - - - - - - - - X

**A P P E A R A N C E S :**

                        SUSSMAN & WATKINS
                        **Attorneys for Plaintiffs**
                        40 Park Place
                        P.O. Box 1005
                        Goshen, New York 10924

MICHAEL H. SUSSMAN, ESQ.

        Of Counsel

                        LAMB & BARNOSKY, LLP
                        **Attorneys for Defendants**
                        534 Broadhollow Road, Suite 210
                        P.O. Box 9034
                        Melville, New York 11747

SHARON N. BERLIN, ESQ.

        Of Counsel

                                **Copies E-Mailed to Counsel of Record**

CONNER, Senior D.J.:

Plaintiffs, S.W., A.W., B.F., J.F., P.F. and L.T., by their parents and natural guardians, bring this action against Sheila Warren ("Warren"), Orange County Department of Health (the "Department of Health") and County of Orange (the "County") alleging violations of rights under the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. §§ 1400, et seq., 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act of 1973 ("Section 504") 29 U.S.C. § 794, Article 25 of the New York Public Health Law §§ 2540, et seq. and Article 89 of the New York Education Law §§ 4410, et seq. Defendants move to dismiss all plaintiffs claims pursuant to FED. R. CIV. P. 12(b)(6) on various grounds. We address each of these reasons in turn and grant defendants' motion to dismiss in part and deny defendants' motion in part.

## BACKGROUND

The following facts are not findings of fact by the Court, but are taken from the Complaint and assumed to be true and construed in the light most favorable to the non-moving plaintiffs for purposes of deciding this motion.

## I.    Facts

S.W. is a 4-year-old girl with autism. She began Early Intervention in January 2005. According to plaintiffs, initial evaluations indicated S.W. exhibited symptoms of autism, but defendants did not inform her parents or recommend an evaluation by a neurologist or specialist. S.W. was not diagnosed until November 2005 when her parents took her for a private evaluation.

1

S.W.'s neurologist prescribed 30 hours of Applied Behavior Analysis ("ABA") per week, however from November 2005 through August 2006 S.W. did not receive ABA. S.W. received speech therapy during Early Intervention because she was non-verbal. In February 2006 the Early Intervention team agreed to increase therapy to three times a week and amended S.W.'s Individualized Education Program ("IEP"). However, S.W. did not receive any speech therapy between February 2006 and August 2006. In September 2006 plaintiff requested the County provide compensatory services but it refused, noting, in part, a shortage of providers. (Complt. ¶¶ 6, 37-43.)

A.W. is a 4-year-old girl with a primary diagnosis of autism, among other diagnoses. A.W. began attending Fred S. Keller Preschool in Rockland County in September 2006 because there were no appropriate placements for him in Orange County. The school is approximately 55 miles from A.W.'s home and A.W. spends approximately 4 hours a day commuting to and from it. A.W.'s mother contacted the bus company and defendants on numerous occasions requesting they use a shorter available route, but the County stated they had no control over the bus route. (*Id.* ¶¶ 7, 45-53.)

B.F. is a 4-year-old boy. In April 2004, B.F. began speech and occupational therapies through Early Intervention. B.F. began exhibiting symptoms of autism but defendants did not recommend or arrange evaluation by a specialist, and B.F. was not diagnosed until June 2005 when his parents took him to a developmental pediatrician. Thereafter, B.F. began ABA therapy. In April 2004 defendants took B.F.'s insurance information, assuring his mother it would not be billing the insurance company for services; however, in July 2006 his mother determined that the County had been billing for the services and B.F. had therefore "capped out" of coverage. In June 2007 a meeting was held to determine B.F.'s summer services and it was agreed he required continued

services through the summer; however his mother was told he could receive extended services only from July 2, 2007 to August 14, 2007. (*Id.* ¶¶ 8, 55-64.)

P.F. and J.F. are 2-year-old boys. Early Intervention services started when defendants evaluated P.F. and J.F. in August 2006 and determined they needed speech therapy. In October 2006, pursuant to a team meeting, one extra session of therapy was allowed each week but P.F. and J.F. had to share it due to a shortage of providers. From October 2006 through January 2007 neither received any additional therapy. In a January 2007 meeting it was agreed P.F. and J.F. needed an additional session but the County again stated there was a shortage of providers. *(Id.* ¶¶ 9-10, 66-72.)

L.T. is 2-year-old girl. L.T. began speech therapy in September 2006 after an August 2006 evaluation. Although her initial evaluation indicated behaviors consistent with autism, defendant did not inform L.T.'s parents. L.T. was unable to participate in speech therapy due to "sensory issues" and occupational therapy was recommended. The occupational therapist noted L.T. demonstrated "social/emotional" difficulties and L.T. was then approved for "parent/child" group sessions and a social worker. Defendants did not recommend or arrange for evaluation by a neurologist or specialist, although she exhibited symptoms of autism. In December 2006, upon recommendation from a parent of another disabled child, L.T.'s parents arranged for an evaluation, and in January 2007 she was diagnosed with autism. The specialist recommended speech therapy 3 times a week, toddler development class 3 times a week and 20 hours of ABA starting promptly to increase her chances of becoming mainstreamed. The Individualized Family Service Plan ("IFSP") team agreed to increase L.T.'s speech therapy but only approved 10 hours of ABA per week. L.T. actually received only 6 hours of ABA per week, and when her parents questioned why

3

they were told there were no providers available.  *(Id.* ¶¶ 11, 74-96.)

## II.     <u>Allegations</u>

Plaintiffs allege defendants implemented policies which have: caused a shortage of service providers, including providers of speech, occupational and physical therapy, and ABA therapists, resulting in a lack of provision of necessary services to preschool children; limited the number of hours of ABA services for children diagnosed with autism in Early Intervention and preschool programs; limited the amount, duration and availability of extended year services to preschool children; billed plaintiffs' insurance carriers for provision of services, likely reducing plaintiffs' benefits and future coverage; failed to properly and timely evaluate or identify children in need of Early Intervention; failed to develop "sufficient and appropriate" programs to meet the needs of preschoolers with autism, so that plaintiffs were required to travel each day over 100 miles for up to 4 hours, substantially in excess of the travel time for non-disabled or other-disabled peers.  (*Id.* ¶ 1.)

Orange County is required to provide Early Intervention services to developmentally disabled children in the county through its Department of Health.  *See* N.Y. PUB. HEALTH LAW §§ 2540, et seq. (Complt. ¶¶ 12-13.)   Sheila Warren is the Director of the Division of Intervention Services, responsible for the policies and administration of the Early Intervention Program and Preschool Related Services Program.  *See* N.Y. EDUC. LAW  § 4410(9)(c).  Plaintiffs sue her individually and in her official capacity. (Complt. ¶¶ 14-16.)  School boards are required to establish committees to develop, review and revise the IEP for each preschool child with a disability.  N.Y. EDUC. LAW § 4410(3).

Plaintiffs claim that defendants failed to perform their legally required duties, including determination of eligibility, identification, referral, evaluations and provision of appropriate services and that they failed to adopt and implement policies, practices and procedures to ensure the performance and completion of proper and timely services. They also allege that defendants have instituted policies and practices to limit the number of available providers, causing denial and delay of necessary services; specifically, Warren has instituted a policy in which providers of speech, occupational, physical and ABA therapy could not contract with the County to provide services to Early Intervention children unless the providers agreed to maintain an arbitrary number of cases established by Warren. This resulted in a loss of previously contracted providers. Defendants have also implemented a policy and practice limiting the number of ABA hours for autistic children; failed to notify parents of defendants' legal obligations; and billed insurance providers for Early Intervention services. Plaintiffs also allege defendants failed to train staff and personnel who develop and implement IFSPs and failed to prepare and implement IFSPs to provide services to address all identified needs. Defendants have also discriminated against plaintiffs by requiring one of them to travel 4 hours a day to receive necessary services. For relief plaintiffs request: a judgment that the policies and procedures deprive plaintiffs of statutory rights and are illegal and in contravention of defendants' statutory duty; a preliminary and permanent injunction requiring that defendants timely evaluate and identify disabled children, rescind policies that limit the available service providers and the hours of ABA therapy, rescind policies that bill insurance carriers for Early Intervention services, and submit a plan to the Court to remedy the violations; that the Court require that defendants identify those who have not been provided timely and adequate services and order immediate provision, provide compensatory Early Intervention services, reimburse plaintiffs whose

5

insurance carriers were billed, transport A.W. and similar plaintiffs by the shortest available bus route, provide the appropriate extended year services and related services to plaintiffs to whom defendants limited the amount of services; and costs and attorneys' fees.  (Complt., Prayer for Relief.)

Defendants move to dismiss pursuant to Rule 12(b)(6) on the grounds that plaintiffs: fail to state a claim under Section 504; failed to exhaust administrative remedies as required for claims under the IDEA, Section 504, Section 1983 and state law; fail to assert a cause of action under Section 1983; can not bring an individual claim under the IDEA, Section 504, or state law against Warren; failed to file notices of claim for the state law claims; are time barred from bringing state law claims that accrued more than a year and 90 days prior to filing the complaint; and can not assert a claim against the Department of Health.  We address below each of these grounds.


**DISCUSSION**

**I.     Standard of Review**

On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Scheuer  v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.).   Furthermore, in assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference. *See* FED. R. CIV. P. 10(c); *Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999); *De Jesus*

*v. Sears, Roebuck & Co.,* 87 F.3d 65, 69 (2d Cir. 1996).

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citation omitted). "The Supreme Court has recently held that [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ello v. Singh*, 2007 WL 3084979, *3 (S.D.N.Y. Oct. 19, 2007) (internal quotation marks omitted; alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007); *see Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d. Cir. 2007) (determining that the Court in Twombly "is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed. 1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir. 1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff describes, are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

II.    **Section 504 Claim**

"The Rehabilitation Act protects disabled individuals from discrimination in public services." *Andree ex rel. Andree v. County of Nassau,* 311 F. Supp. 2d 325, 334 (E.D.N.Y. 2004) (citing *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002)).    Section 504, in pertinent part, provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."    29 U.S.C. § 794(a).    To prove a violation of the Rehabilitation Act, a plaintiff must show that:  (1) he is an individual with a disability;  (2) he is otherwise qualified for benefits under a federally funded program; and (3) he has been denied those benefits because of his disability.    *See  Rothschild v. Grottenthaler*, 907 F.2d 286, 289-90 (2d Cir. 1990); *B.D. v. DeBuono*, 130 F. Supp. 2d 401, 438 (S.D.N.Y. 2000) (citing *D'Amico v. City of New York*, 132 F.3d 145 (2d Cir. 1998)); *see also Weixel*, 287 F.3d at 146-47.

Section 504 addresses discrimination against disabled students, rather than inappropriate special education services which can be the basis of IDEA claims.  *Scaggs v. N.Y. State Dep't of Educ.*, 2007 WL 1456221, at *8 (E.D.N.Y. May 16, 2007).    Thus, "'something more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities, i.e., a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment.'"  *Id.* at *15 (citing *Wenger v. Canastota Cent. Sch. Dist.*, 979 F. Supp. 147, 152 (N.D.N.Y. 1997); *see also Pinn ex rel. Steven P. v. Harrison Cent. Sch. Dist.*, 473 F. Supp. 2d 477, 483 (S.D.N.Y. 2007) (requiring plaintiff to demonstrate bad faith or gross misjudgment in Section 504 claim asserting denial of a free appropriate public education) (citations omitted); *B.D.*,

8

130 F. Supp. 2d at 439 ("I therefore hold that in order to prevail on their Rehabilitation Act claims, plaintiffs must show bad faith or gross misjudgment on the part of the defendants.").

There is no dispute that plaintiffs meet the first requirement of a Section 504 claim in that they are disabled individuals entitled to benefits. Defendants, for the first time in their Reply Memorandum, argue that plaintiffs do not meet the "otherwise qualified" requirement. Defendants rely on *Romano v. SLS Residential, Inc.*, 2007 WL 3145076 (S.D.N.Y. Oct. 10, 2007) to support their assertion that Section 504 prohibits discrimination against disabled individuals only where the allegation is that the defendant improperly considered the handicap in denying the services in question, not where the very services provided are because of the handicap. Therefore, they argue, plaintiffs have no Section 504 claim because the Early Intervention services are provided for disabled children, defendants are not denying those children services where the handicap would be unrelated to the service and therefore are not discriminating against them under Section 504.

Although we agree with defendants' reading of *Romano*, we disagree as to its applicability in this case. *Romano*, and the Second Circuit opinion on which it relies, *Cushing v. Moore*, 970 F.2d 1103 (2d Cir. 1992), did not involve Section 504 claims alleging discrimination in disability education. As discussed below, courts have considered Section 504 claims in conjunction with IDEA claims and determined that plaintiffs can rely on Section 504 to claim that they are denied access to a free appropriate education, as compared to the free appropriate education non-disabled students receive, if they can show that defendants acted with bad faith or gross misjudgment in the administration of disability services. *See B.D.*, 130 F. Supp. 2d at 439 (acknowledging that Section 504 "'does not clearly establish an obligation to meet a disabled person's particular needs vis-a-vis the needs of other handicapped individuals, but mandate[s] only that services . . . not be denied [to

9

a disabled person] because he is handicapped'" and therefore concluding that to establish a Section 504 claim on allegations that the County failed to provide appropriate services to eligible children under IDEA plaintiffs must establish bad faith or gross misjudgment) (citation omitted, alterations in original). Indeed, if the very fact that plaintiffs were challenging the denial or inadequacy of disability services meant they could not assert a Section 504 claim, then there would be no need for courts to distinguish Section 504 claims from IDEA claims. As we discuss below, this is not the case, and courts on numerous occasions have recognized both claims.

There is also a dispute as to whether plaintiffs have been discriminated against by denial of those benefits because of their disability. Plaintiffs allege that defendants made a decision to limit ABA therapy to less than 20 hours per week absent medical support and contrary to the recommendations of treating physicians, and to limit the number of providers thereby impairing the implementation of IEPs of plaintiffs. They assert this establishes enough to create an inference of bad faith or gross misjudgment.

In *Scaggs*, the court determined that plaintiffs pled "gross misjudgment" necessary for their ADA and Section 504 claims sufficiently to withstand a motion to dismiss. 2007 WL 1456221, at *16. There, plaintiffs enumerated a number of failures and omissions with regard to disabled students, and asserted that defendants were aware of plaintiffs' parents' request for accommodations and programs to address such disabilities, but intentionally refused to take any remedial or corrective action to remedy the problems. *Id.* For example, plaintiffs alleged that classrooms were overcrowded, students were not provided with adequate educational services and programs, defendants failed to identify students with learning disabilities and special educational needs, failed to provide such students with educational programs designed to address these issues, failed to monitor

the students' educational performance, and failed to provide safe and adequate transportation. *Id*. We find that plaintiffs here have also enumerated a number of failures, including repeated instances where defendants' did not fulfill the requirements of plaintiffs' IEPs, limited the number of ABA hours, or failed to properly and timely evaluate disabled students, and have sufficiently alleged that defendants were made aware of plaintiffs' parents' requests but on several occasions stated they could not meet those requests due to a lack of service providers.

If plaintiffs can show that defendants had no proper or reasonable basis for the policy limiting available services for preschool children with autism, knowing it would result in a failure to adequately implement IEPs established to provide disabled students with an equal opportunity to a free and adequate education, they can establish a Section 504 claim. *See B.D.*, 130 F. Supp. 2d at 439 (denying defendants' motion for summary judgment on Section 504 claims because "plaintiffs have assembled evidence from which a finder of fact could conclude that defendants were aware of the benefits of a larger number of hours of ABA therapy and intentionally withheld more than ten hours from those plaintiff children for whom a greater number of hours was a necessity"); *see also Rothschild,* 907 F.2d at 292-93 (providing that, when a court considers a Section 504 claim, it must take into account the "need to give effect to the statutory objectives and the desire to keep § 504 within manageable bounds "; therefore a school should not be "'required to make "fundamental" or "substantial" modifications to accommodate the handicapped,'" but may "be required to make 'reasonable' modifications") (citation omitted).

Defendants allege that "Plaintiffs' Complaint is devoid of any allegations of 'bad faith or gross misjudgment.'" (Defs. Reply Mem. Supp. Mot. Dismiss at 4.)  However, because plaintiffs allege that defendants implemented policies which in effect limit the availability of services and

thereby impede the implementation of IEPs for preschoolers with autism, at this stage we can infer that plaintiffs may be able to show bad faith or gross misjudgment. At this early stage, plaintiffs have alleged enough to survive the motion to dismiss for failure to state a claim under Section 504. *See R.B. ex rel. L.B. v. Bd. of Educ. of N. Y.*, 99 F. Supp. 2d 411, 419 (S.D.N.Y. 2000) (denying motion to dismiss Section 504 claim because plaintiff alleged sufficient facts to support allegations of bad faith and gross misjudgment, including defendants' failure to take any action to implement plaintiff's IEP for 4 months; promptly develop and implement an ISP; timely implement the ISP; the hearing officer's finding that defendants' conduct was tantamount to gross neglect; and defendants' failure to timely implement the order of the hearing officer).

"[I]ntentional discrimination may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom." *Butler v. S. Glens Falls Cent. Sch. Dist.*, 106 F. Supp. 2d 414, 420 (N.D.N.Y. 2000). In *Butler*, the plaintiff survived summary judgment because he presented evidence that the defendant school officials failed to develop IEP's for the plaintiff, developed several IEP's that were determined to be inappropriate for his educational needs, and failed to provide him with certain special education services. *Id.* The court felt that if proven this might constitute deliberate indifference to the likelihood that plaintiffs rights were being violated. *Id.* Here, plaintiffs allegations that the County repeatedly deprived children of the number of hours of service IEPs required, for the reason that there was an insufficient number of service providers, may be enough to show "at least deliberate indifference" to the likelihood of violations of education law, and at this stage we find that is enough.

Plaintiffs also claim that the County failed to alter plaintiff A.W.'s bus route, in which A.W.

is required to travel 4 hours round trip per day to an appropriate school, after A.W.'s mother determined that the bus company was not using the shortest route. However, there is no allegation that this refusal was based upon A.W.'s disability, as a Section 504 claim requires. Plaintiffs have not established or even alleged that the County provides bus services to non-disabled students using the shortest route available. Nor have they adequately alleged that defendants refusal to change the route to the shortest one was an act of bad faith or gross misjudgment. *Zahran ex rel. Zahran v. N.Y. Dep't of Educ.*, 306 F. Supp. 2d 204, 213-14 (N.D.N.Y. 2004) (dismissing Rehabilitation Act claim where plaintiffs' alleged no bad faith or gross misjudgment, challenge was really an IDEA claim as it was directed toward the substance or adequacy of the program and not a decision to deprive plaintiff of access to the program itself). As defendants point out, this claim is an allegation that the transportation provided is not appropriate, and that is an IDEA claim which we address below. Without an inference of bad faith, as in the one we drew earlier where defendants implement policies which result in denial of services to fulfill disabled students IEPs, this claim cannot withstand the motion to dismiss.

Defendants move to dismiss this claim under the belief that the "only allegation of disparate treatment contained in Plaintiffs' complaint is with respect to transportation for A.W." (Defs. Mem. Supp. Mot. Dismiss at 3.) If we determined this was the case we would dismiss the claim under Section 504; however, as established above, for purposes of this motion, plaintiffs have adequately alleged that defendants showed bad faith or gross misjudgment in denying plaintiffs adequate services. As to the transportation claim, we agree with defendants that plaintiffs have failed to allege enough to survive this motion.

### III.    <u>Failure to Exhaust Administrative Remedies</u>

The IDEA mandates federal grants to states to provide disabled children with "a free appropriate public education." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 482 (2d Cir. 2002) (citing 20 U.S.C. §§ 1400(d)(1)(A), 1401(8), 1411(a)(1) & 1412(a)(5)(A)). Educators and parents jointly develop an IEP each year, and the IDEA requires that states offer parents an array of procedural safeguards designed to ensure the education of their child. *Id*. Although the IDEA provides for a federal cause of action to enforce such rights, it imposes a requirement that plaintiffs first exhaust administrative remedies. *Id.* at 483 (quoting IDEA § 1415(l): "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.") (brackets in original). "'It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court. . . .'" *Handberry v. Thompson*, 436 F.3d 52, 60 (2d Cir. 2006) (quoting *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004)).

Exhaustion of administrative remedies is required so that disputes regarding the education of disabled children are first analyzed by administrators with expertise in the area who can promptly resolve grievances. *J.S.*, 386 F.3d at 112. "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration

14

of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Id*. (quotation marks and citation omitted). At the very least, the administrative process will provide a helpful record for those issues before the federal court. *Id*. at 113.

"The plaintiff's failure to exhaust administrative remedies ordinarily deprives this court of subject matter jurisdiction over any IDEA claims." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002). However, Congress has specified that exhaustion is not necessary if: "(1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies." *Id.* (citation omitted). It is the plaintiffs' burden to prove the applicability of one of these exceptions. *Id*.

Defendants claim plaintiffs' IDEA, Section 504, Section 1983 and state claims should be dismissed because plaintiffs failed to exhaust their state administrative remedies, as required by the IDEA. There is no dispute that plaintiffs did not attempt to exhaust administrative remedies before bringing this claim. Plaintiffs asserted in the Complaint and their Memorandum of Law in Opposition to Defendants' Motion to Dismiss that administrative remedies would be futile due to the inability of a hearing officer to provide a remedy because of the systemic violations of the County.

Defendants allege that the administrative process could have corrected the alleged IDEA violations, and at the very least would have created a factual record to aid the Court. Defendants see plaintiffs' allegations against the County as a failure to provide services of the scope and duration to which their children were entitled, and argue that this is a classic complaint routinely remedied by the

administrative process.  Defendants claim that the administrative process could remedy any failure to evaluate or provide services, including compensatory services.

Defendants point out that the Court must look to each individual plaintiff's situation to determine whether the administrative process could remedy the grievance, and therefore each plaintiff must exhaust that remedy first.  While it may be true, as defendants repeatedly assert, that these claims could have been handled best through the administrative process, defendants fail to acknowledge two of plaintiffs' assertions in the Complaint, which for purposes of this motion we decide are adequately pled and we must accept as true: defendants instituted systemic polices which resulted in the failure to provide adequate services and the administrative process as a result could not adequately remedy the problem.

The Second Circuit excuses the requirement to exhaust administrative remedies where plaintiffs allege systemic violations.  *See J.S.*, 386 F.3d at 113-14 (citing several cases in which exhaustion was excused as futile where plaintiffs' "problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process"); *Scaggs*, 2007 WL 1456221 at *8 ("Plaintiffs' allegations of complete inadequacy of the educational environment at Riverhead, arising from a total lack of programs designed to address the needs of disabled students, the decrepit physical plant and a total absence of basic services and supplies, constitute allegations of systemic violations that, if true, cannot be remedied by individual administrative hearings.").  This is because systemic violations are often the result of implemented policies and procedures, and administrative hearing officers do not have the ability to alter already existing policies.  *See Michaels v. Mills*, 2004 U.S.

16

Dist. LEXIS 6155, at *19 n.30 (W.D.N.Y. Feb. 14, 2004) ("'The rationale behind [the exhaustion] exception is that while the administrative hearing officers have the authority to enforce established regulations, policies and procedures, they generally do not have the authority to set new policies or to alter existing ones. Therefore, requiring a parent to exhaust his administrative remedies when he is challenging a generally applicable policy or procedure would be futile.'") (quoting *King v. Pine Plains Cent. Sch. Dist.*, 918 F. Supp. 772, 781 (S.D.N.Y.1996) (Conner, J.) (alteration in original)).

In *J.S.*, the plaintiff alleged the following systemic violations: "failure to perform timely evaluations and reevaluations of disabled children; failure to provide parents with required procedural safeguards regarding identification, evaluation, and accommodation of otherwise disabled children; and failure to perform legally required responsibilities in a timely manner, including providing and implementing transition plans, transitional support services, assistive technology services, and declassification services for children with disabilities." 386 F.3d at 115. As a result, the Court affirmed the lower court's denial of defendants' motion to dismiss for lack of subject matter jurisdiction because of a failure to exhaust administrative remedies. *Id.*

The Second Circuit recognized that systemic violations excuse the exhaustion requirement again in *Handberry*. There, plaintiffs challenged the DOE's and DOC's actions with respect to providing educational services to all entitled inmates. 436 F.3d at 61. Citing *J.S.*, the court found that individual administrative remedies would be insufficient to address the defendants' failure to provide the service required by the IDEA to all relevant inmates, and concluded that plaintiffs' failure to exhaust did not bar the claim for lack of subject matter jurisdiction. *Id.* In *J.G. v. Board of Education of Rochester City School District*, the Court concluded that class allegations of systemic failure to evaluate and place students, to develop individualized education programs, and to inform

parents of their rights, excused administrative exhaustion.  830 F.2d 444 (2d Cir. 1987).  In another

class action, plaintiffs sought systemic reform to allow more timely evaluation and placement of

handicapped children in appropriate programs.  *Jose P. v. Ambach*, 669 F.2d 865, 867 (2d Cir. 1982).

 Based on the commissioner of education's concession that he could not foresee expeditious handling

of the thousands of appeals, and that the state's bureaucratic system would not likely lead to

resolution, the court held that resorting to administrative remedies would be futile.  *Id*. at 869.

Here, plaintiffs claim that defendants systemically failed to properly evaluate and provide

services, and this type of systemic violation is recognized to fall under the futility exception.

Specifically, plaintiffs allege, among other things, that the County: failed to properly and timely

identify or evaluate children; limited the amount, duration and availability of services; and failed to

provide services required by plaintiffs' IEPs.

Additionally, plaintiffs claim that the reason the individual service plans could not be

properly implemented was because of a policy limiting the number of providers and the number of

ABA hours; this claim also falls within the futility exception.  Plaintiffs allege that they were told on

several occasions that the reason required services could not be properly provided was because of a

lack of service providers.  Plaintiffs allege that this insufficiency in the number of providers resulted

from a policy implemented by defendant Warren.  Because plaintiffs' complaints are caused by the

policies of the County, a hearing officer could not offer a remedy, and therefore it would be futile for

them to exhaust their administrative remedies.  Because plaintiffs have provided several examples

in which children were not properly evaluated or services were not provided because of a shortage

of providers as a result of an alleged policy implemented by Warren, defendants' motion to dismiss

is denied as to this issue.

18

Even if, as defendants claim, each individual could have received redress through the administrative process, a proposition that we must doubt if we accept as true plaintiffs' allegations that there was a policy limiting the number of service providers, plaintiffs claim to bring this action on behalf of a class of disabled autistic preschool children in order to remedy systemic violations of the IDEA. Defendants cite *Polera* to support their position that because the claims here, as in *Polera*, encompass a failure to provide services and to specify the services to be provided, it is for the administrative process in the first instance. *Polera*, however, did not involve a systemic violation as plaintiffs are claiming here. 288 F.3d at 488 (stating that according to plaintiff, (who brought suit on her own behalf not as a class) it would have been pointless to seek administrative relief from the very entities that had failed to implement the requirements of the IEPs and relief would not have been made available promptly). Additionally, plaintiffs claim that defendants did not implement the services required in the individual plans, not that the plans themselves were inadequate, which could be remedied through the administrative process as the court in *Polera* determined. *See id.* at 489 ("*Polera*'s IEPs failed to spell out the services to be provided. . . . This is not the sort of case . . . in which a school has failed to implement services that were specified or otherwise clearly stated in an IEP. *Polera*'s claim unavoidably encompasses both a failure to provide services and a significant underlying failure to specify what services were to be provided."). Defendants also rely on *Coleman v. Newburgh Enlarged City School District*, 2007 WL 2768745, at *7 (2d Cir. Sept. 25, 2007), in which the court held that the complaint should have been dismissed for failure to exhaust administrative remedies. In *Coleman*, however, plaintiff claimed futility because exhaustion of the full administrative process would not occur before the school year ended, and as a result, plaintiff would have missed his graduation and been unable to participate in extracurricular activities. *Id.* at

19

*5. The case is not applicable here where plaintiffs claim futility because of systemic violations.

Accepting the facts pleaded by plaintiffs as true, the hearing officer could not remedy the system policy limiting service providers and hours of ABA therapy, and therefore could not provide them with relief for the alleged systemic violations.  Additionally, the number of claims might not be handled expeditiously and effectively.  Therefore, they are excused from exhausting administrative remedies.  *See Mrs. W. v. Tirozzi*, 832 F.2d 748, 757 (2d Cir. 1987) (reviewing a judgment granted on the pleadings and finding plaintiffs were entitled to exemption from exhausting administrative remedies since they were unlikely to receive adequate relief because the hearing officer lacked the authority to effectuate class action and system-wide relief).

Defendants contend that B.F.'s allegations that the County improperly billed insurance providers for services and did not provide enough extended services should also go before an impartial hearing officer who can resolve disagreements over the extent and payment of services.  The IDEA "conditions federal financial assistance on the state's development of a policy and plan that 'assures all handicapped children  the right to a free appropriate public education.'" *Id.* at 750-51 (quoting 20 U.S.C. §  1412(1)).  In *Andree*, disabled children alleged that the local school districts submitted claims to the Department of Social Services for Medicaid payments to cover the cost for supportive or related services they furnished.  311 F. Supp. 2d at 332.  Related services "'are provided free of charge to all disabled students because of the [New York State] Legislature's determination that these services promote the educational needs of those eligible students.'"  *Id*.  (citation omitted, alteration in original).  The court concluded that seeking payment for services that are mandated to be provided free of charge to such students was a violation of the IDEA, therefore the asserted claims alleged a policy by the County that is contrary to law and fell within the exception to the exhaustion

requirement. *Id.* at 333. Thus, the court denied defendants' motion to dismiss the IDEA claim. *Id.* Similarly here, the County is allegedly violating the IDEA by charging third party insurance carriers for educational services it is required to provide for free. As discussed earlier and confirmed in *Andree*, a plaintiff need not exhaust administrative remedies if an agency adopts a policy or practice that is contrary to the law.

Because we find that exhaustion would have been futile, and therefore plaintiffs need not have exhausted their administrative remedies before bringing this claim, we do not address defendants' claim that plaintiffs were required to exhaust administrative remedies under Section 1983, Section 504 and the state law claims. *See J.S.,* 386 F.3d at 112 ("The exhaustion requirement also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA. . . . [T]he students asserted a section 504 Rehabilitation Act claim and a section 1983 claim that both seek to ensure a free appropriate public education, thus subjecting both to the IDEA exhaustion requirement.") (citations omitted).

Defendants also argue that A.W.'s complaint about transportation is a dispute over the quality or methodology of service, which is routinely and properly resolved through the administrative process. This claim is not a claim of systemic violation, nor does it fall within the other recognized exceptions to exhaustion. Because there is an issue of fact as to whether the County created a transportation plan that fulfilled its obligation to A.W., this matter is best left to the administrative process. We therefore dismiss A.W.'s IDEA claim without prejudice. As we have also dismissed A.W.'s Section 504 claim, A.W. has no further claims at this time against the County and is dismissed from this action.

21

IV.    **Section 1983 Claim**

Defendants contend that plaintiffs failed to allege a cause of action under § 1983.  Defendants point out that the Complaint references § 1983 in the Jurisdiction section but contains no other references to the cause of action and does not delineate a basis for the claim.  Plaintiffs counter that § 1983 provides federal jurisdiction for claims to federal or constitutional rights and they "make no claim that any additional substantive rights are provided by 42 U.S.C. sec. 1983." (Pls. Mem. Opp. Mot. Dismiss at 34.)  Plaintiffs claim that the requisite "liability" under § 1983 is alleged because the complaint enumerates acts and omissions taken by Warren as director of intervention services.  *Id.*

"It is well settled that § 1983 does not create any new substantive rights, but merely provides a federal cause of action for violations of certain federal rights." *Mrs. W.*, 832 F.2d at 754 (holding that parents are entitled to bring a § 1983 action based on alleged violations of Section 504 and Due Process and Equal Protection Clauses); *see also Scaggs*, 2007 WL 1456221, at *12 ("To state a claim for relief under Section 1983, a plaintiff must allege:  (1) the deprivation of any rights, privileges or immunities secured by the Constitution and federal law, (2) by a person acting under the color of state law. Section 1983 does not itself provide substantive rights, but in fact offers a method for vindicating federal rights elsewhere conferred.") (citations and internal quotation marks omitted).

In *B.D.*, the court stated that "[t]o prevail on their Section 1983 claim, plaintiffs must establish that they were deprived of a right secured by the Constitution or laws of the United States without due process of law, and that the alleged deprivation was committed under color of state law." 130 F. Supp. 2d at 430-31.  The court determined that plaintiffs had a protected property right to an individualized treatment plan which would meet their needs as mandated by both the IDEA and the state law implementing the statute.  *Id.* at 431.  The court noted that a "procedural due process

violation is established if plaintiff shows that he or she was deprived of a meaningful opportunity to be heard with respect to the claim in issue." *Id*. The court could not reach a conclusion for certain plaintiffs on the facts however, stating that those "plaintiffs received adequate due process if they were informed of their right to pursue mediation or an administrative hearing to contest the County's decision, whether or not they chose to take advantage of the procedural safeguards. . . . If, however, the County either did not inform these plaintiffs of their right to a hearing, or actively prevented them from pursuing an administrative hearing, then they were denied due process, and can proceed with their § 1983 claims." *Id*. at 435.

Plaintiffs have a protected property right to an IEP as recognized by *B.D*. They allege that Warren, acting under color of state law as Director of Intervention Services, deprived them of that right. What they fail to allege is that the deprivation occurred without due process, as *B.D*. requires. Plaintiffs are entitled to administrative hearings on their claims and since they did not pursue that right they do not, and cannot, claim that the hearings did not provide meaningful due process. *See Barry v. Barchi*, 443 U.S. 55, 66 (1979) ("the opportunity to be heard must be at a meaningful time and in a meaningful manner") (internal quotation marks and citation omitted). Although we agree that plaintiffs were excused from exhausting administrative remedies, we do so because the hearing officer could not offer them a proper remedy, not because the process itself was not meaningful. Although the hearing may have been futile, plaintiffs were not prevented from seeking due process for their claims. Because plaintiffs fail to allege that they were deprived of meaningful due process we grant the motion to dismiss the § 1983 claim.

V.    **Individual Claims Against Warren**

Defendants move to dismiss all claims against defendant Warren because there is no individual liability under the IDEA or Section 504, and there should therefore be no liability under state law for actions addressing obligations of either the state, the municipality or the school district/board of education particularly as those statutes are based on the IDEA.  We agree that there is no individual liability under Section 504.  *See B.D.*, 130 F. Supp. 2d at 439-40 (finding that plaintiffs were barred from bringing Rehabilitation Act claims against the individual defendants because there is no justification to permit claims against defendants in their official capacities since the Second Circuit determined that Congress abrogated state sovereign immunity under the Rehabilitation Act); *Menes v. CUNY Univ. of N.Y.*, 92 F. Supp. 2d 294, 306 (S.D.N.Y. 2000) ("Individual defendants may not be held personally liable for alleged violations of the ADA or the Rehabilitation Act.  Nor can individuals be named in their official or representative capacities as defendants in ADA or Rehabilitation Act suits.") (internal quotation marks and citations omitted); *Harris v. Mills*, 478 F. Supp. 2d 544, 547-48 (S.D.N.Y. 2007) ("Because claims under the Rehabilitation Act may not be brought against individuals, either in their personal or official capacity, Harris's Rehabilitation Act claim must also be dismissed.").  Because the IDEA abrogates state immunity under the Eleventh Amendment from claims for violations of the statute, there is likewise no justification to permit IDEA claims against individual defendants.  *See* 20 U.S.C. § 1403(a).

Plaintiffs cite *Johnson v. New York Hospital* to support their assertion that individuals who violated Section 504 can be held personally responsible.  897 F. Supp. 83, 85-86 (S.D.N.Y. 1995). In *Johnson*, plaintiff brought a Section 504 action against individuals she asserted were responsible for the decision to terminate her employment because of her disability.  *Id.*  The court determined that

24

individuals who are responsible for the discriminatory decisions of organizations can be personally liable under the Rehabilitation Act. *Id.* However, we are not bound by the decision in *Johnson* and we find that a number of more recent cases, particularly dealing with Section 504 actions in the context of education claims, denying individual liability under the Rehabilitation Act are more persuasive. We therefore grant the motion to dismiss all the claims against defendant Warren.

VI.    **Notice of State Claims**

Defendants state that plaintiffs failed to comply with N.Y. COUNTY LAW § 52(l), requiring a notice of claim be served in accordance with N.Y. GEN. MUN. LAW, Art. 4, § 50-e prior to commencing an action against a county, and therefore the state law claims must be dismissed. N.Y. GEN. MUN. LAW § 50-e provides in relevant part: "In any case founded upon a tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, as defined in the general construction law . . . the notice of claim shall comply with and be served . . . within ninety days after the claim arises . . . ."

Plaintiffs do not deny that they failed to file a notice of claim. Plaintiffs state that a notice of claim is not required in the instant action because the state law claims do not lie in tort. Defendants rely on *Weathers v. Millbrook Central School District* to support their position that tort-based claims for failure to follow Education Law are subject to notice of claim requirements. (Defs. Mem. Supp. Mot. Dismiss at 18.). However, nowhere in *Weathers* is this proposition stated. 428 F. Supp. 2d 180 (S.D.N.Y. 2006) (Conner, J.). There the court was addressing a claim against the school district and the requisite requirement to file notice of claims against the district under N.Y. EDUC. LAW § 3813. *Id.* at 186-87. The tort claim was against two of the school district employees that plaintiff argued

25

stepped into the role of a medical provider when they recommended that plaintiff seek medical treatment, and thereby undertook a duty of care toward plaintiff which they allegedly breached. *Id.* at 188.   The court found the claim was insufficient as a matter of law, but did not state that a tort claim could be brought under § 3813. *Id.*

Indeed, if plaintiffs were asserting a tort claim against the County for educational malpractice, that claim would likely be dismissed for failure to state a cause of action because New York does not recognize such claims. *See Livolsi v. Hicksville Union-Free Sch. Dist.*, 263 A.D.2d 447, 447, 693 N.Y.S.2d 617, 617-18 (2d Dep't 1999) ("Moreover, the plaintiffs' cause of action sounding in 'negligence' is clearly based upon alleged 'educational malpractice'. As a matter of public policy, such a cause of action cannot be entertained by the courts of this State."); *Suriano v. Hyde Park Cent. Sch. Dist.*, 203 A.D.2d 553, 554, 611 N.Y.S.2d 20, 21 (2d Dep't 1994) (determining that plaintiff's allegations that defendant school district breached a duty of care by promoting him despite his poor academic performance, by failing to detect a purported learning disability and place him in a special education program, and by failing to provide him with a proper education asserts an action premised on a theory of educational malpractice, which the state courts have refused to entertain in numerous cases); *DeRosa v. City of New York*, 132 A.D.2d 592, 594, 517 N.Y.S.2d 754, 756 (2d Dep't 1987) ("The gravamen of the plaintiffs' complaint is that due to a mistaken determination as to the infant plaintiff's mental capacity, she was improperly placed in a class for mentally deficient children. As such, it sounds in 'educational malpractice' and is not cognizable in the courts of this State . . . ."); *see also Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 209 (S.D.N.Y. 1998) (refusing to recognize a new cause of action for constructive discharge from education, based on plaintiff's allegation that defendants' alleged conduct harmed her academic experience and caused

her to leave the program, because New York has a bar against educational malpractice claims).  Since plaintiffs do not assert any tort claims against the County there is no requirement to file notice under § 50-e.

Defendants reply that § 52 is broader than § 50 and requires notice of claim in an action against the County for "any other claim for damages arising at law or in equity."  N.Y. COUNTY LAW § 52(l).  Defendants cite *Feldman v. Nassau County*, which interpreted § 52 to require a notice of claim be filed before an employment discrimination action could be commenced against the county. 349 F. Supp. 2d 528 (E.D.N.Y. 2004).  The court dismissed the claims because plaintiff never filed a notice within ninety days of the date his claims arose, and there was no exception to the notice requirement since his claims were not brought to vindicate a public interest but rather sought the enforcement of his private interests.  *Id*.

Even if we agreed that § 52 is so broad as to require filing a notice of claim for any claim for damages arising in law or in equity, we find that plaintiffs as a putative class are bringing this action to vindicate a public interest for disabled preschool children in Orange County.  In *Green v. City of New York*, plaintiffs were disabled children and their parents who received Medicaid assistance.  438 F. Supp. 2d 111, 125 (E.D.N.Y. 2006).  Plaintiffs claimed that Medicaid liens asserted by the City against awards from personal injury actions improperly included monies paid for federally mandated educational services that were required to be provided free, and requested that defendants return all monies and that the court enter an order enjoining defendants from future attempts to collect funds. *Id*.  Defendants moved to dismiss for failure to file a notice of claim, but the court stated that the requirement is excused for "'actions that are brought to protect an important right, which seek relief for a similarly situated class of the public, and whose resolution would directly affect the rights of that

class or group.'" *Id.* (citing *Mills v. Monroe County*, 59 N.Y.2d 307, 311, 451 N.E.2d 456, 464 N.Y.S.2d 709 (1983)). The court held that "[a]s a potential class action that seeks to vindicate the rights of Medicaid recipients whose liens against their personal injury actions allegedly included improper amounts for Related Services, the instant action falls within the public interest exception, and plaintiffs are excused from the notice of claim requirement. *Id.*; *see also Kennedy v. Fitzgerald*, 102 F. Supp. 2d 100 (N.D.N.Y. 2000) (finding plaintiff's claim fell within the public interest exception where plaintiff maintained that the City denied a building permit for a wheelchair ramp to a property owner and sought declaratory and injunctive relief, compensatory and punitive damages, statutory and/or civil penalties, attorneys' fees and costs); *Union Free Sch. Dist. No. 6 of Towns of Islip and Smithtown v. N.Y. State Human Rights Appeal Bd.*, 35 N.Y.2d 371, 380, 320 N.E.2d 859, 863, 362 N.Y.S.2d 139, 145 (1974) (finding that although the proceeding was triggered by the complaint of one teacher and the relief granted would redound to the benefit of that teacher, advantages would also accrue to teachers similarly situated, which was an appropriate and intended consequence of the vindication by the District, acting on behalf of the public, of the public's interest in the legislatively enacted elimination of discrimination based on sex).

Here, plaintiffs seek to protect an important right for disabled children, which includes themselves and children similarly situated, and seek remedies that would affect the rights of this group. Plaintiffs seek injunctive relief requiring defendants to rectify alleged violations of applicable state education and public health laws and provide either compensatory services or reimbursement for amounts billed to insurance carriers. Defendants argue that plaintiffs seek primarily to redress their own private interests, but to the extent that plaintiffs are members of the class allegedly wronged by defendants' policies and practices, plaintiffs seek for themselves the same remedies they seek for

28

disabled preschoolers as a class, and their request is primarily for injunctive and declaratory relief. *See Brooklyn Sch. for Special Children v. Crew*, 1997 U.S. Dist. LEXIS 12974, at *50-51 (S.D.N.Y. Aug. 28, 1997) (finding plaintiffs request for declaratory, injunctive, and ancillary monetary relief, where plaintiffs alleged that defendants prevented them from receiving reimbursement for disability services, were primarily for injunctive and declaratory relief rather than monetary damages, and denying motion to dismiss for failing to file notice of claim because courts have repeatedly held that requirement does not apply to actions which seek monetary relief only as an incident of prospective declaratory and injunctive relief).

## VII.    Timeliness of State Claims

N.Y. COUNTY LAW § 52(l) requires that actions be commenced pursuant to N.Y. GEN. MUN. LAW, Art. 4, § 50-i which requires that proceedings be commenced within 1 year and 90 days of the happening of the event upon which the claim is based. However, like the requirement of notice under § 50-e, § 50-i applies to tort claims. *See* N.Y. GEN. MUN. LAW, Art. 4, §50-i ("No action . . . shall be prosecuted or maintained . . . for personal injury, wrongful death, or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city, [or] county . . . unless . . . the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based . . . ."). We have already determined that plaintiffs do not assert a claim in tort. We therefore must determine the proper statute of limitations to apply to the state law claims under Education Law and Public Health Law.

Neither the Education Law nor the Public Health Law provides an applicable statute of limitations for plaintiffs' claims. Because plaintiffs' state law claims are analogous to their IDEA

claims, we look to see what statute of limitations courts have applied to IDEA claims. Because the IDEA does not provide its own statute of limitations, federal courts "apply the statute of limitations applicable to the most analogous state cause of action." *Butler*, 106 F. Supp. 2d at 418.

In *Mason v. Schenectady City School District*, the court applied a three-year statute of limitations where plaintiffs resorted to the judicial process without first pursuing an administrative remedy, and "the complaint allege[d] that the defendant failed to comply with the procedural safeguards provided in the IDEA." 879 F. Supp. 215, 220 (N.D.N.Y. 1993). The court determined that the most analogous state action was an action to recover upon a liability imposed by statute under N.Y. C.P.L.R. § 214(2). *Id*.; *see Brooklyn Sch. for Special Children*, 1997 U.S. Dist. LEXIS 12974, at *40-41 (finding that the action did not resemble an appeal from a final decision of an administrative body, but rather was a systemwide challenge to the reimbursement procedures instituted pursuant to IDEA's mandate and therefore agreeing with the courts in *Mason* and *Robert D*. and applying the three-year statute of limitations); *Robert D. v. Sobel*, 688 F. Supp. 861, 864 (S.D.N.Y. 1988) (request for attorneys' fees under 20 U.S.C. § 1415 governed by three-year limitations period); *see also Hartnett v. N.Y. City Transit Auth.*, 200 A.D.2d 27, 612 N.Y.S.2d 613 (2d Dep't 1994) (applying three-year statute of limitations under § 214(2) to claim under certain provision of labor law that required employers to comply with safety and health standards for employees, and noting that this statute of limitations is also applied in actions seeking equitable relief).

Although Public Health Law and Education Law provide for Article 78 review of administrative determinations, which has an applicable time limitation of four months from the administrative decision, there was no administrative decision here and we have already determined that plaintiffs were excused from exhausting their administrative remedies. *See* N.Y. PUB. HEALTH

LAW § 2549(7)(a); N.Y. EDUC. LAW § 4404(3); *Adler v. Educ. Dep't of State of N.Y.*, 760 F.2d 454, 457 (2d Cir. 1985) ("[T]his action under section 1415(e)(2)--like an action under section 4404(3)--is essentially an appeal from administrative proceedings . . . we [] hold that for limitations purposes the state action and the federal action are analogous" therefore the four-month statute of limitations applicable to Article 78 proceedings applied).  Accordingly, that time limit is inapplicable to the current action.  *See Butler*, 106 F. Supp. 2d at 418 (distinguishing statute of limitations in actions appealing an administrative decision from statute of limitations for claims alleging failures to follow procedural safeguards of the IDEA).

        As to plaintiff S.W., the complaint alleges that defendants failed to recommend an evaluation after initial evaluations in 2005, and failed to provide her with any speech therapy as required between February and August 2006.  As to plaintiffs P.F. and J.F., the complaint alleges that in August 2006 and again from October 2006 to January 2007 they did not receive the recommended sessions of speech therapy, and in January 2007 defendants told plaintiffs there was a shortage of speech providers.  As to plaintiff L.T., the complaint alleges that as of August 2006 defendants failed to identify or arrange for further evaluations of L.T., and in January 2007 defendants approved only half of the recommended ABA hours and plaintiff in fact actually received even less than that because of a shortage of providers.  Plaintiffs commenced this action on June 15, 2007; plaintiffs S.W., P.F., J.F. and L.T.'s claims all occurred within three years of commencement.

        As to plaintiff B.F., the complaint alleges that defendants failed to recommend evaluation of B.F. sometime after April 2004 when he began speech and occupational therapies but before June 2005 when parents brought him to be diagnosed, that defendants took plaintiff's insurance information in April 2004 but his mother did not notice defendants were billing the insurance

31

company until July 2006, and in June 2007 B.F.'s mother was told that he could not receive extended-year services. Because plaintiff B.F. did not have all the factual circumstances to state a claim against the County until at least June 2005 when he was diagnosed with autism, his claims also fall within the three-year statute of limitations. *See  Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210, 750 N.E.2d 1078, 727 N.Y.S.2d 30 (2001) ("In general, a cause of action accrues, triggering commencement of the limitations period, when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief. In an action to recover for a liability created or imposed by statute, the statutory language determines the elements of the claim which must exist before the action accrues.") (citations omitted); *see also Scaggs*, 2007 WL 1456221, at *10 ("Generally, the statute of limitations begins to run at the time that a plaintiff learns or has reason to learn of the injuries that form the basis for his claim.") (citations omitted).

We therefore conclude that all of the state claims are timely.


### VIII.    Defendant Department of Health

Plaintiffs have sued both the County of Orange and the County Department of Health. Pursuant to FED. R. CIV. P. 17(b), New York law governs whether the Department of Health has the capacity to sue or be sued. Under New York law, departments which are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot sue or be sued. *See Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) (finding White Plains Department of Public Safety was administrative arm of the City and dismissing claims against it because it did not have a legal identity); *Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 257 (S.D.N.Y. 1999) (dismissing claim against the Town of Harrison Police Department because, as

a mere department of the Town of Harrison, it had no legal identity under New York law, and finding that the town was real party in interest and was already a named defendant).

Because the Department of Health is merely an administrative arm of the County, it lacks the capacity to be sued in this action. Therefore, the claims against the Department of Health are dismissed. *See Hall*, 185 F. Supp. 2d at 303 ("Because plaintiff has named the City of White Plains as a defendant, any claims against the WPDPS are redundant."); *Manning v. County of Westchester*, 1995 WL 12579 at *2 (S.D.N.Y. Jan. 5, 1995) (removing Westchester County Police Department as named defendant where the real party in interest, County of Westchester, was already a named defendant).

**CONCLUSION**

For all of the foregoing reasons, defendants' motion to dismiss the action pursuant to FED. R. CIV. P. 12(b)(6) is denied in part and granted in part. Defendants' motion to dismiss the Section 504 claim is denied as to plaintiffs S.W., B.F., J.F., P.F. and L.T., but granted as to plaintiff A.W. Defendants' motion to dismiss all claims for failure to exhaust administrative remedies is denied as to plaintiffs S.W., B.F., J.F., P.F. and L.T., but granted as to plaintiff A.W. Defendants' motion to dismiss the § 1983 claim is granted. Defendants' motion to dismiss individual claims against defendant Warren is granted. Defendants' motion to dismiss state claims for failure to file notices of claim or because they are time barred is denied. Defendants' motion to dismiss defendant Orange County Department of Health is granted. The caption of this matter shall be altered to reflect the remaining plaintiffs, S.W., B.F., J.F., P.F. and L.T., and the remaining defendant, County of Orange. SO ORDERED.

Dated:  White Plains, New York
        November 16, 2007

William C. Conner
Sr. United States District Judge

34